UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT H. LAW, INC.,

                         Plaintiff,

v.                                             5:13-CV-1393
                                             (GTS/DEP)

WOODBINE BUSINESS PARK, INC.; NORMAN
SWANSON; 224 HARRISON CORP.; 100
COLLINGSWOOD CORP.; WAITE DAIRY
INC.;D.E. TAROLLI INC.; LAN-CO
COMPANIES INC.; NATIONAL GRID (US)
HOLDINGS, LTD; NATIONAL GRID US; and
NIAGARA MOHAWK POWER CORP., d/b/a
National Grid,,

                       Defendants.
_____

APPEARANCES:                             OF COUNSEL:

SHEATS & BAILEY, PLLC               JASON B. BAILEY, ESQ.
  Counsel for Plaintiff
9650 Brewerton Road, P.O. Box 820
Brewerton, NY 13029

BROWN, SHARLOW, DUKE & FOGEL, P.C.    MICHAEL A. FOGEL, ESQ.
  Counsel for Defendants Woodbine, Swanson,
  224 Harrison, and 100 Collingswood
621 West Genesee Street
Syracuse, NY 13204

COSTELLO, COONEY & FEARON, PLLC     ROBERT W. CONNOLLY, ESQ.
  Counsel for Defendant Tarolli
500 Plum Street, Suite 300
Syracuse, NY 13204

THE SLATER LAW FIRM, PLLC            CRAIG A. SLATER, ESQ.
  Counsel for Defendant Lan-Co
500 Seneca Street, Suite 504
Buffalo, NY 14204

MELVIN & MELVIN, PLLC                                SUSAN E. OTTO, ESQ.
  Counsel for Defendant Lan-Co
217 South Salina Street, 7th Floor
Syracuse, NY 13202

BARCLAY DAMON, LLP                                  YVONNE E. HENNESSEY, ESQ.
  Counsel for Defendants National Grid
  USA and Niagara Mohawk
80 State Street
Albany, NY 12207

GLENN T. SUDDABY, Chief United States District Judge

## AMENDED DECISION and ORDER[1]

Currently before the Court, in this action asserting claims under the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA") and state tort and

contract law filed by Robert H. Law, Inc., ("Plaintiff") against the ten above-captioned

individuals and entities ("Defendants"), are the following three motions: (1) Defendant Lan-Co's

motion for summary judgment; (2) Defendant Tarolli's motion for partial summary judgment;[2]

and (3) Defendants National Grid USA and Niagara Mohawk's (collectively "National Grid

Defendants")[3] cross-motion to dismiss the Second Amended Complaint for failure to state a

---

[1]     This Amended Decision and Order corrects a typographical error contained in the
Court's original Decision and Order in this matter, issued on the morning of February 12, 2018,
in which, at the end of the Decision and Order's first paragraph, the Court inadvertently stated
that Defendant Lan-Co's motion for summary judgment was being "denied without prejudice."
To the contrary, Defendant Lan-Co's motion for summary judgment is being granted.

[2]     Although Defendant Tarolli characterizes its motion as a "cross-motion," the
motion is merely a "motion," because it does not seek relief against the previously moving party
(i.e., Plaintiff) nor does it seek relief that competes with the relief sought by Plaintiff.  N.D.N.Y.
L.R. 7.1(c).

[3]     Of note, National Grid (US) Holdings, Ltd., is also named as a defendant in this
action, but is not represented by the counsel for the other National Grid Defendants and is not
involved in the National Grid Defendants' motion to dismiss.  Any and all references to National
Grid and the National Grid Defendants in this Decision and Order does not include National
Grid (US) Holdings.

claim.[4]  (Dkt. Nos. 81, 89, 123.)  For the reasons set forth below, Defendant Lan-Co's motion for

summary judgment is granted, Defendant Tarolli's motion for partial summary judgment is

denied, and the National Grid Defendants' cross-motion to dismiss is granted.

# I.      RELEVANT BACKGROUND

## A.      Plaintiff's Second Amended Complaint

Generally, Plaintiff's Second Amended Complaint asserts six distinct claims.  (Dkt. No.

91 [Second Am. Compl.].)  First, Plaintiff claims that, pursuant to 42 U.S.C. § 9607(a) (Section

107[a] of CERCLA), Defendants are liable for the release of a hazardous substance that resulted

from the storage and spreading of contaminated soil on Plaintiff's property and at other

properties, soil that Plaintiff had purchased from Woodbine Business Park and Swanson (known

collectively, along with 244 Harrison Corporation and 100 Collingswood Corporation, as the

"Woodbine Defendants") ("First Claim").  (*Id.* at 5-8.)  Specifically, Plaintiff claims that

Defendants are all responsible parties under 42 U.S.C. § 9607(a) by virtue of their actions and

are therefore jointly and severally liable to Plaintiff for damages resulting from that release of

hazardous substances, including the necessary costs incurred by Plaintiff in removing or

remediating the contamination.  (*Id.*)

Second, Plaintiff claims that, in the alternative, Defendants, as responsible parties under

CERCLA, are each liable to Plaintiff for the necessary costs incurred in removing or remediating

the contamination, in an amount equal to their equitable share pursuant to 42 U.S.C. § 9613(f)(1)

(Section 113[f][1] of CERCLA) ("Second Claim").  (*Id.* at 8.)

---

[4]      Although National Grid characterizes its motion as a "motion," the motion is
actually a "cross-motion," because it seeks, against Plaintiff, relief that competes with the relief
sought by Plaintiff.  N.D.N.Y. 7.1(c).

Third, Plaintiff claims that Defendants knew (or should have known) that the soil was contaminated and therefore owed (and breached) a duty to inform Plaintiff of the potential that the soil was contaminated ("Third Claim").  (*Id.* at 8-9.)

Fourth, Plaintiff claims that Defendants made negligent representations that the soil purchased was topsoil (and nothing more), representations that Plaintiff reasonably relied upon when purchasing and using the soil ("Fourth Claim").  (*Id.* at 9.)

Fifth, Plaintiff claims that storage of the contaminated soil at its principle place of business has caused a substantial and unreasonable interference with its use and enjoyment of that property ("Fifth Claim").  (*Id.* at 9-10.)

Sixth, Plaintiff claims that Woodbine Business Park and Swanson breached their contract with Plaintiff regarding the purchase of the soil ("Sixth Claim").  (*Id.* at 10.)

## B.      Undisputed Material Facts on Defendant Lan-Co's Motion for Summary Judgment

Rule 7.1(a)(3) of the Local Rules for the Northern District of New York requires that the movant on a motion for summary judgment set forth, in numbered paragraphs, each material fact about which the movant contends there is no genuine dispute, and that "[e]ach fact listed shall set forth a specific citation to the record where the fact is established."  N.D.N.Y. L.R. 7.1(a)(3). Movants are warned that "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."  *Id.*

Here, although Lan-Co submitted a Statement of Material Facts with individually numbered paragraphs along with its motion, it did not provide citations to the record to show where any of those facts are established.  (Dkt. No. 81, Attach. 13 [Def.'s Rule 7.1 Statement].) While the Court is under no duty to *sua sponte* scour the record for evidence supporting a

movant's factual assertions (and it thus declines to conduct such a *sua sponte* review of the record), the Court will not turn a blind eye to the citations that are plainly evident upon its review of the papers.  Here, in its summary of the facts in its memorandum of law, Lan-Co provides record citations in support of various factual assertions repeated verbatim from its Rule 7.1 Statement.  To the extent Lan-Co has done so, the Court has considered Lan-Co's factual assertions in light of the cited record evidence; to the extent Lan-Co has not done so, the Court deems Lan-Co's factual assertions as not established under Local Rule 7.1(a)(3).  As a result, the following facts have been asserted by Lan-Co in its Statement of Material Facts and supported by accurate record citations provided in Lan-Co's memorandum of law, and expressly admitted by Plaintiff in its response thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 81, Attach. 14 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 101 [Pl.'s Rule 7.1 Resp.].)

1. The original complaint was filed on November 8, 2013.

2. The Amended Complaint, adding Lan-Co as a defendant, was filed on December 4, 2015.  Discovery between Lan-Co and its co-Defendants is complete.

3. Norman Swanson purchased a parcel of approximately 68.70 acres located at the intersection of Canada Drive and Loucks Road in East Syracuse, New York, from a local dairy farmer in 1989 and then transferred that parcel to Woodbine Business Park on June 8, 2011, which continues to own it today.

4. The Woodbine Business Park property was farmland prior to 2008.

5. The construction of Canada Road, Loucks Road, and a detention basin resulted in the creation of three piles of excess soil (one consisting of topsoil and two consisting of deeper fill or soil with more rocks) located on the Woodbine property.

6.      On July 21, 2011, Plaintiff executed a contract to purchase the 2,400 cubic yards of topsoil located in a pile on the Woodbine Business Park for $12,000.

7.      The Town of Dewitt awarded a job to Lan-Co based on its April 2008 bid for the installation of 2,460 feet of an 8-inch water main west of Loucks Road and north of Canada Drive.

8.      All Lan-Co work for installation of the water line was completed in 13 days.

9.      All clearing, grubbing, and stripping of the topsoil and subsoil had been performed by another party unrelated to Lan-Co before Lan-Co started work.

10.     Lan-Co did not strip any topsoil from the site, or clear and grub the site or the waterline area.[5]

11.     The three soil piles were already in place before Lan-Co commenced work on the water line.

12.     Lan-Co's method of installation was to excavate a trench for the pipe, side-cast the soil away from the street, install soil, and push soil back into the trench.

13.     Lan-Co was not a party to the soil pile purchase contract between Plaintiff and Woodbine.

_____

[5]      Plaintiff denies this fact, asserting only that "it is disputed what impact or work Lan-Co performed relative to topsoil"; however, this fact is supported by Mr. Joynt's deposition testimony, while Plaintiff does not cite any contrary evidence to support its assertion. This fact is therefore deemed admitted. *See Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's . . . statement but declined to provide record citations in support); *N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations").

**C.** **Undisputed Material Facts on Defendant Tarolli's Motion for Partial Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Tarolli in his Statement of Material Facts and expressly admitted by the Woodbine Defendants in their response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 89, Attach. 3 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 98, Attach. 3 [Defs.' Rule 7.1 Resp.].)

1. The original complaint was filed on November 8, 2013.

2. Plaintiff has alleged violations of CERCLA resulting from the alleged release of hazardous substances on property owned by Plaintiff located at 6883 Schuyler Road, East Syracuse, New York ("Plaintiff's property").

3. Tarolli was not initially named as a party in this action.[6]

4. After approximately two years of litigation, Plaintiff amended its Complaint to add Tarolli as a party.

---

[6] Tarolli states that it was not initially named as a party because it "had no involvement with the contamination of the Woodbine site." (Dkt. No. 89, Attach. 3, at ¶ 4 [Def.'s Rule 7.1 Statement].)  However, the Court does not accept this as an undisputed fact for two reasons: (1) Defendant cited generally to the entire affidavit of Derek Tarolli rather than to a specific portion of that affidavit where its assertion is supported; and (2) this statement is less one of a fact than one of an impermissible legal conclusion. *See Benson v. Otis Elevator Co.*, 10-CV-3246, 2012 WL 4044619, at *1 n.1 (S.D.N.Y. Sept. 13, 2012) (deeming fact asserted by movant to be admitted by non-movant where non-movant supported denial "only with non-specific citations to the entire testimony of several witnesses"); *Univ. Calvary Church v. City of New York*, 96-CV-4606, 2000 WL 1538019, at *2 n.6 (S.D.N.Y. Oct. 17, 2000) ("Despite the clear language of Rule 56 requiring specificity, Plaintiffs rarely offers an exact cite in support of their version of the facts. . . . [A] vague cite to all of the exhibits is simply unacceptable."); *Ross v. Shah*, 12-CV-1006, 2015 WL 4648002, at *6 n.21 (N.D.N.Y. Aug. 5, 2015) (Suddaby, J.) (finding a stated fact inadmissible because it was a legal conclusion rather than a fact).

5.      Tarolli was hired by Woodbine Business Park to perform site work at the Woodbine Business Park Subdivision.[7]  The work to be performed for the project was the subject of a Standard Form of Agreement between Owner and Contractor, AIA Document A101-1997.

6.      As part of the Agreement, the parties incorporated various documents, including Conditions of the Contract (General, Supplementary, and other Conditions).  The incorporated General Conditions for the project are set forth in standard form AIA Document A201-1997 without modifications.[8]

7.      Section 10.3.3 of the General Conditions, found in a section titled "Hazardous Materials," sets forth in pertinent part as follows:

> To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor . . . from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss of expense is attributable to bodily injury, sickness, disease or death, or injury to

---

[7]      The Woodbine Defendants deny portions of Tarolli's statement, including the date that Woodbine hired Tarolli, and asserts that Tarolli has not submitted a complete copy of the contract between those parties.  (Dkt. No. 98, Attach. 3, at ¶ 6 [Defs.'s Rule 7.1 Resp.].)  The Court acknowledges that the contract indicates, contrary to the Tarolli affidavit, that Woodbine hired Defendant on May 13, 2008 (rather than 2013); however, the Woodbine Defendants do not cite any other evidence to support the remainder of its denial.  (Dkt. No. 89, Attach. 5, at 1;Dkt. No. 98, Attach. 3, at ¶ 6.)  The Woodbine Defendants' vague denial therefore does not prevent the admission of this portion of Tarolli's statement. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[8]      The Woodbine Defendants deny portions of this statement, but fail to cite to any evidence supporting their denial.  (Dkt. No. 98, Attach. 3, at ¶ 7 [Defs.' Rule 7.1 Resp.].)  This statement is therefore deemed admitted. *Archie Comic Publ'ns*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

or destruction of tangible property (other than the Work itself) and
provided that such damage, loss or expenses is not due to the sole
negligence of a party seeking indemnity.[9]

8.   Tarolli had no involvement with, nor performed any work on, Plaintiff's property.[10]

9.   Rather, Tarolli's work was limited to the Woodbine project site, and called for

placement of roadbeds and storm drains only on the Woodbine property.  The

Agreement did not call for or obligate Tarolli to bring any soil, dirt, fill or

embankment onto the site.[11]

**D.   Parties' Briefing on the Pending Motions**

**1.   Defendant Lan-Co's Motion for Summary Judgment**

**a.   Lan-Co's Memorandum of Law**

In its motion for summary judgment, Lan-Co asserts five arguments.  (Dkt. No. 81,

Attach. 14, at 12-18 [Def.'s Mem. of Law].)  First, Lan-Co argues that the First and Second

---

[9]     The Woodbine Defendants deny this statement on the basis that it conflicts with
the document cited by Tarolli.  (Dkt. No. 98, Attach. 3, at ¶ 8 [Defs.'s Rule 7.1 Resp.].)
However, the cited document contains the exact language that Tarolli quotes.  *Archie Comic
Publ'ns*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.  This fact is deemed
admitted.

[10]     The Woodbine Defendants deny this statement but their general citation to the
affidavit of Brian St. Laurent does not suffice to contradict Tarolli's statement.  (Dkt. No. 98,
Attach. 3, at ¶ 8 [Defs.'s Rule 7.1 Resp.]; *see also Benson v. Otis Elevator Co.*, 10-CV-3246,
2012 WL 4044619, at *1, n.1 (S.D.N.Y. Sept. 13, 2012) (deeming fact asserted by movant to be
admitted by non-movant where non-movant supported denial "only with non-specific citations to
the entire testimony of several witnesses").  This fact is deemed admitted.

[11]     The Woodbine Defendants deny this statement; however, their supporting citation
to the St. Laurent affidavit does not address all of the portions of Tarolli's statement.  Therefore,
those unaddressed portions are deemed admitted.  However, to the extent that the St. Laurent
affidavit contains statements supporting part of the Woodbine Defendant's denial, those portions
are therefore disputed and have been omitted from this statement of undisputed material facts.
(*Compare* Dkt. No. 89, Attach. 3, at ¶ 10 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 98, Attach.
3, at ¶ 10 [Defs.' Rule 7.1 Resp.].)

Claims (those based on CERCLA) should be dismissed as against it.  (*Id.* at 12-16.)  Specifically, Lan-Co argues it was not a responsible party or covered person under CERCLA for three reasons: (a) it is not an "operator" of the Woodbine site because it never performed work at the site, was not under contract to perform work at the site, never did any work with the soil of the site, and there is no evidence that Lan-Co participated in actions that caused contamination of the soil at the site; (b) it did not arrange for the disposal of hazardous material at the site; and (c) it did not accept hazardous substances for transport.  (*Id.*)

Second, Lan-Co argues that, regarding the Third Claim (negligence), it cannot be held liable because it did not owe Plaintiff any special duty; specifically, it did not have a contract, relationship, or position of trust with Plaintiff that would give rise to any such duty, nor was it even aware that the soil at the Woodbine site was contaminated.  (*Id.* at 16.)

Third, Lan-Co argues that, regarding the Fifth Claim (damage to Plaintiff's property), it cannot be held liable because it had no part in the removal of the soil from the Woodbine site or in the storage of that soil on Plaintiff's property, and because it had no control over that stored soil at any time.  (*Id.* at 17.)

Fourth, Lan-Co argues that, regarding the Fourth and Sixth Claims (negligent misrepresentation and breach of contract), it cannot be held liable because it did not make any representations to Plaintiff about the soil from the Woodbine site and because it did not have a contract with Plaintiff.  (*Id.* at 17-18.)

Fifth, and last, Lan-Co argues that the cross-claims asserted against it by the other Defendants should be dismissed because it is not a responsible party under CERCLA and the additional state indemnification and contribution claims are preempted by CERCLA.  (*Id.* at 18.)

10

**b.        Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Lan-Co's motion, Plaintiff asserts four arguments.  (Dkt. No. 103, at 3-23 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that Lan-Co is not entitled to summary judgment on the First and Second Claims because there is a genuine dispute of material fact as to whether Lan-Co is a "covered person" under CERCLA, whether Lan-Co dispersed any soil on or in the vicinity of the Woodbine site, and whether any soil excavated by Lan-Co was placed on or mixed with the contaminated soil pile that Plaintiff purchased.  (*Id.* at 9-20.)

Second, Plaintiff argues that Lan-Co's motion is both premature and moot.  (*Id.* at 4-6, 21.)  Plaintiff argues that the motion is premature because there remains outstanding discovery that has not been completed and that would be crucial to properly deciding Plaintiff's claims.  (*Id.* at 4-6.)  Plaintiff argues that the motion is moot due to the Second Amended Complaint because Plaintiff filed a motion to amend the complaint before Lan-Co filed its motion for summary judgment, and Plaintiff's motion was granted after the filing of Lan-Co's motion.  (*Id.* at 21.)

Third, Plaintiff argues that Lan-Co has failed to show entitlement to summary judgment on the Third, Fourth, and Fifth Claims because there is a genuine dispute of material fact as to whether soil from Lan-Co's excavation was present in the contaminated soil pile that Plaintiff purchased.  (*Id.* at 22-23.)

Fourth, and last, Plaintiff argues that the cross-claims asserted against Lan-Co should not be dismissed because there is a genuine dispute of material fact as to whether Lan-Co is a responsible party under CERCLA.  (*Id.* at 23.)

<strong>c.     Woodbine Defendants' Opposition Memorandum of Law</strong>

Generally, in its opposition to Lan-Co's motion, the Woodbine Defendants assert three arguments.  (Dkt. No. 100, at 2-12 [Defs.' Opp'n Mem. of Law].)  First, the Woodbine Defendants argue that Lan-Co's motion should be denied as moot because it is based on the First Amended Complaint, which has since been replaced by the Second Amended Complaint.  (*Id.* at 3-4.)

Second, the Woodbine Defendants argue that Lan-Co's motion should be denied because there are genuine disputes of material fact yet to be resolved as to whether Lan-Co is a responsible party under CERCLA.  (*Id.* at 4-10.)  Specifically, the Woodbine Defendants argue that there is a genuine dispute of material fact for the following three reasons: (a) it is unclear whether Lan-Co never transported any soil related to the Woodbine site based on ambiguities about where the excess soil from its excavation was placed; (b) Tarolli and National Grid were both conducting work in the area at the same time as Lan-Co and it is unclear whose excavated soil ended up where; and (c) more will be learned about Lan-Co's activities through further discovery from Tarolli and National Grid.  (*Id.* at 6-10.)

Third, and last, the Woodbine Defendants argue that their cross-claims for common law contribution and indemnification against Lan-Co are not preempted by CERCLA to the extent they arise from claims outside of CERCLA or are for damages that are not available under CERCLA.  (*Id.* at 10-12.)

12

### d. Lan-Co's Reply Memorandum of Law as to Plaintiff's Opposition Memorandum of Law and Woodbine Defendants' Opposition Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law and the Woodbine Defendants' opposition memorandum of law, Lan-Co asserts three arguments. (Dkt. No. 110, at 2-12 [Def.'s Reply Mem. of Law].) First, Lan-Co argues that Plaintiff has adduced no evidence that soil from its excavation activities was placed in the pile of contaminated soil, while an affidavit from an employee of Lan-Co establishes that the excess soil was graded into the already-dug road base and that the soil excavated by Lan-Co was subsoil, not topsoil as was purchased by Plaintiff, so it could not have been in the pile of topsoil. (*Id.* at 2-9.)

Second, Lan-Co argues that its motion is not premature because Plaintiff and the other Defendants had adequate time to complete discovery necessary to oppose the motion and because any testimony Plaintiff seeks would not show that Lan-Co's excavated soil was in the soil pile purchased by Plaintiff. (*Id.* at 9-11.)

Third, and last, Lan-Co argues that its motion is not moot because nothing was changed in the Second Amended Complaint other than adding the National Grid Defendants as parties, and the interests of judicial economy would be better served by considering the motion. (*Id.* at 11-12.) Lan-Co also argues that statements Plaintiff made in its motion to amend the Complaint should be deemed as a waiver of the mootness argument. (*Id.* at 12.)

### 2. Defendant Tarolli's Motion for Partial Summary Judgment

### a. Tarolli's Memorandum of Law

In its motion for summary judgment, Tarolli asserts that it is entitled to summary judgment on its cross-claim against the Woodbine Defendants because Tarolli is entitled to

indemnification from the Woodbine Defendants by virtue of the contract between those parties. (Dkt. No. 89, Attach. 2, at 6-10 [Def.'s Mem. of Law].)  Specifically, Tarolli argues that the contract incorporates certain General Conditions that include a clause (Subsection 10.3.3) regarding hazardous materials that would indemnify Tarolli of any liability related to Plaintiff's CERCLA claims if there was alleged damage to tangible property that was not the result of Tarolli's sole negligence.  (*Id.* at 7-8.)  Tarolli argues that the damage alleged by Plaintiff as to its property caused by the contamination is sufficient to meet the first criterion of Section 10.3.3, while the fact that other parties were involved in transporting the soil to Plaintiff's property establishes that the damage was not caused by Tarolli's sole negligence.  (*Id.* at 9-10.)

> **b.**    **Woodbine Defendants' Opposition Memorandum of Law**

Generally, in opposition to Tarolli's motion, the Woodbine Defendants assert three arguments.  (Dkt. No. 98, at 3-15 [Defs.' Opp'n Mem. of Law].)  First, the Woodbine Defendants argue that Tarolli's motion should be denied as moot due to the filing of the Second Amended Complaint, even if the First Amended Complaint and Second Amended Complaint are the same or substantially similar.  (*Id.* at 3-4.)

Second, the Woodbine Defendants argue that Tarolli's motion should be denied because the incomplete copy of the contract submitted with the motion makes it impossible to adequately review and interpret the contract.  (*Id.* at 4-7.)

Third, and last, the Woodbine Defendants argue that, even if the single page of the General Conditions is found to be adequate to construe the contract, the Hazardous Materials provision would not indemnify Tarolli.  (*Id.* at 7-15.)  Specifically, the Woodbine Defendants argue that Subsection 10.3.3 must be read in the context of the other subsections, which, taken

together, suggest that Subsection 10.3.3 is applicable in narrow circumstances not involved here. (*Id.* at 7-10.)  Notably, the Woodbine Defendants argue that the Hazardous Materials provision serves to address worker safety and does not extend to claims related to environmental remediation.  (*Id.* at 12.)  The Woodbine Defendants also argue that, in the alternative, even if the Court finds that Subsection 10.3.3 is independent from the other subsections in the Hazardous Materials provision, Subsection 10.3.3 is still ambiguous as to whether the parties intended it to apply to CERCLA claims, and therefore the parties should be allowed to submit extrinsic evidence to aid in interpretation of that section.  (*Id.* at 12-13.)  The Woodbine Defendants lastly argue that, in the event the Court finds that Subsection 10.3.3 warrants indemnification, Tarolli would be able to indemnify only Woodbine Business Park (not Swanson, 244 Harrison, or 100 Collingswood) because only Woodbine Business Park signed the contract with Tarolli.  (*Id.* at 14-15.)

### c.      Tarolli's Reply Memorandum of Law

Generally, in reply to the Woodbine Defendants' opposition memorandum of law, Tarolli asserts two arguments.  (Dkt. No. 11, Attach. 1, at 4-10 [Def.'s Reply Mem. of Law].)  First, Tarolli argues that its motion should not be denied as moot because, although the general rule is that an amended complaint supercedes a previous version, the amendment here as no effect on the claim against Tarolli, and therefore the interests of judicial economy dictate that the Court should decide the current motion.  (*Id.* at 4-5.)

Second, Tarolli argues that the Woodbine Defendants' interpretation of the Hazardous Materials provision is inconsistent with the plain meaning of that provision because the other subsections apply only in situations where there was bodily injury.  (*Id.* at 8.)  Tarolli argues also

that, in interpreting the provision, the Court should not rely on the St. Laurent affidavit because it is impermissible parole evidence and, in any event, contradictory.  (*Id.* at 8-9.)  Tarolli argues that it has adduced evidence sufficient to show that it met the conditions of Subsection 10.3.3 and therefore has established that it is entitled to indemnification from the Woodbine Defendants.  (*Id.* at 6-7, 9-10.)

### 3.     National Grid Defendants' Cross-Motion to Dismiss

### a.     National Grid Defendants' Memorandum of Law

Generally, in their motion to dismiss for failure to state a claim upon which relief can be granted, the National Grid Defendants assert three arguments.  (Dkt. No. 123, Attach. 1, at 10-20 [Defs.' Mem. of Law].)  First, the National Grid Defendants argue that Plaintiff has failed to sufficiently plead CERCLA claims against them.  (*Id.* at 10-14.)  Specifically, the National Grid Defendants argue that Plaintiff's conclusory allegations that they are an "operator" or "transporter" in the meaning of CERCLA, without any factual support, are speculative allegations that do not suggest a plausible claim.  (*Id.* at 10.)  The National Grid Defendants argue that Plaintiff has not alleged facts plausibly suggesting that there is any factual nexus connecting them to the Woodbine site or the contaminated topsoil pile that Plaintiff purchased, other than to allege that National Grid worked in "the immediate vicinity of" the Woodbine site. (*Id.* at 11-12.)  The National Grid Defendants similarly argue that Plaintiff has effectively pled itself out of court by heavily relying on the deposition of Paul Joynt of Lan-Co, in which Mr. Joynt testified that he saw National Grid installing gas and electric lines in the vicinity of the Woodbine site, though not where the topsoil was stored.  (*Id.* at 13-14.)

Second, the National Grid Defendants argue that the state law claims are also not sufficiently pled.  (*Id.* at 15-21.)  Specifically, the National Grid Defendants argue that all of these claims are time-barred by the applicable statute of limitations, and that Plaintiff has failed to plead sufficient facts to state a claim upon which relief could be granted.  (*Id.* at 15-19.)

Third, and last, the National Grid Defendants argue that the CERCLA cross-claims asserted by the other Defendants should be dismissed because they are based on the same insufficient facts that Plaintiff pled in the Second Amended Complaint.  (*Id.* at 20.)  The National Grid Defendants also argue that the common law claims for contribution and indemnification are preempted by CERCLA.  (*Id.* at 20.)

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the National Grid Defendants' memorandum of law, Plaintiff asserts three arguments.  (Dkt. No. 137, Attach. 6, at 9-16 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that the CERCLA claims were sufficiently pled because, read as a whole, the Second Amended Complaint includes sufficient facts to state a plausible claim against the National Grid Defendants.  (*Id.* at 9-11.)  Plaintiff argues that a pleading for strict liability claims (such as a CERCLA claim) requires a less-detailed factual basis due to the nature of the claim and the goals of the statute.  (*Id.* at 13.)  Plaintiff argues that the Joynt deposition testimony (which was the basis for adding the National Grid Defendants) should be considered along with the Second Amended Complaint when determining whether Plaintiff stated a plausible claim. (*Id.* at 11-12.)  Plaintiff also argues that the fact that none of the other Defendants filed motions to dismiss in earlier stages of the litigation suggests that the claims were sufficiently pled.  (*Id.* at 15.)

17

Second, Plaintiff argues that the state law claims should also not be dismissed because they involve the "same focus of facts" as the CERCLA claim and should be allowed to proceed to the discovery stage.  (*Id.* at 16.)

Third, and last, Plaintiff argues that, in the event the Second Amended Complaint is dismissed as to the National Grid Defendants, it should be given leave to amend the Complaint to plead more specific facts and allegations.  (*Id.* at 16.)

### c.    Defendant Tarolli's Opposition Affidavit

Tarolli submitted an attorney affidavit opposing the National Grid Defendants' motion to dismiss, in which it notes that previous discovery has already shown that National Grid was at the site and were digging and moving soil; it therefore argues that the claims against the National Grid Defendants should be permitted to survive and be subject to discovery.  (Dkt. No. 138, at 1.)

### d.    Woodbine Defendants' Opposition Memorandum of Law

Generally, in opposition to the National Grid Defendants' motion to dismiss, the Woodbine Defendants assert two arguments.  (Dkt. No. 139, Attach. 2, at 4-14 [Defs.' Opp'n Mem. of Law].)  First, the Woodbine Defendants argue that their CERCLA-based cross-claims for contribution were sufficiently pled because they showed that there is evidence to establish the statutory requirements for those claims, noting also that the Joynt deposition provides sufficient evidence to sufficiently state these claims.  (*Id.* at 4-12.)

Second, the Woodbine Defendants argue that the state law claims for contribution and indemnification are not preempted by CERCLA to the extent they arise from claims outside of CERCLA or are for damages that are not available under CERCLA.  (*Id.* at 13-14.)

18

**e.      National Grid Defendants' Reply Memorandum of Law**

Generally, in their reply to Plaintiff's opposition memorandum of law, the National Grid Defendants assert three arguments. (Dkt. No. 140, at 6-13 [Defs.' Reply Mem. of Law].) First, the National Grid Defendants argue that, even when read in its totality, the Second Amended Complaint does not allege facts plausibly suggesting a nexus between the National Grid Defendants and the Woodbine soil pile that Plaintiff purchased, noting that, even if accepted as true, the Joynt deposition plausibly suggests only that (a) National Grid installed gas and electric lines in the shoulder of a right-of-way, (b) the soil pile had already been in place before National Grid did the installation, and (c) National Grid typically imports clean sand (rather than soil) to put into trenches around utility lines. (*Id.* at 8-9.) The National Grid Defendants argue that Plaintiff cites no authority to support its position that CERCLA claims are allowed on a lessened factual basis when pleading. (*Id.* at 7.) The National Grid Defendants also argue that the legal strategies of other Defendants (such as whether those Defendants chose to file motions to dismiss) are irrelevant to the National Grid Defendants' motion and do not establish the sufficiency of the Second Amended Complaint as to the National Grid Defendants. (*Id.* at 10-11.)

Second, the National Grid Defendants argue that the state law claims should be dismissed, noting that Plaintiff failed to respond to the National Grid Defendants' arguments regarding the statute of limitations and reiterating that there was no special relationship as required for the claims alleging breach of duty and negligent misrepresentation. (*Id.* at 11-12.)

Third, and last, the National Grid Defendants argue that the cross-claims by the other Defendants should also be dismissed because they rely on the same insufficient factual allegations as the Second Amended Complaint and are preempted by CERCLA.  (*Id.* at 12-13.)

## II.   GOVERNING LEGAL STANDARDS

### A.   Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[12]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

---

[12]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

P. 56(a), (c), (e).[13]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[14]

Of course, when a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has failed to properly respond to that statement.[15]

---

[13]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[14]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[15]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Similarly, in this District, where a non-movant has failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[16]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

---

[16]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F.

23

Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

24

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[17]

---

[17]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached

### III.    ANALYSIS

#### A.    Whether Lan-Co Is Entitled to Summary Judgment

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in the Lan-Co's memoranda of law.  (Dkt. No. 81, Attach. 14, at 12-18

[Def.'s Mem. of Law]; Dkt. No. 110, at 1-12 [Def.'s Reply Mem. of Law].)  To those reasons,

the Court adds the following analysis.

Before turning to a substantive analysis of Lan-Co's motion for summary judgment, two

preliminary issues raised by Plaintiff must be addressed: (1) whether Lan-Co's motion is

premature; and (2) whether Lan-Co's motion is moot.  (Dkt. No. 103, at 4-7, 21 [Pl.'s Opp'n

---

to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

Mem. of Law].)[18]

First, Plaintiff argues that Lan-Co's motion is premature because there remains further

discovery that needs to be conducted, pointing in particular to Tarolli's failure to respond to

discovery demands and Plaintiff's resulting inability to depose any representative of Tarolli.  (*Id.*

at 4-7.)  Under Fed. R. Civ. P. 56(d), "[i]f a non-movant shows by affidavit or declaration that,

for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1)

defer consideration of the motion or deny it; (2) allow time to obtain affidavits or declarations or

to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  The Second

Circuit has noted that "the opponent of a summary judgment motion who seeks additional

discovery must file an affidavit explaining (1) the information sought and how it is to be

obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what

efforts have been made to obtain the information; and (4) why those efforts have been

unsuccessful."  *Alzawahra v. Albany Med. Cntr.*, 546 F. App'x 53, 55 (2d Cir. 2013).[19]

However, "'a court plainly has discretion to reject a request for discovery if the evidence sought

would be cumulative or if the request is based only on speculation as to what potentially could

be discovered, and a bare assertion that the evidence supporting a plaintiff's allegation is in the

_____

[18]   Like Lan-Co, the Woodbine Defendants argue that Lan-Co's motion is moot in their opposition memorandum of law.  (Dkt. No. 100, at 3-4 [Defs.' Opp'n Mem. of Law].)  The Court's analysis is intended to address both Plaintiff's and Defendants' arguments.

[19]   This decision was based on an old version of the Federal Rules of Civil Procedure, but old Fed. R. Civ. P 56(f) is essentially equivalent to new Fed. R. Civ. P 56(d).  Notably, this Court has more recently found that these four factors apply to the new Fed. R. Civ. P. 56(d).  *Jean-Laurent v. Lane*, 11-CV-0186, 2016 WL 4775742, at *11 (N.D.N.Y. Aug. 18, 2016) (Dancks, M.J.) *Report and Recommendation adopted by* 2016 WL 4768828 (Sept. 13, 2016) (Mordue, J.); *Biller v. Excellus Health Plan, Inc.*, 14-CV-0043, 2015 WL 5316129, at *13 & n.8 (N.D.N.Y. Sept. 11, 2015) (Suddaby, J.).

hands of the defendant is insufficient.'"  *Crye Precision LLC v. Duro Textiles, LLC*, 689 F.

App'x 104, 108 (2d Cir. 2017) (quoting *In re Dana Corp.*, 574 F.3d 129, 148-49 [2d Cir. 2009]);

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016).

Plaintiff argues that, because additional discovery is "crucial" to its claims, the Court

should not decide Lan-Co's motion until that discovery has been conducted.  (*Id.* at 6-7.)  In an

affidavit submitted with Plaintiff's response, Plaintiff's attorney states that (1) Plaintiff still

needs to depose Lan-Co employees and former employees about where excess soil from Lan-

Co's activities ended up based on the deposition of Paul Joynt (Lan-Co's owner) that some of the

material excavated was not placed back in the trench but rather was re-graded throughout the

area, (2) it intends to continue to seek documents from Tarolli and depose Derek Tarolli to ask

about the creation of the soil pile, whether Lan-Co contributed to that pile, and where Lan-Co

regraded the excess soil, and (3) it intends to dispose National Grid to determine what its

employees observed of Lan-Co's activities.  (Dkt. No. 102, at ¶¶ 4-5, 7-8, 10 [Bailey Aff.].)

Plaintiff does not provide any indication that it has yet attempted to obtain depositions from Lan-

Co's employees or National Grid, but states that it served a document demand on Tarolli on

March 17, 2017, to which it has received no response."  (*Id.* at ¶ 4.)[20]

---

[20]    Regarding Tarolli's apparent failure to answer Plaintiff's discovery request, there
is no indication that Plaintiff availed himself of appropriate avenues to ensure that the necessary
discovery would be concluded before a decision was rendered on Lan-Co's motion for summary
judgment.  *See Javier v. Deringer-Ney, Inc.*, 419 F. App'x 100, 102 (2d Cir. 2011) (noting that
the "management of discovery lies within the sound discretion of the district court" and
declining to find abuse of discretion in the court's decision to reach the merits of the summary
judgment motion where, after eight months, plaintiff had not availed himself of any tools to
compel discovery related to requests with which defendant had failed to comply); *Bank of
America Nat. Trust & Savs. Ass'n v. Envases Venezolanos, S.A.*, 740 F. Supp. 260, 269
(S.D.N.Y. 1990) (finding unpersuasive arguments that plaintiff's failure to answer discovery
requests made it difficult for defendants to respond to plaintiff's motion for summary judgment

Plaintiff's argument regarding the need to depose Lan-Co's employees and former employees is not persuasive because, even if the Court were to assume that Plaintiff has adequately shown how a genuine dispute of material fact would be created by this information, Plaintiff's affidavit does not indicate what efforts have been made to obtain this discovery and why those efforts have been unsuccessful.  Plaintiff admits that Lan-Co provided the documents they requested and that Mr. Joynt was deposed on March 31, 2017, approximately four months before Lan-Co filed its motion for summary judgment and at least five months before Plaintiff opposed that motion.  (Dkt. No. 102, at ¶ 4 [Bailey Aff.].)  Plaintiff offers no explanation for failing to make any attempt to depose relevant Lan-Co employees identified by Mr. Joynt's deposition testimony in the intervening time.  *Alzawahra v*, 546 F. App'x at 55.  Plaintiff's affidavit is therefore insufficient as to Lan-Co's employees and former employees.

Plaintiff's arguments regarding Tarolli and National Grid are also unpersuasive. Although National Grid was quite recently added to this action and therefore could not have been deposed or otherwise provided discovery materials sooner, Plaintiff offers little more than speculative assertions to support its arguments regarding the need for discovery; it asserts that it needs to find out if National Grid observed Lan-Co adding excess soil to the Woodbine soil pile, yet there is no evidence from any other source to suggest that Lan-Co did so.  (Dkt. No. 102, at ¶ 10 [Bailey Aff.].)  Similarly, Plaintiff's reported need to depose Tarolli is to determine whether

---

because defendants had not made a motion under Fed. R. Civ. P. 56(f) [now Fed. R. Civ. P. 56(d)] to stay the motion absent additional discovery, or a motion for discovery sanctions under Fed. R. Civ. P. 37); Fed. R. Civ. P. 37 (stating that a party may move for an order to compel disclosure or discovery after they have made a good faith effort to obtain the disclosure or discovery without court action).  Plaintiff's failure to pursue the discovery remedies available to it weighs against its argument that the Court should defer consideration of Lan-Co's motion.

Tarolli observed Lan-Co adding soil to the Woodbine soil pile.  (*Id.* at ¶ 8.)  Although Plaintiff interprets Mr. Joynt's testimony (particularly his out-of-context statement that the soil is "just lost" after regrading) to suit its argument that it is uncertain where the excess soil excavated by Lan-Co was placed, Mr. Joynt's testimony does not support that interpretation.  Rather, Mr. Joynt testified that the excess soil that cannot be placed back into the trench "gets graded *in the road*, in the subbase area, subgrade area."  (Dkt. No. 81, Attach. 8, at 57:25- 58:2 [Joynt Dep.] [emphasis added].)  Mr. Joynt further clarified in his subsequent affidavit that "all of any excess soils from the Work . . . were spread solely in the road sub grade . . . and none was transported, dumped, spread, or disposed of outside of the Town's right-of-way area or onto or into the soil pile in existence at the time located on Woodbine property."  (Dkt. No. 110, Attach. 5, at ¶ 11 [Joynt Aff.].)  Given Mr. Joynt's testimony and the lack of any evidence to suggest that further discovery would in fact produce evidence necessary to oppose Lan-Co's motion, Plaintiff has not shown that its alleged need to conduct further discovery is based on anything more than "speculation as to what potentially could be discovered" from Tarolli and National Grid.  *See Crye Precision LLC*, 689 F. App'x at 108; *cf. Foresta v. Centerlight Capital Mgmt., LLC*, 379 F. App'x 44, 46 (2d Cir. 2010) (finding error in the district court's grant of summary judgment without further discovery where there was no evidence at all concerning multiple elements of the claim).  The Court therefore finds that Lan-Co's motion is not premature.

Second, Plaintiff argues that Lan-Co's motion for summary judgment is moot in light of the Second Amended Complaint, simply because the Second Amended Complaint was filed after Lan-Co's motion.  (Dkt. No. 103, at 21 [Pl.'s Opp'n Mem. of Law].)  The Court rejects this argument.  Granted, when there is an amended complaint, motions filed during the pendency of

the previous version of the complaint are sometimes regarded as moot.  However, this is because the amended complaint either (1) cured the pleading defects identified (through a motion to dismiss for failure to state a claim) in the original complaint, or (2) so drastically changed the landscape of the relevant allegations, claims, and defenses (which determine the scope of permissible discovery under Fed. R. Civ. P. 26[b][1]) as to deprive the non-moving party of an adequate opportunity to conduct discovery on the matters presented by a motion for summary judgment.  *See Coleman v. City of Syracuse*, 09-CV-1391, 2011 WL 13808, at *1 (N.D.N.Y. Jan. 4, 2011) (Suddaby, J.) (addressing issue in context of motion to dismiss for failure to state a claim); *Abdul-Matiyn v. Allen*, 06-CV-1503, 2010 WL 3880510, at *4 & n. 9 (N.D.N.Y. Sept. 28, 2010) (Suddaby, J.) (addressing issue in context of motion for summary judgment).  Here, the Court finds that the filing of Plaintiff's Second Amended Complaint did not moot Lan-Co's motion for summary judgment, because it did neither of the aforementioned two things.

Most notably, while Plaintiff's Second Amended Complaint corrected and/or specified various allegations with regard the Woodbine Defendants and made a few additional factual allegations regarding the address and size of the Woodbine property, the contract between Plaintiff and Woodbine, the location of where PCBs were found in soil on subsequent testing, and the specifics of where Plaintiff used the contaminated soil, it did not materially change any allegations or claims against Lan-Co.[21]  (*Compare* Dkt. No. 37 [First Am. Compl.] *with* Dkt. No. 91 [Second Am. Compl.].)  Plaintiff has not shown how its adding of the National Grid

---

[21]     Plaintiff did add, regarding the CERCLA claims, an allegation that Defendants are covered persons within the meaning of CERCLA.  (Dkt. No. 79, Attach. 5, at ¶ 42 [Redline Second Am. Compl.].)  However, given that Lan-Co addressed whether it is a covered person at length in its memorandum of law, this change does not suggest that Lan-Co's motion should be found to be moot.  (Dkt. No. 81, Attach. 14, at 12- 16 [Def.'s Mem. of Law].)

Defendants drastically changed the discovery landscape or materially changed Lan-Co's arguments against Plaintiff's claims such that the Court should find the summary judgment motion to be moot.  Additionally, Plaintiff filed its motion to amend the First Amended Complaint (attached to which was a copy of the proposed amendments) on July 11, 2017 (before Lan-Co filed its motion for summary judgment) and Lan-Co's reply memorandum of law was filed on September 8, 2017, after the Second Amended Complaint was filed on August 25, 2017. (Dkt. No. 79; Dkt. No. 79, Attach. 5; Dkt. No. 81; Dkt. No. 91 [Second Am. Compl.]; Dkt. No. 110 [Def.'s Reply Mem. of Law].)  Lan-Co therefore had at least an awareness of the proposed amendment when it filed its motion for summary judgment, and had the opportunity to respond directly to any new facts raised in the Second Amended Complaint (an opportunity that it availed itself of when appropriate in its reply memorandum of law).  Finally, in light of the fact that Plaintiff made no amendments that materially affect Lan-Co's arguments and Lan-Co had the opportunity to address any newly alleged facts in its reply memorandum of law, the situation strongly suggests that the interests of judicial economy would be better served by deciding Lan-Co's current motion at the present time.  *See Henrietta D. v. Giuliani*, 95-CV-0641, 2001 WL 1602114, at *6 n.1 (E.D.N.Y. Dec. 11, 2001) (noting that, although the motion to stay was untimely, the court would decide the motion for purposes of judicial economy and efficiency). Because the Court finds that Lan-Co's motion is neither premature nor moot, the merits of Lan-Co's motion may properly be decided in this Decision and Order.

### 1.    Plaintiff's CERCLA Claims

As discussed above in Part I.D.1.A of this Decision and Order, Lan-Co argues that it is entitled to summary judgment on Plaintiff's CERCLA claims for three reasons: (1) it is not an

32

"operator" as defined by CERCLA; (2) it is not an entity that "arranged for disposal" of a hazardous substance as defined by CERCLA;[22] and (3) it is not an entity that accepted hazardous substances for transport as defined by CERCLA.  (Dkt. No. 81, Attach. 14, at 12-16 [Def.'s Mem. of Law].)  The Second Circuit has noted that "[s]ummary judgment is only proper when a defendant establishes it is not liable under CERCLA–namely, it is not a [potentially responsible party] under the statute, there is no plausible evidence that it discharged hazardous materials, or it is eligible for one of the three affirmative defenses."  *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 132 (2d Cir. 2010).

First, regarding Plaintiff's claim that Lan-Co was an operator of the Woodbine site, Plaintiff has not adduced any admissible evidence to create a genuine dispute of material fact as to whether Lan-Co meets CERCLA's definition of "operator."  *See Niagara Mohawk Power Corp.*, 596 F.3d at 135 ("To be an operator under the statute, a person 'must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the

---

[22]     Although Lan-Co argues that Plaintiff claims it is liable under CERCLA as a person who "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances," the Court finds no such claim in the Second Amended Complaint.  (Dkt. No. 91, at ¶¶ 26-30, 37-38 [Second Am. Compl.].)  Therefore, the Court need not discuss in detail whether Lan-Co was an arranger.  However, for the sake of completeness, the Court simply notes that there is no evidence to establish that Lan-Co gave or sold contaminated soil or any other hazardous substance to any other person for the purposes of having that person dispose of or treat the soil; to the contrary, Mr. Joynt testified that no materials were hauled off site and that Lan-Co did not store or dispose of any materials or have anyone else dispose of any soil.  (Dkt. No. 81, Attach. 8, at 58: 3-4, 68:3-7 [Joynt Deposition].)  *See also Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 609-13 (applying the ordinary meaning of "arrange" to hold that "an entity may qualify as an arranger under [Section] 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance"); *Freeman v. Glaco Wellcome, Inc.*, 189 F.3d 160, 164 (2d Cir. 1999) (holding that a defendant was not an arranger under CERLCA because it "merely [sold] a product, without additional evidence that the transaction include[d] an 'arrangement' for the ultimate disposal of hazardous substances").  There is therefore no genuine dispute of material fact as to whether Lan-Co was an arranger.

leakage or disposal of hazardous waste.'") (quoting *United States v. Bestfoods*, 524 U.S. 51, 65-66 [1998]); *see also New York State Elec. and Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 222 (2d Cir. 2014) (noting that "[a]n operator is defined as 'someone who directs the workings of, manages, or conducts the affairs of a facility'").  Although Plaintiff alleges that Lan-Co performed work in the form of installing fire hydrants on the side of the right-of-way area closest to the Woodbine property, there is no evidence that those hydrants were installed on the Woodbine property itself rather than the Town's right-of-way area.  Likewise, there is no evidence adduced to show that Lan-Co directed the workings of, managed, conducted, or controlled the affairs of any portion of the Woodbine facility, much less specifically as related to matters concerning hazardous waste.  Plaintiff also does not adduce any evidence suggesting that Lan-Co was the source of the PCB contamination, either on the Woodbine site or the right-of-way section, or that the contamination occurred when Lan-Co was working on the right-of-way. *See Schenectady Indus. Corp. v. Upstate Textiles, Inc.*, 689 F. Supp. 2d 282, 293-94 (N.D.N.Y. 2010) (Sharpe, J.) (noting that "'[o]perator' status is evaluated according to 'the degree of control a party is able to exert *over the activity causing the pollution*'") (emphasis added). Because there is no evidence suggesting that Lan-Co caused the pollution of the soil in the right-of-way during its work, the only way in which it could be an operator is through engaging in any activity during the work on the right-of-way area that caused the pollution to spread to the Woodbine property or the Woodbine soil pile.  The question therefore becomes whether Lan-Co moved contaminated soil from the right-of-way area to the Woodbine soil pile; because this is also the crux of the analysis of whether Lan-Co is a transporter under CERCLA, it will be discussed below in that context.

Second, regarding Plaintiff's claim that Lan-Co transported or disposed of hazardous substances, Plaintiff fails to point to any facts supporting that claim, noting only that, "[u]nder the circumstances here where all discovery has not concluded and no experts have been heard from, the inference must be that something similar to what happened in [*Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338 (9th Cir. 1992)] is what happened in this case."  (Dkt. No. 103, at 15-16 [Pl.'s Opp'n Mem. of Law].)  The Court has already addressed and rejected Plaintiff's arguments that incomplete discovery precludes consideration of Lan-Co's motion for summary judgment (particularly in light of Plaintiff's failure to avail himself of any methods to compel discovery from Tarolli).  *Javier*, 419 F. App'x at 102.  The Court also rejects Plaintiff's argument that an "inference" that Lan-Co caused soil to be added to the contaminated pile is sufficient to overcome a motion for summary judgment because that argument is contrary to well-established law, which requires the non-movant must come forward with *specific facts* showing a genuine dispute of material fact for trial once the movant has identified facts showing that there is no genuine dispute.  Fed. R. Civ. P. 56(a), (c), (e) (emphasis added); *see also Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585-86 ("[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."); *Kerzer*, 156 F.3d at 400 ("Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact.").

More specifically, the Court finds that Plaintiff has not adduced any facts to support its assertion that the soil Lan-Co excavated ended up in the Woodbine soil pile.  The fact that Lan-Co regraded the excess soil into the roadbed in no way establishes that it is a transporter because, even though Lan-Co necessarily had to move the soil in order to regrade it, there is no evidence

connecting the act of regrading the soil into the road with the Woodbine soil pile that is the basis

of Plaintiff's CERCLA claim.  In particular, the evidence establishes that the roadbed was

stripped, cleared, and grubbed before Lan-Co began work, and that the Woodbine soil pile

(along with the other two soil piles also on the Woodbine property) were created as a result of

that prior stripping, clearing, and grubbing, and the creation of the detention basin.  (Dkt. No. 81,

Attach. 6, at 8:20-25, 9:1-7; Dkt. No. 81, Attach. 7, at 7:17-19, 8:4-25, 9:2-4; Dkt. No. 81,

Attach. 8, at 38:17-19, 40:19-25, 41:1-13, 69:8-25, 71:12-22, 102:20-23.)  Additionally, Mr.

Joynt testified that the only materials that were transported across Canada Drive for the fire

hydrant installation was the "Type B" material, which Mr. Joynt clarified was two-inch stone for

this project, although Lan-Co did also use "Type F" runner crush stone that includes smaller

stones to fill the hydrant-line crossings on the roadbed; there is no evidence to suggest that Lan-

Co transported any of the excess soil from the pipe trench across the road. (Dkt. No. 81, Attach.

8, at 75:18-25, 76:1-3, 83:18-25, 84:1-9, 84:24-25, 85:1-25, 86:1-11, 87:3-6 [Joynt Deposition].)

Simply put, Plaintiff has not adduced a single shred of evidence that any soil excavated by Lan-

Co came to be part of the Woodbine soil pile to combat Mr. Joynt's testimony that excess soil

were graded into the already-stripped roadbed.[23]

---

[23]     Although Plaintiff is correct that the Second Circuit has noted that "there is
nothing objectionable in basing findings solely on circumstantial evidence" in CERCLA cases,
there is absolutely no indication that the Second Circuit intended to allow a non-movant to
survive a summary judgment motion based on a lack of *any* evidence to even raise a logical
inference.  *Niagara Mohawk Power Corp.*, 596 F.3d at 131.  Plaintiff has not provided even
circumstantial evidence to create a genuine dispute of material fact regarding where Lan-Co put
the excess soil from its excavation.  Notably, Plaintiff's argument that an inference can be drawn
that Lan-Co might have added soil to the Woodbine pile simply because they were working in an
area near the pile is heavily outweighed by direct testimony from Mr. Joynt that the excess soil
was regraded into the roadbed.  As a result, the requested inference is not a reasonable one.

Nor is Plaintiff's reliance on the Ninth Circuit's findings in *Kaiser* persuasive. For the sake of brevity, the Court will set aside the fact that *Kaiser* involved a motion to dismiss for failure to state a claim while this case involves a motion for summary judgment. *See Kaiser*, 976 F.2d at 1343 (reversing the dismissal of a third-party complaint because it found factual allegations that another party excavated contaminated soil from one area of a property and moved it to an uncontaminated area of the same property were sufficient to state a claim of CERCLA liability). More important is the fact that Plaintiff in this case has adduced no admissible record evidence establishing that Lan-Co moved hazardous material from a contaminated area to an uncontaminated area (thereby spreading contamination) as was the case in *Kaiser*, much less that Lan-Co's actions contributed to the contamination caused by Plaintiff's use of the soil from the Woodbine soil pile at the other locations. Simply stated, Plaintiff's unsupported speculations and unreasonable inferences are not sufficient to create a genuine dispute of material fact as to whether Lan-Co was a transporter within the meaning of CERCLA.

Because Lan-Co has shown that it is not a potentially responsible party within the meaning of CERCLA, the Court grants Lan-Co's motion for summary judgment on Plaintiff's CERCLA claims. *Niagara Mohawk Power Corp.*, 596 F.3d at 132.

### 2.    Plaintiff's State Law Claims

Lan-Co also argues that it should be granted summary judgment on Plaintiff's Third, Fourth, Fifth, and Sixth Claims.[24]   (Dkt. No. 81, Attach. 14, at 16-18 [Def.'s Mem. of Law].)

---

[24]    Although Lan-Co includes the Sixth Claim in its argument, the Second Amended Complaint makes clear that the Sixth Claim was specifically asserted against only Woodbine Business Park and Swanson. (Dkt. No. 91, at ¶¶ 62-65 [Second Am. Compl.].) This claim therefore is not applicable to Lan-Co.

Regarding the Third Claim, notwithstanding whether the claimed breach of duty to inform is characterized as a negligence-based claim or a breach of a fiduciary duty, the claim requires that there be some reason that Lan-Co would owe a duty to inform Plaintiff. Specifically, "[u]nder New York law, a duty to disclose material facts arises in one of three ways: (1) where the parties stand in a confidential fiduciary relationship; (2) where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge; or (3) where a party to a business transaction has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half the truth."  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 201 (S.D.N.Y. 2011) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 [2d Cir. 2006]).

Similarly, regarding the Fourth Claim, under New York law, a negligent misrepresentation claim includes an element that the defendant "had a duty, as a result of a special relationship, to give correct information."  *See Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011) (quoting *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 [2d Cir. 2000]); *see also Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996) ("[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party.").

Here, there is no admissible evidence of record to establish that Lan-Co had a relationship with Plaintiff that conferred on Lan-Co a duty to inform Plaintiff of the potential for contaminated soil, or that Lan-Co had a "special relationship" with Plaintiff that conferred on

Lan-Co a duty to give correct information to Plaintiff.  In particular, there is no evidence that

Lan-Co had any dealings whatsoever with Plaintiff related to this matter, much less a

confidential fiduciary relationship or a special position of confidence and trust.  Notably,

Plaintiff's opposition arguments (to Lan-Co's motion to dismiss these claims) consist of

assertions that the depositions and affidavits relied on by Lan-Co were not based on "sufficient

personal knowledge" and that Lan-Co did not include in its motion certain responses by Plaintiff

to interrogatories or discovery requests; Plaintiff does not, however, cite any facts that would

show the existence of any type of relationship between it and Lan-Co.  (Dkt. No. 103, at 22-23

[Pl.'s Opp'n Mem. of Law].)  These arguments are not well taken.  Plaintiff's objections to the

depositions and affidavits are based on a few out-of-context statements that ignore other portions

of those sources' testimony.  Regarding the interrogatory/discovery responses, even if this Court

finds that those responses are not properly before the Court due to Lan-Co's failure to submit

them with its initial motion papers, such a finding is not fatal to Lan-Co's motion.  Plaintiff has

failed to adduce any evidence to establish that Lan-Co had the requisite relationship with

Plaintiff to impose on Lan-Co the duties Plaintiff asserts.  Most notably, Plaintiff admitted, in

response to Lan-Co's Statement of Material Facts, that Lan-Co was not a party to the contract

related to the purchase of the soil.  (Dkt. No. 101, at ¶ 23 [Pl.'s Rule 7.1 Response].)  Simply

stated, Plaintiff has not presented any admissible record evidence of a relationship between itself

and Lan-Co that would be sufficient to establish an essential element of both the Third and

Fourth Claims.  *See Smythe v. Am. Red Cross Blood Servs. N.E. New York Region*, 797 F. Supp.

147, 151 (N.D.N.Y. 1992) (McCurn, C.J.) (noting that the non-movant must make a showing

sufficient to establish all elements essential to its case, and that, "[i]f the non-movant fails to

satisfy this initial burden, there can be no genuine issue as to any material fact because 'a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 [1986]); *see also Nick's Garage, Inc. v. Progressive Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (noting that a movant for summary judgment can meet its burden by [1] submitting evidence that negates an essential element of the non-moving party's claim, or [2] demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the claim). Because Plaintiff cannot establish all the essential elements of the Third and Fourth Claims, the Court grants Lan-Co's motion for summary judgment as to these claims.

Regarding the Fifth Claim, a claim of private nuisance requires that a plaintiff establish that (1) there was an interference with the use or enjoyment of the land that (2) was substantial in nature, (3) intentional or negligent in origin, (4) unreasonable in character, and (5) caused by the defendant's conduct. *Anderson v. Elliott*, 807 N.Y.S.2d 101, 102 (N.Y. App. Div. 2d Dep't 2005). Even assuming (without deciding) that there is at least a genuine dispute of material fact as to the first four elements of this claim, Plaintiff's claim would still fail because there is no genuine dispute of material fact regarding the fifth element; as a result, Plaintiff would not be able to establish all of the essential elements of this claim. *Nick's Garage, Inc.*, 875 F.3d at 114; *Smythe*, 797 F. Supp. at 151. As discussed extensively above in Part III.A.1 of this Decision and Order regarding Plaintiff's CERCLA claims, Plaintiff has not adduced any evidence to counter the evidence establishing that (a) Tarolli performed the stripping, clearing, and grubbing of the roadbed before Lan-Co began its work, (b) the soil from Tarolli's work was the soil that was placed into piles on the Woodbine property, and (c) Lan-Co regraded the excess soil from its

excavation activities into the already stripped, cleared, and grubbed roadbed.  Notably, there is

no evidence before this Court that in any way establishes that soil excavated by Lan-Co was in

the Woodbine soil pile that ultimately was the source of the alleged interference with Plaintiff's

enjoyment and use of its property.  Because Plaintiff could not establish an essential element of

this claim, Lan-Co is entitled to summary judgment on the Fifth Claim as well.

### 3.    Defendants' Cross-Claims

Lan-Co lastly asserts that it should be granted summary judgment on the cross-claims

asserted against it by Tarolli and the Woodbine Defendants.  (Dkt. No. 81, Attach. 14, at 18

[Def.'s Mem. of Law].)  More specifically, Lan-Co argues that the CERCLA contribution cross-

claims must be dismissed because it is not a responsible party (and therefore not liable) under

CERCLA, and that the state law contribution and indemnification claims must be dismissed

because they are preempted by CERCLA.  (*Id.*)

Regarding the CERCLA cross-claims, Section 113(f)(1) of CERCLA states that "any

person may seek contribution from any other person who is liable or potentially liable" for a

violation under 42 U.S.C. § 9607(a).  42 U.S.C. § 4613(f)(1).  Because the Court has already

determined that there is no genuine dispute of material fact as to whether Lan-Co was a

potentially responsible party under CERCLA, the dismissal of that claim means that Defendants

would not be entitled to seek CERCLA contribution from Lan-Co.

Regarding the state law contribution and indemnification claims, the Court notes that it

need not decide the issue of whether these cross-claims are preempted because, as detailed

thoroughly above, the Court finds that Lan-Co is entitled to summary judgment on all of

Plaintiff's claims against it.  Because Lan-Co cannot be found liable on these dismissed state law

claims (or the CERCLA claim), there would be no basis for allowing the other Defendants to seek common law indemnification or contribution. *See Goodman v. Port Auth. of New York and New Jersey*, 850 F. Supp. 2d 363, 378-79 (S.D.N.Y. 2012) (dismissing the defendants' cross-claims for indemnification and contribution as moot where the plaintiff's claims that were the basis for the action had been dismissed); *see also Firestone v. Berrios*, 42 F. Supp. 3d 403, 420 (E.D.N.Y. 2013) (noting that, under New York precedent, the conclusion that a defendant is not liable to the plaintiff "'necessarily defeats the cross-claims for contribution asserted against [that defendant] by the other defendant,'" but noting also that there may be some situations where contribution would still be allowed, such as where the alleged wrongdoer is not subject to suit by the injured party due to the running of the statute of limitations) (quoting *Mohawk Intern., Inc. v. Zangrill*, 555 N.Y.S.2d 962 [App. Div. 4th Dep't 1990]).  The Court therefore grants Lan-Co's motion for summary judgment as to the cross-claims of the other Defendants.

> **B.      Whether Tarolli Is Entitled to Summary Judgment on Its Cross-Claim Against the Woodbine Defendants**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in the Woodbine Defendants' opposition memorandum of law.  (Dkt. No. 98, at 4-13 [Defs.' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

As a threshold matter, the Court rejects the Woodbine Defendants' argument that Tarolli's motion for partial summary judgment should be denied as moot due to the filing of the Second Amended Complaint.  (Dkt. No. 98, at 3-4 [Defs.' Opp'n Mem. of Law].)  The Court finds that the filing of Plaintiff's Second Amended Complaint did not moot Defendant Tarolli's motion for partial summary judgment, because it neither cured pleading defects identified in the original complaint, nor so drastically changed the landscape of the relevant allegations, claims,

and defenses (which determine the scope of permissible discovery under Fed. R. Civ. P. 26[b][1]) as to deprive the non-moving party of an adequate opportunity to conduct discovery on the matters presented by a motion for summary judgment. *See Coleman*, 2011 WL 13808, at *1; *Matiyn*, 2010 WL 3880510, at *4 & n. 9.

Most notably, while Plaintiff's Second Amended Complaint corrected and/or specified various allegations with regard the Woodbine Defendants, it did not materially change any allegations or claims against Defendant Tarolli.  (Dkt. No. 79, Attach. 5.)[25]  For this reason, Defendant Tarolli's cross-claim against the Woodbine Defendants–which is the subject of Defendant Tarolli's motion for partial summary judgment–did not materially change after Plaintiff filed its Second Amended Complaint (its only change being the insertion of mention of the Second Amended Complaint's newly added National Grid Defendants).  (*Compare* Dkt. No. 51, at Cross-Claim [Def. Tarolli's Answer to Plf.'s Am. Compl. and Cross-Claim Against Woodbine Defs.] *with* Dkt. No. 108, at Cross-Claim [Def. Tarolli's Answer to Plf.'s Second Am. Compl. and Cross-Claim Against Woodbine Defs.].)  The Woodbine Defendants have not shown how Defendant Tarolli's insertion of a mention of the newly added National Grid Defendants has materially changed Tarolli's cross-claim against the Woodbine Defendants (and necessitated additional discovery that they have been unable to conduct).

For all of these reasons, the Court rejects the Woodbine Defendants' mootness argument, and proceeds to an analysis of the merits of Defendant Tarolli's motion.

---

[25]     The Court notes that, even if the Second Amended Complaint (of August 25, 2017) did somehow change the nature of Plaintiff's allegations or claims against Defendant Tarolli, all parties knew of those changes when Defendant Tarolli filed its motion for partial summary judgment (of August 21, 2017), because the motion to amend (of July 11, 2017), which spelled out the proposed changes, was granted on August 17, 2017.

When interpreting contracts under New York law, the intention of the parties controls. *Wiser v. Enervest Operating, LLC,* 803 F. Supp. 2d 109, 116 (N.D.N.Y. 2011) (Peebles, M.J.) (citing *SR Int'l Bus. Ins. Co. v. World Ctr. Props., LLC*, 467 F.3d 107, 125 [2d Cir. 2006]). Because the plain meaning of an unambiguous contract must be enforced, "the threshold question of law for the court is whether the contract . . . is ambiguous." *Wiser*, 803 F. Supp. 2d at 116 (citing *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust*, 375 F.3d 168, 177 [2d Cir. 2004]; *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 [2d Cir. 2010]). "The grant of summary judgment is inappropriate where the disputed language of a contract is ambiguous." *Id.* (citing *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 914 [2d Cir. 2010]). "Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (citing *Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667 [N.Y. 2003]).

Additionally, under New York law, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989). "The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper Assocs.*, 548 N.E.2d at 905.

The Woodbine Defendants argue that Tarolli is not entitled to summary judgment because it did not submit a complete version of the contract, specifically a full copy of the General Conditions that were incorporated into the contract. (Dkt. No. 98, at 4-7 [Defs.' Opp'n

44

Mem. of Law].)  In reply, Tarolli asserts that the omitted portions of the General Conditions are irrelevant.  (Dkt. No. 111, Attach. 1, at 7 [Def.'s Reply Mem. of Law].)  As the Woodbine Defendants note in their opposition memorandum of law, "[t]he rules governing contract interpretation, including the legal determination of ambiguity and the consideration of extrinsic evidence, presuppose a complete contract."  *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 328 (N.D.N.Y. 2017) (Hurd, J.) (citing *Greenfield v. Philles Records, Inc.*, 780 N.E. 166 [N.Y. 2002]).  Certainly, it would be difficult for this Court to read the contract "as a whole," interpret provisions "with reference to the whole," and read the contract in a way that would "not render any portion meaningless" without having a full copy of all parts of the contract.  *Beal Sav. Bank v. Sommer*, 865 N.E. 1210, 1213-14 (N.Y. 2007).  Specifically, without the rest of the General Conditions, it is unclear whether there are any other general provisions in the contract related to indemnity that might be helpful for interpreting the scope of Subsection 10.3.3.  However, the Court need not determine whether the incompleteness of the provided version of the contract is itself fatal to Tarolli's motion because the Court finds that, in any event, Subsection 10.3.3 does not plainly impose on the Woodbine Defendants a duty to indemnify Tarolli for the claims presented in this litigation, and that the ambiguity as to this issue precludes summary judgment.

Tarolli argues that Section 10.3 and its subsections are unambiguous as to whether the parties intended to impose a duty to indemnify Tarolli under the circumstances presented in this case, but the Court does not agree.  (Dkt. No. 111, Attach. 1, at 8 [Def.'s Reply Mem. of Law].)  The applicable subsections of Section 10.3 (regarding Hazardous Materials) state the following:

§ **10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or [PCB], encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ **10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor, and in the event such material or substance is found to be present, to verify that is has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objections to the persons or entities proposed by the Owner. If either the Contractor or the Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay, and start-up, which adjustments shall be accomplished as provided in Article 7.

§ **10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss, or expense is not due to the sole negligence of a party seeking indemnity.

§ **10.3.4** The Owner shall not be responsible under Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

(Dkt. No. 89, Attach. 6, at 1.)

The Court agrees with the Woodbine Defendants that Subsection 10.3.3 cannot be read in isolation from the other subsections of the Hazardous Materials provision because Subsection 10.3.3 is plainly related to the other subsections.  Tarolli argues that, because there was no bodily injury in this case, it is required to establish only that (a) the claim is attributable to injury to, or destruction of, property, and (b) such damage was not caused by its sole negligence in order to be entitled to indemnity from the Woodbine Defendants.  (Dkt. No. 89, Attach. 2, at 8 [Def.'s Mem. of Law]; Dkt. No. 111, Attach. 1, at 8 [Def.'s Reply Mem. of Law].)  This interpretation ignores not only the other subsections in Section 10.3, but also the totality of the language in Subsection 10.3.3.  Notably, Subsection 10.3.3 indicates that indemnity is appropriate only where there are "claims, damages, losses, and expenses . . . arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1."  (Dkt. No. 89, Attach. 6, at 1.)  This portion of Subsection 10.3.3, read together with Subsection 10.3.1, undermines Tarolli's argument that Subsections 10.3.1 and 10.3.2 are relevant only where there has been bodily injury because Subsection 10.3.1 addresses situations where the Contractor encounters hazardous materials that pose *a risk* of bodily harm, without requiring that bodily harm has actually occurred.  Rather, Subsections 10.3.1 and 10.3.2 describe the procedure the parties to the contract must follow when a hazardous material that poses a risk of bodily harm or death is discovered during the course of the contracted work, and Subsection 10.3.3 describes when the Contractor (here, Tarolli) would be entitled to indemnification if such hazardous material posing a risk of bodily harm or death is not rendered harmless by the Owner (the Woodbine Defendants) in accordance with Sections 10.3.1 and 10.3.2, and bodily injury, sickness, disease,

death, or injury to property has occurred as a result of that failure to render the material

harmless.  Tarolli has not asserted how the alleged damage to Plaintiff's property as a result of

storing the contaminated soil arose or resulted from the work Tarolli performed under the

contract on the right-of-way area of the Woodbine site; in fact, Tarolli's efforts to make the

indemnification clause fit the situation here come close to being an implicit admission that it is

liable under CERCLA, a concession that the Court assumes Tarolli does not intend to make.

Nor has Tarolli adduced evidence establishing that it discovered the existence of contamination

in the soil while it was working on the contract project, that it informed the Woodbine

Defendants of the contamination, or that the Woodbine Defendants attempted or failed to render

the contamination harmless.  Contrary to Tarolli's assertions, a plain reading of Subsections

10.3.1 and 10.3.3 suggests that awareness of the hazardous material and an opportunity (and

failure) to render the hazardous material harmless during the course of performance of the work

under the contract is a precondition to asserting a right to indemnification.  At the very least, to

the extent it is ambiguous as to whether notice and a chance to render the hazardous material

harmless is a precondition to indemnity under Subsection 10.3.3, this ambiguity creates a

genuine dispute of material fact that would preclude the Court from granting Tarolli's motion.

Additionally, Tarolli's assertions that Subsection 10.3.3 "unequivocally covers conduct

affecting the environment that could give rise to liability under CERCLA, and provides that

Woodbine will indemnify Tarolli against the same" are not supported by the content of

Subsection 10.3.3 specifically or by Section 10.3 as a whole.  (Dkt. No. 89, Attach. 2, at 8

[Def.'s Mem. of Law].)  As the Woodbine Defendants argue, Section 10.3, read as a whole,

appears to be intended to protect the workers and equipment of the Contractor from injury and

damage by hazardous materials encountered while working on the project underlying the contract. (Dkt. No. 98, at 12 [Defs.' Opp'n Mem. of Law].) It does not clearly indicate that the parties intended to extend such indemnification broadly to CERCLA claims arising from property damage at a remote location that is not directly related to performance of the contract work. Applying New York's rule of strict construction to the language of the contract and the surrounding facts and circumstances, the Court declines to find as a matter of law that the parties plainly intended to impose on the Woodbine Defendants such a broad duty of indemnification extending to the CERCLA claim at issue in this case. *Hooper Assocs.*, 548 N.E.2d at 905.

For the above reasons, Tarolli's motion for partial summary judgment is denied.

### C.     Whether the Second Amended Complaint States Claims Against the National Grid Defendants Upon Which Relief Can Be Granted

After carefully considering the matter, the Court answers this question in the negative as to all claims for the reasons stated in the National Grid Defendants' memoranda of law. (Dkt. No. 123, Attach. 2, at 10-20 [Defs.' Mem. of Law]; Dkt. No. 140, at 6-13 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, Plaintiff argues that, when assessing the sufficiency of the factual allegations in the Second Amended Complaint, the Court should consider the Joynt deposition testimony because that testimony first alerted Plaintiff to National Grid's presence near the Woodbine site. When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a district court must generally confine itself to the four corners of the complaint and look only to the allegations contained therein." *Islip U-Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296, 301 (N.D.N.Y. 2014) (D'Agostino, J.). "In considering a motion to dismiss, the Court may

consider documents attached as an exhibit thereto or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Islip U-Slip*, 2 F. Supp. 3d at 301 (citing *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 [S.D.N.Y. 2002]).  Most relevant here, the Second Circuit has stated that, "even if not attached or incorporated by reference [into the complaint], a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on a [12(b)(6)] motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 [2d Cir. 1991]) (emphasis and alteration in original).  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 202 F.3d 147, 153 [2d Cir. 2002]).  Furthermore, it must be clear from the record that (1) no dispute exists regarding the authenticity or accuracy of the document, and (2) no dispute exists regarding the relevance of the document.  *See DiFolco*, 622 F.3d at 111 ("Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]).

The Court finds that, because the Joynt deposition testimony is the sole basis for Plaintiff's decision to assert claims against the National Grid Defendants and the allegations

against the National Grid Defendants made in the Second Amended Complaint rely heavily on

that deposition testimony, the Joynt deposition testimony is integral to that complaint.

Plaintiff's reliance on the Joynt deposition testimony is also clear from the affidavit and

memorandum of law submitted in support of its July 11, 2017, motion to amend the First

Amended Complaint, both of which outline its reasons for seeking to add the National Grid

Defendants in this action.  (Dkt. No. 71, Attach. 1, at ¶ 6; Dkt. No. 71, Attach. 6, at 3].)

Because it is clear that this deposition testimony was integral to the Second Amended

Complaint and the National Grid Defendants admit that the Joynt deposition testimony was the

sole reason for amending the Complaint to join them as defendants in the litigation, the Court

finds that it may consider that deposition testimony when determining whether Plaintiff

sufficiently stated claims upon which relief can be granted.  (Dkt. No. 140, at 8 [Defs.' Reply

Mem. of Law].)

### 1.    Plaintiff's CERCLA Claims

The National Grid Defendants argue that the Second Amended Complaint fails to meet

the requisite pleading standards because Plaintiff asserted only generic and conclusory

statements that the National Grid Defendants are responsible parties under CERCLA without

providing any facts that would suggest that those assertions are plausible.  (Dkt. No. 123, at 11-

14 [Defs.' Mem. of Law].)  The Court agrees with the National Grid Defendants that the

allegations in the Second Amended Complaint related to the National Grid Defendants are little

more than legal conclusions devoid of any facts.  (Dkt. No. 91, at ¶¶ 12-13, 27-29, 34-35

[Second Am. Compl.].)  However, to the extent that the National Grid Defendants argue that the

statements in the Second Amended Complaint are insufficient, by themselves, to state a

CERCLA claim upon which relief can be granted, this argument does not provide a basis for relief on the motion to dismiss because, as noted above, the Court must consider the statements in the Second Amended Complaint in conjunction with the Joynt deposition testimony, which the Court has found is integral to the Second Amended Complaint.  The question is therefore whether the Joynt deposition testimony provides sufficient facts to state a plausible CERCLA claim against National Grid.

In his deposition on March 31, 2017, Mr. Joynt (the president of Lan-Co) provided the following testimony about National Grid and its involvement in work near the Woodbine site: (1) he saw National Grid and its crew at the work site, noting that it did all of the underground gas and electric lines; (2) he saw National Grid performing that work in the shoulder of the right-of-way along the whole lineal footage on one side of the road (though he could not remember which side of the road specifically); (3) he noted that National Grid had backhoes and loaders on site to perform that work; (4) National Grid were there "a lot," (meaning at least more than one time) and it was there for longer than Lan-Co due to having to relocate a fiber optic line at the end of Loucks Road, which "took quite a lot of work"; (5) he did not know whether National Grid had hauled any materials, but, in his past experience working on sites with National Grid, it always imports clean sand because it needs to bed the utility pipes in clean sand rather than backfilling around the utility lines; (6) when asked again if National Grid had hauled sand or other earthen materials to the project, he answered, "I would say yes"; (7) he stated that he was not sure whether National Grid had drilled any bores on the site, but noted also that National Grid does not typically do directional bores for placing cables on this type of project because "they would open trench" instead; and (8) he stated, "I think we're both [he and

Tarolli] kind of surprised that National Grid isn't a part of this conversation," because "they did as much excavation as certainly Lan-Co did and probably as much as [Tarolli] did for utility installation." (Dkt. No. 137, Attach. 3, at 46-49, 74, 93-94 [Joynt Aff.].)

This testimony does not provide sufficient facts to plausibly suggest a CERCLA claim against the National Grid Defendants (and indeed it undermines such a claim). Plaintiff asserts two bases for holding the National Grid Defendants to be a responsible parties under CERCLA: (1) that they transported and/or disposed of hazardous substances at the Woodbine site, and (2) they were operators of the Woodbine site.[26] However, nothing in Mr. Joynt's testimony suggests anything beyond the "mere possibility of misconduct" on the part of the National Grid Defendants. *Iqbal*, 129 S.Ct. at 1950.

Regarding Plaintiff's claim that National Grid transported or disposed of hazardous substances, Mr. Joynt's testimony does not contain facts that plausibly suggest such a claim. Mr. Joynt testified that National Grid had equipment such as backhoes and loaders at the work site, but he did not state that National Grid was moving soil using that equipment. Mr. Joynt testified that he did not see National Grid making any bores, and indicated that he did not believe that they would have made bores for this type of project. Mr. Joynt also testified that National Grid imported clean sand to the worksite, but this fact would not suggest they transported or disposed of hazardous substances because it is contaminated topsoil and not clean sand that is the basis of this litigation; Plaintiff has not alleged that there was sand present in the topsoil pile it purchased, and so National Grid's importation of sand to the worksite

---

[26]     Because these statements are legal conclusions rather than facts, the Court need not assume they are true for the purposes of deciding this motion. *Iqbal*, 129 S. Ct. at 1949.

cannot plausibly suggest that National Grid caused the soil contamination.  Additionally, Mr. Joynt testified that the soil pile Plaintiff purchased was already present on the Woodbine site when Lan-Co began its work, plausibly suggesting that National Grid could not have been responsible for making that pile: Mr. Joynt testified that National Grid would be the last to perform work at the site because the utilities are placed closest to the surface.  (Dkt. No. 137, Attach. 3, at 39-42 [Joynt Aff.].)  The only testimony that suggests that National Grid did anything more than lay cables and/or pipes is Mr. Joynt's statement that it did "as much excavation" as Lan-Co and Tarolli, without any indication of what Mr. Joynt specifically meant by "excavation."  Mr. Joynt's testimony plausibly suggests that Tarolli performed the stripping of the topsoil and subsoil from the road area, and that Lan-Co dug the five-foot deep, 24-inch wide trenches where its water pipes were laid; but Joynt's deposition does not provide any information as to how much soil, if any, National Grid excavated when performing its work. (*Id.* at 32-40, 43-45.)  In any event, while Mr. Joynt's testimony might plausibly suggest that National Grid performed some excavation on the right-of-way as part of installing the utilities, it does not, as a whole, plausibly suggest that National Grid transported any soil or other contaminated materials to the site such that it was responsible for, or contributed to, the contamination that Plaintiff was required to remediate.  Similarly stated, Plaintiff alleges no facts connecting National Grid's actions to the contaminated soil pile that would plausibly suggest there is more than a mere speculative possibility that it transported or disposed of contaminated soil in a way that resulted in that soil being present in the soil pile Plaintiff purchased.

Regarding Plaintiff's claim that National Grid was an operator of the Woodbine site, Mr. Joynt's testimony does not contain facts that plausibly suggest that National Grid performed or directed work which would have caused or contributed to contamination of the soil in either the right-of-way or the Woodbine pile.  *See Niagara Mohawk Power Corp.*, 596 F.3d at 135; *see also New York State Elec. and Gas Corp.*, 766 F.3d at 222 (2d Cir. 2014); *Schenectady Indus. Corp.*, 689 F. Supp. 2d at 293-94.  Mr. Joynt testified that National Grid performed its work on the shoulder of the Town's right-of-way where the road was being built, not on the Woodbine site itself, and nothing in his testimony as a whole suggests that National Grid was responsible for either contaminating the soil or for creating or contributing to the contaminated soil pile that Plaintiff purchased.  (Dkt. No. 137, Attach. 3, at 39-42 [Joynt Aff.].)  Nor do the factual allegations of the Second Amended Complaint or Mr. Joynt's testimony plausibly suggest that National Grid exercised control over the affairs of the Woodbine site.  Therefore, the Second Amended Complaint, even read in conjunction with the Joynt deposition testimony, does not allege facts plausibly suggesting that National Grid was an operator of the Woodbine site.

Because the Second Amended Complaint and the Joynt deposition testimony do not plead sufficient facts to suggest that Plaintiff's CERCLA claims against the National Grid Defendants are plausible, the Court grants the National Grid Defendants' motion to dismiss as to the First and Second Claims as against the National Grid Defendants.

### 2.    Plaintiff's State Law Claims

As discussed above in Part I.D.3.a of this Decision and Order, the National Grid Defendants asserted two arguments in support of their motion to dismiss Plaintiff's state law claims: (1) those claims were asserted beyond the expiration of the statutes of limitations; and

(2) Plaintiff failed to plead sufficient facts supporting those claims.  (Dkt. No. 123, at 15-19 [Defs.' Mem. of Law].)  As the National Grid Defendants noted in its reply memorandum of law, Plaintiff failed to respond to their argument regarding the expiration of the statutes of limitation.  (Dkt. No. 137, Attach. 6, at 16 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 140, at 11-12 [Defs.' Reply Mem. of Law].)  Due to Plaintiff's failure to respond to the National Grid Defendants' statute of limitations arguments, the National Grid Defendants' burden on this motion is "somewhat lightened" with regard to the state law causes of action.  *See Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 & n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (finding that the defendant's burden on its motion to dismiss was lightened due to the plaintiff's failure to address the defendant's request to dismiss a cause of action based on the expiration of the applicable statute of limitations, and collecting cases in which failure to respond to an argument resulted in a "modest" burden for the threshold party); *accord Trombley v. O'Neill*, 929 F. Supp. 2d 81, 100 (N.D.N.Y. 2013) (Suddaby, J.); *Jenkins v. Liadka*, 10-CV-1223, 2012 WL 4052286, at *8 (N.D.N.Y. Sept. 13, 2012) (Suddaby, J.); *Hunt v. Cmty. Gen. Hosp.*, 11-CV-0415, 2012 WL 3151542, at *4 (N.D.N.Y. Aug. 2, 2012) (Suddaby, J.).  At the very least, the National Grid Defendants have met this burden.

Regarding Plaintiff's Third and Fourth Claims, the National Grid Defendants are correct that the applicable statute of limitations for each of Plaintiff's asserted state law claims is three years; the National Grid Defendants are also correct that these claims are therefore barred by the statute of limitations because the claims accrued at least more than three years before the

filing of the Second Amended Complaint.[27]  N.Y. C.P.L.R. § 214.  In the alternative, these

claims should be dismissed based on a failure to sufficiently plead the claims.  Regarding the

Third Claim, regardless of whether it is characterized as a negligence-based claim or a breach of

a fiduciary duty, both require that there be some reason why National Grid would owe a duty to

inform Plaintiff, as discussed in detail above in Part III.A.2 of this Decision and Order.  *See*

*Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 201 (S.D.N.Y. 2011).  Plaintiff has not alleged

facts plausibly suggesting that any of the three ways to establish a duty to disclose applied to

the National Grid Defendants.  Similarly, regarding the Fourth Claim, as the National Grid

Defendants argue in their memorandum of law, there was no factual allegation of a specialized

expertise or special relationship between the National Grid Defendants and Plaintiff.  (Dkt. No.

123, Attach. 1, at 17-18 [Defs.' Mem. of Law].);  *See also Eaves*, 785 F. Supp. 2d at 254

(S.D.N.Y. 2011); *Kimmell*, 675 N.E.2d at 454.  Because Plaintiff has not alleged facts plausibly

suggesting the elements of these claims, National Grid is therefore correct that these claims

should be dismissed.

Regarding Plaintiff's Fifth Claim, even if Plaintiff's Second Amended Complaint, given

the full benefit of the doubt, could be said to state a plausible nuisance claim, it would be barred

---

[27]     Although it is unclear what specific cause of action Plaintiff intended to assert by alleging that the Defendants breached a duty to inform it that the soil was potentially contaminated, the New York statute of limitations for both ordinary negligence (which involves the breach of a duty owed to a plaintiff) and breach of a fiduciary duty (as cited by the National Grid Defendants in their memorandum of law) is three years.  (Dkt. No. 123, Attach. 1, at 15 [Defs.' Mem. of Law].)  *See also* N.Y. C.P.L.R. § 214.  Additionally, even though negligent misrepresentation claims can be subject to a six-year statute of limitations if they are based in fraud, application of the longer statute of limitations (even if warranted) would have no impact on whether that claim would ultimately be dismissed on other grounds, specifically Plaintiff's failure to plead sufficient facts to plausibly suggest these claims.

by the statute of limitations, which, under New York law, is three years.  *See Murtaugh v. New York*, 810 F. Supp. 2d 446, 587-88 (N.D.N.Y. 2011) (Suddaby, J.) (noting that the three-year statute of limitations in N.Y. C.P.L.R. § 214-c is applicable a nuisance claim to the extent the plaintiff is seeking monetary damages); *New York v. West Side Corp.*, 790 F. Supp. 2d 13, 29-31 (E.D.N.Y. 2011) (applying the three-year statute of limitations in N.Y. C.P.L.R. § 214-c to a claim for public nuisance to the extent that the plaintiff sought monetary damages, noting also that the claim accrues on the date of discovery of the injury); *DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 600 (N.D.N.Y. 2010) (Kahn, J.) (finding the three-year statute of limitations in N.Y. C.P.L.R. § 214-c was applicable to the plaintiff's nuisance claim to the extent the plaintiff was seeking monetary damages).  *Anderson v. Elliott*, 807 N.Y.S.2d 101, 102 (N.Y. App. Div. 2d Dep't 2005).  Because the Second Amended Complaint establishes that Plaintiff is seeking response and clean-up costs related to the contamination (rather than an injunction), the three-year statute of limitations is applicable to its nuisance claim.  (Dkt. No. 91, at 10-11 ¶¶ 1-2 [Second Am. Compl.].)   Although it is not clear from the Second Amended Complaint on what specific date Plaintiff discovered the injury to its property as a result of the contaminated soil, it is clear that the discovery was not within three years of joining National Grid in this action.  Notably, Plaintiff filed the initial Complaint on November 9, 2013, in which it asserted the same nuisance claim against other Defendants.  (Dkt. No. 1, at ¶¶ 42-44 [Compl.].)  Therefore, Plaintiff had clearly discovered the injury to its property by November 9, 2013.  However, Plaintiff did not file the Second Amended Complaint including National Grid as a party until August 25, 2017, approximately three years and nine months later.  (Dkt. No. 91 [Second Am. Compl.].)  The Court finds that Plaintiff's Fifth Claim is therefore barred by the statute of

limitations.[28]

Based on the above, the Court grants the National Grid Defendants' motion to dismiss Plaintiff's Claims Three, Four, and Five against the National Grid Defendants.

### 3. Defendants' Cross-Claims

The National Grid Defendants lastly argues that the cross-claims asserted against them by the other Defendants should also be dismissed because they either (a) do not meet the necessary pleading standard of Fed. R. Civ. P. 12(b)(6), or (b) are preempted by federal law. (Dkt. No. 123, Attach. 1, at 20 [Defs.' Mem. of Law].)

Regarding the cross-claims asserted by the Woodbine Defendants and Lan-Co, National Grid argues that these cross-claims are insufficiently pled because those Defendants did not plead any fact other than those asserted by Plaintiff in the Second Amended Complaint. (*Id.* at 20.) Lan-Co's cross-claim is simply a statement that it would be entitled to indemnity and/or

---

[28]      The Court notes that, while neither party has raised the issue, the Second Circuit has recognized that, pursuant to Fed. F. Civ. P. 15, an amended complaint adding an additional defendant after the statute of limitations has run is not time-barred if it "relates back" to a timely filed complaint, i.e., if the amended complaint asserts a claim against the additional defendant that arose out of the same conduct, transaction, or occurrence set out in the initial complaint and, within the relevant period, the additional defendant "'(i) received such notice of the action that it will not be prejudiced in defending on the merits[,] and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity.'" *Tolbert v. Koenigsmann*, 13-CV-1577, 2016 WL 223713, at *2 (N.D.N.Y. Jan. 19, 2016) (Kahn. J) (citing *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 [2d Cir. 2001]); *see also Duffy v. Horton Mem'l Hosp.*, 488 N.E.2d 820, 823 (N.Y. 1985) (noting that, ordinarily, the statute of limitations would apply to claims asserted against newly added parties who have "been a complete stranger to the suit up to the point of the requested amendment," but acknowledging that permitting the amendment to relate back to that defendant would not be at odds with the policies underlying the statute of limitations where "within the statutory period, . . . defendant is fully aware that a claim is being made against him with respect to the transaction or occurrence involved in the suit"). In this case, there is not a basis to conclude that the National Grid Defendants knew or should have known that they should have earlier been joined as a party in this action.

contribution from the other Defendants in the event a judgment issues against it.[29]  (Dkt. No. 94, at ¶¶ 100-101 [Def.'s Answer].)  In its cross-claims for contribution under Section 113(f) of CERCLA and for common law indemnification and contribution, the Woodbine Defendants make legal conclusions and plead essentially the same facts as in the Second Amended Complaint.  (Dkt. No. 97, at ¶¶ 62-136 [Defs.' Answer].)  National Grid also argues that Tarolli's cross-claim for common law indemnity and/or contribution should be dismissed because they are preempted by CERCLA.

The Court finds that the CERCLA cross-claims warrant dismissal based on a failure to state plausible claims.  Section 113(f)(1) of CERCLA states that "any person may seek contribution from any other person who is liable or potentially liable" for a violation under 42 U.S.C. § 9607(a).  42 U.S.C. § 4613(f)(1).  As already discussed above, Plaintiff has failed to state a plausible CERCLA claim against National Grid pursuant to 42 U.S.C. § 9607(a).  The Woodbine Defendants (and Lan-Co, to the extent it may have intended to assert a CERCLA contribution cross-claim) have not indicated that their cross-claims for CERCLA contribution against the National Grid Defendants are based on any factual allegations other than those which Plaintiff based its CERCLA claims on in the Second Amended Complaint. Consequently, the Court agrees that the other Defendants have failed to state a CERCLA cross-claim against the National Grid Defendants.

As with Lan-Co's motion, the Court need not address whether the state law contribution and indemnification claims against the National Grid Defendants are preempted by CERCLA

---

[29]     Lan-Co does not specify whether it is seeking contribution pursuant to CERCLA or pursuant to a common law theory, or both.

under the circumstances because the Court has already dismissed all of the claims against the National Grid Defendants related to liability; because Plaintiff has not stated a valid claim of liability against the National Grid Defendants that will survive this motion, the cross-claims for indemnification and contribution are moot.  *See Goodman*, 850 F. Supp. 2d at 378-79; *see also Firestone v. Berrios*, 42 F. Supp. 3d 403, 420 (E.D.N.Y. 2013).  Therefore, the Court finds that the cross-claims against National Grid should also be dismissed.

### 4.      Plaintiff's Request to Amend

Plaintiff requests that, if the Second Amended Complaint is dismissed, it should be done so without prejudice so as to allow Plaintiff to amend yet again to include more specific factual allegations against the National Grid Defendants.  (Dkt. No. 137, Attach. 6, at 16 [Pl.'s Mem. of Law].)  Although courts should "'freely give leave to [to amend] when justice so requires,'" a motion to amend a pleading can properly be denied in multiple circumstances, such as where there has been undue delay, bad faith or a dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

The Court denies Plaintiff's request on each of two alternative grounds: repeated failure to cure the deficiencies in question and futility.  It is worth noting, as a preliminary matter, that the initial Complaint in this action was filed in November 2013, more than four years ago, and Plaintiff has since amended that Complaint twice.  (Dkt. No. 1 [Compl.].)  Although Plaintiff states that it did not learn of National Grid's presence near the Woodbine site during the

relevant time period until March 2017 (when it deposed Mr. Joynt), significant discovery has already been conducted as to the other parties and multiple other Defendants have already filed motions for summary judgment; to allow Plaintiff to amend its complaint for a third time would, as Plaintiff notes, only further delay litigation and waste judicial resources.  This is especially true in this case because the Court is not convinced that Plaintiff would be able to plead sufficient facts to defeat a future motion to dismiss for failure to state a claim.  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("It is true that when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim."); *Crippen v. Town of Hamstead*, 07-CV-3478, 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013) ("An amendment is considered futile if, for example, it could not defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction."); *see also Beatty v. Charkravorty*, 16 F.3d 13 (2d Cir. 1998) (upholding the district court's denial of leave to amend the complaint where the request was made more than three years after the commencement of the litigation and after all defendants had moved for summary judgment).  In finding that the claims against the National Grid Defendants in the Second Amended Complaint were not sufficiently pled, the Court considered Mr. Joynt's deposition testimony as a whole based on Plaintiff's statements in its previous motion to amend that Mr. Joynt's testimony provided the factual basis for adding the National Grid Defendants.  Notably, in its opposition memorandum of law, Plaintiff admits that, if given leave to amend, it would "simply incorporate the factual background already articulated above [recounting Mr. Joynt's testimony]."  (Dkt. No. 137, Attach. 6, at 16 [Pl.'s Opp'n Mem.

of Law].)  Because the Court has already found that Mr. Joynt's testimony does not provide sufficient facts to state CERCLA claims, and that the state claims are either barred by the statute of limitations or implausible based on failure to allege a sufficient relationship between Plaintiff and National Grid to meet an element of those claims, there is no reason to believe that allowing Plaintiff to amend the Second Amended Complaint would result in an outcome other than dismissal.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d. Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999) (noting that, where a plaintiff is unable to demonstrate that he could amend the complaint in a manner that would survive dismissal, the opportunity to amend is properly denied).

For each of the above-stated reasons, Plaintiff's request to amend its Second Amended Complaint is denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Lan-Co's motion for summary judgment (Dkt. No. 81) is **GRANTED** such that the following claims are **DISMISSED**:

(a)     Plaintiff's First Claim for joint and several liability for release of hazardous substances under CERCLA as to Lan-Co;

(b)     Plaintiff's Second Claim for equitable share recovery for release of hazardous substances under CERCLA as to Lan-Co;

(c)     Plaintiff's Third Claim for breach of duty as to Lan-Co;

(d)     Plaintiff's Fourth Claim for negligent misrepresentation as to Lan-Co;

(e)     Plaintiff's Fifth Claim for nuisance as to the Lan-Co; and

(f)     the cross-claims for CERCLA contribution and for common law indemnification and/or contribution asserted against Lan-Co by the Woodbine Defendants and Tarolli; and it is further;

**ORDERED** that Defendant Tarolli's motion for partial summary judgment (Dkt. No. 89) is **DENIED** as discussed above in this Decision and Order; and it is further

**ORDERED** that the National Grid Defendants' cross-motion to dismiss (Dkt. No. 123) is **GRANTED** such that the following claims are **DISMISSED**:

(a)     Plaintiff's First Claim for joint and several liability for release of hazardous substances under CERCLA as to the National Grid Defendants;

(b)     Plaintiff's Second Claim for equitable share recovery for release of hazardous substances under CERCLA as to the National Grid Defendants;

(c)     Plaintiff's Third Claim for breach of duty as to the National Grid Defendants;

(d)     Plaintiff's Fourth Claim for negligent misrepresentation as to the National Grid Defendants;

(e)     Plaintiff's Fifth Claim for nuisance as to the National Grid Defendants; and

(f)     the cross-claims for CERCLA contribution and for common law indemnification and/or contribution asserted against the National Grid Defendants by the Woodbine Defendants, Lan-Co, and Tarolli; and it is further

**ORDERED** that **SURVIVING** these motions are the following claims and cross-claims:

(a)     Plaintiff's First, Second, Third, Fourth, and Fifth Claims as against the Woodbine Defendants;

(b)      Plaintiff's Sixth Claim as against Woodbine Business Park and Swanson;

(c)      Plaintiff's First Second, Third, Fourth, and Fifth Claims as against Tarolli;

(d)      Plaintiff's First, Second, Third, Fourth, and Fifth Claims as against National Grid

(US) Holdings;

(e)      Defendants' cross-claims for indemnification and contribution asserted by,

and/or against Tarolli, the Woodbine Defendants, and National Grid (US)

Holdings; and

(f)      Woodbine Defendants counter-claims against Plaintiff;

and it is further

**ORDERED** that this case is referred back to Magistrate Judge Peebles to determine the

status of discovery and to set expedited pretrial deadlines, if necessary, given the age of this

case.

Dated: February 12, 2018
       Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge