UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT H. LAW, INC.,

                        Plaintiff,

v.                                                          5:13-CV-1393
                                                            (GTS/DEP)
WOODBINE BUSINESS PARK, INC.; NORMAN
SWANSON; 224 HARRISON CORP.; 100
COLLINGSWOOD CORP.; WAITE DAIRY,
INC.; and D.E. TAROLLI, INC.,

                        Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

SHEATS & BAILEY, PLLC                                       JASON B. BAILEY, ESQ.
   Counsel for Plaintiff
609 Vine Street, P.O. Box 586
Liverpool, NY 13088

BROWN, DUKE & FOGEL, P.C.                                   MICHAEL A. FOGEL, ESQ.
   Counsel for Woodbine Defendants
120 Madison Avenue, Suite 1620
Syracuse, NY 13202

COSTELLO, COONEY & FEARON, PLLC                             CRAIG A. SLATER, ESQ.
   Counsel for Defendant Tarolli
500 Plum Street, Suite 300
Syracuse, NY 13204

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this action asserting claims under the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA") and state tort and

contract law filed by Robert H. Law ("Plaintiff") against Woodbine Business Park, Inc.

("Woodbine"), Norman Swanson ("Swanson"), 224 Harrison Corp. ("Harrison"), 100

Collingswood Corp. ("Collingswood") (collectively, "Woodbine Defendants"), Waite Dairy, and D.E. Tarolli ("Tarolli"), are the following three motions: (1) Defendant Tarolli's motion for summary judgment; (2) Plaintiff's motion for summary judgment; and (3) the Woodbine Defendants' motion for summary judgment. (Dkt. Nos. 163, 165, 166.) For the reasons set forth below, Defendant Tarolli's motion is granted, Plaintiff's motion is denied, and the Woodbine Defendants' motion is granted.

## I.  RELEVANT BACKGROUND

### A.  Plaintiff's Second Amended Complaint

Generally, Plaintiff's Second Amended Complaint asserts six claims. (Dkt. No. 91 [Second Am. Compl.].) First, Plaintiff claims that, pursuant to 42 U.S.C. § 9607(a) (Section 107[a] of CERCLA), Defendants are liable for the release of a hazardous substance that resulted from the storage and spreading of contaminated soil on Plaintiff's property and at other properties, soil that Plaintiff had purchased from Defendants Woodbine and Swanson ("First Claim"). (*Id.* at 5-8.) Specifically, Plaintiff claims that Defendants are all potentially responsible parties ("PRP") under 42 U.S.C. § 9607(a) by virtue of their actions and are therefore jointly and severally liable to Plaintiff for damages resulting from that release of hazardous substances, including the necessary costs incurred by Plaintiff in removing or remediating the contamination. (*Id.*)

Second, Plaintiff claims that, in the alternative, Defendants, as PRPs under CERCLA, are each liable to Plaintiff for the necessary costs incurred in removing or remediating the contamination, in an amount equal to their equitable share pursuant to 42 U.S.C. § 9613(f)(1) (Section 113[f][1] of CERCLA) ("Second Claim"). (*Id.* at 8.)

Third, Plaintiff claims that Defendants knew (or should have known) that the soil was contaminated and therefore owed (and breached) a duty to inform Plaintiff of the potential that the soil was contaminated ("Third Claim"). (*Id.* at 8-9.)

Fourth, Plaintiff claims that Defendants made negligent representations that the soil purchased was topsoil (and nothing more), representations that Plaintiff reasonably relied upon when purchasing and using the soil ("Fourth Claim"). (*Id.* at 9.)

Fifth, Plaintiff claims that storage of the contaminated soil at its principle place of business has caused a substantial and unreasonable interference with its use and enjoyment of that property ("Fifth Claim"). (*Id.* at 9-10.)

Sixth, Plaintiff claims that Woodbine Business Park and Swanson breached their contract with Plaintiff regarding the purchase of the soil by providing contaminated soil ("Sixth Claim"). (*Id.* at 10.)

### B. Statements of Undisputed Material Facts

#### 1. Undisputed Material Facts on Defendant Tarolli's Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant Tarolli in its Statement of Material Facts, and expressly admitted, or denied without appropriate record citations, by Plaintiff and/or the Woodbine Defendants in their responses thereto. (*Compare* Dkt. No. 163, Attach. 10 [Def. Tarolli's Rule 7.1 Statement] *with* Dkt. No. 176, Attach. 3 [Pl.'s Rule 7.1 Resp.] *and* Dkt. No. 180 [Woodbine Defs.' Rule 7.1 Resp.].) The Court notes that Plaintiff's responses and citations stretch the bounds of what is acceptable under N.D.N.Y. L.R. 7.1. In particular, Plaintiff's citations to large swaths of its own counterstatement of material facts rather than to specific evidence in the record is not consistent

with the dictates of the local rule.[1]  However, due to the length of time this case has already been pending, the Court has accepted Plaintiff's responses to the extent the specific supporting record evidence is readily discernable.

1.      The original complaint was filed on November 8, 2013.

2.      Plaintiff has alleged violations of CERCLA resulting from the release of hazardous substances.

3.      Tarolli was not initially named as a party to this action.

4.      Only after approximately two years of litigation did Plaintiff amend its pleadings to add Tarolli as a defendant.

---

[1]      *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a citation to "*particular* parts of materials in the record") (emphasis added); N.D.N.Y. L.R. 7.1(a)(3) ("Each denial shall set forth a specific citation to the record where the factual issue arises."); *Alex v. Gen. Elec. Co.*, 149 F. Supp. 3d 253, 280 (N.D.N.Y. 2016) ("[T]he Court draws the line at Plaintiff's practice, in her Rule 7.1 Response, of routinely citing a section of her deposition transcript spanning 196 pages, and often adding references to one or more deposition transcripts in their entirety."); *Rizzo v. Health Research, Inc.*, 12-CV-1397, 2016 WL 632546, at *2 (N.D.N.Y. Feb. 16, 2016) ("Of these 136 denials, 117 denials do not contain a specific citation to the record. Therefore, the facts 'denied' by these paragraphs will be deemed admitted."); *Clark v. N.Y.S. Office of the State Comptroller*, 09-CV-0716, 2014 WL 823289, at *1, n. 8 (N.D.N.Y. Mar. 3, 2014) ("[M]any of Clark's denials do not, as Rule 7.1 requires, set forth a specific citation to the record where the factual issue arises, but instead accompany an instruction to 'see record evidence' or 'see total record evidence,' contain no citation whatsoever, or generally cite an entire document–often, an entire deposition transcript."); *Wang v. Swain*, 09-CV-0306, 2011 WL 887815, at *1 (N.D.N.Y. Mar. 14, 2011) ("[A] simple citation to an 'exhibit' consisting of numerous documents, or citation to a deposition without a pinpoint citation to where in the deposition support for the denial is contained, is insufficient."); *Bronner v. Catholic Charities of Roman Catholic Diocese of Syracuse, Inc.*, 08-CV-0015, 2010 WL 981959, at *1 (N.D.N.Y. Mar. 15, 2010) ("Plaintiff simply cites to the documents generally, i.e., a simple cite to the exhibit number, and in many instances, cites to numerous exhibits to support a single proposition. Apparently, Plaintiff or his attorneys expect the Court to wade through the mass of paper to find whether or not the 'cite' supports a proposition made by Plaintiff . . . ."); *Janneh v. Regal Entm't*, 07-CV-0079, 2009 WL 2922830, at *1 n.3 (N.D.N.Y. Sept. 8, 2009) ("In response . . . Janneh filed a 'Statement of Material Facts Not in Dispute.' . . .  The document consists of . . . a phrase at the end of the document stating simply: 'See Attached Exhibits.' Janneh's statement fails to comply with the Local Rules . . . .").

5. Tarolli was hired by Woodbine on or about May 13, 2008, to perform site work at the Woodbine Business Park Subdivision at the corner of Loucks Road and Canada Drive in East Syracuse, New York.[2]

6. The Woodbine property is separated from Plaintiff's property by Schuyler Road, Sand Hill Road, and several parcels of land.

7. The work to be performed by Tarolli on the Woodbine property was the subject of a Standard Form Agreement between Owner and Contractor, AIA Document A101-1997.[3]

8. Tarolli never performed any work at Plaintiff's property.

9. Tarolli's work on the project was limited to the Woodbine property, and called for placement of roadbeds and storm drains on only the Woodbine property. The Agreement did not call for or obligate Tarolli to bring any soil, dirt, fill, or embankment onto the site, and Tarolli was in no way involved in any procurement or delivery of soil, dirt, fill, or embankment onto the Woodbine property.[4]

---

[2] Plaintiff purports to deny a portion of this asserted fact; however, it is not clear what exactly Plaintiff is denying, and the evidence cited by Plaintiff does not contradict the asserted fact. (Dkt. No. 176, Attach. 3, at ¶ 5 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted.

[3] Woodbine admits that a contract was formed between it and Tarolli for this work, but denies the specific characterization of the contract based on Tarolli's failure to submit a complete copy of that contract. (Dkt. No. 180, at ¶ 7 [Woodbine Defs.' Rule 7.1 Resp.].) However, the copy of the contract cited by both parties clearly states that it is the "Standard Form of Agreement Between Owner and Contractor," which is "AIA Document A101-1997." (Dkt. No. 89, Attach. 5, at 1.) The fact that Tarolli may or may not have submitted a complete copy of the contract does not change the form used to make that contract. This asserted fact is therefore deemed admitted.

[4] Both Plaintiff and the Woodbine Defendants deny this asserted fact. (Dkt. No. 176, Attach. 3, at ¶ 9 [Pl.'s Rule 7.1 Resp.]; Dkt. No. 180, at ¶ 9 [Woodbine Defs.' Rule 7.1 Resp.].) However, neither of these denials is effective. As to Plaintiff's denial, the deposition testimony of Tarolli (cited by Plaintiff) indicates that the Woodbine project was "balanced" in that it did not require any earthen material such as soil to be brought in or taken out. (Dkt. No.

10.     Tarolli was unaware of any hazardous substances on the Woodbine property until it was added as a party to this litigation.[5]

11.     Plaintiff's causes of action against Tarolli for recovery of clean-up costs are based solely upon Tarolli's activities on the Woodbine property.[6]

12.     In performing the work for the Woodbine project, Tarolli neither supplied, nor brought, soil, dirt, fill, or embankment to the Woodbine property. The Woodbine project was designed to balance, and Tarolli neither imported nor exported any soil, dirt, fill, or embankment

---

184, Attach. 12, at 36:11-13, 37: 17-23 [Tarolli Dep.].) Even in its counterstatement of material facts, Plaintiff alleges only that Tarolli imported "aggregate," which Tarolli testified is a material such as stone, and is distinct from earth materials. (Dkt. No. 176, Attach. 3, at ¶¶ 54-56; Dkt. No. 184, Attach. 12, at 37:20-38:7 [Tarolli Dep.].) Plaintiff has not otherwise cited proof that Tarolli imported actual soil or earth material to the Woodbine property. As to the Woodbine Defendants' denial, they merely argue that Tarolli has failed to provide a specific citation to the record. (Dkt. No. 180, at ¶ 9 [Woodbine Defs.' Rule 7.1 Resp.].) However, Tarolli has cited to evidence available to this Court, and the Tarolli deposition testimony cited by Plaintiff provides additional support. This asserted fact is therefore deemed admitted.

[5]      Both Plaintiff and the Woodbine Defendants deny this asserted fact. (Dkt. No. 176, Attach. 3, at ¶ 10 [Pl.'s Rule 7.1 Resp.]; Dkt. No. 180, at ¶ 10 [Woodbine Defs.' Rule 7.1 Resp.].) However, neither of these denials is effective. Plaintiff merely argues that the asserted fact is based on Tarolli's "self-serving testimony" without providing a citation to any contrary evidence. (Dkt. No. 176, Attach. 3, at ¶ 10 [Pl.'s Rule 7.1 Resp.].) *See Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact."); *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (explaining that a plaintiff does not create a genuine issue of fact merely by "impugning [a witness'] honesty"); *Estate of D.B. v. Thousand Island Cent. Sch. Dist.*, 327 F. Supp.3d 477, 490 n.12 (N.D.N.Y. 2018) ("A non-movant may not create a genuine issue of material fact by simply challenging the credibility of a declarant."). The Woodbine Defendants again merely argue that Tarolli has failed to provide a specific citation to the record, despite the fact that Tarolli cited clearly to its own deposition testimony in support. (Dkt. No. 180, at ¶ 10 [Woodbine Defs.' Rule 7.1 Resp.].) For these reasons, this asserted fact is deemed admitted.

[6]      Plaintiff denies this asserted fact, yet the evidence it cites does not indicate that Plaintiff's claims against Tarolli involve actions taken by Tarolli anywhere other than the Woodbine property. (Dkt. No. 176, Attach. 3, at ¶ 10 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted.

while performing its work on the Woodbine project.[7]

13.     Near the conclusion of Tarolli's involvement on the Woodbine project, there were two piles of dirt left next to each other.[8]

14.     After Tarolli completed its work on the Woodbine project, Plaintiff's principal, Robert H. Law, contacted a representative of Woodbine and offered to purchase the piles of topsoil.  Tarolli's involvement with the Woodbine property concluded long before Law contacted Woodbine's representative.[9]

15.     Swanson and Plaintiff contracted for Plaintiff to purchase a soil pile.

16.     Plaintiff transported the soil away from the Woodbine property, pursuant to the terms of the agreement between those parties.

17.     Tarolli had no involvement in transporting any soil from the Woodbine property to Plaintiff's property or anywhere else off the Woodbine property.[10]

---

[7]     *See, supra,* note 4 of this Decision and Order.

[8]     Plaintiff denies this asserted fact.  (Dkt. No. 176, Attach. 3, at ¶ 13 [Pl.'s Rule 7.1 Resp.].)  However, nothing in the evidence cited by Plaintiff supports this denial; to the contrary, in Plaintiff's counterstatement of material fact (which it cites in support), it acknowledges that the evidence establishes that "Tarolli stockpiled the surplus soil on Site near the corner of Canada Drive and Loucks Road."  (Dkt. No. 176, Attach. 3, at ¶ 66.)  This fact is therefore deemed admitted.

[9]     Both Plaintiff and the Woodbine Defendants deny a portion of this asserted fact, namely that Plaintiff negotiated with Defendant Swanson.  (Dkt. No. 176, Attach. 3, at ¶ 15 [Pl.'s Rule 7.1 Resp.]; Dkt. No. 180, at ¶ 15 [Woodbine Defs.' Rule 7.1 Resp.].)  The Court finds that the evidence supports this denial and has therefore removed any reference to Defendant Swanson; however, it is nonetheless undisputed that Plaintiff negotiated with someone from Defendant Woodbine and, therefore, to the extent Plaintiff attempts to deny the remainder of this asserted fact, it is deemed admitted.

[10]    Plaintiff denies this asserted fact, but fails to cite any evidence supporting that denial.  (Dkt. No 176, Attach. 3, at ¶ 18 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

18.     Tarolli has never been to Plaintiff's property.

19.     No party to this action has any knowledge regarding the origin of the PCBs or hazardous materials on the Woodbine property.

20.     Tarolli did not transport any hazardous materials to or from the Woodbine property.[11]

21.     Plaintiff does not seek to recover clean-up costs incurred from any clean-up activities at the Woodbine property.

**2.     Undisputed Material Facts on Plaintiff's Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Plaintiff in its Statement of Material Facts, and expressly admitted by Defendant Tarolli and/or the Woodbine Defendants in their responses thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 165, Attach. 3 [Pl.'s Rule 7.1 Statement] *with* Dkt. No. 174 [Def. Tarolli's Rule 7.1 Resp.] *and* Dkt. No. 178, Attach. 8 [Woodbine Defs.' Rule 7.1 Resp.].)

1.     Plaintiff's original Complaint was filed on November 8, 2013, against Woodbine, Swanson, and John Does 1 through 5.

---

[11]     Both Plaintiff and the Woodbine Defendants deny this asserted fact.  (Dkt. No. 176, Attach. 3, at ¶ 21 [Pl.'s Rule 7.1 Resp.]; Dkt. No. 180, at ¶ 21 [Woodbine Defs.' Rule 7.1 Resp.].)  However, neither of these denials is effective.  Plaintiff cites various evidence, none of which supports its denial.  (Dkt. No. 176, Attach. 3, at ¶ 21.)  The Woodbine Defendants again merely argue that Tarolli has failed to provide a specific citation to the record, despite clear citations to Plaintiff's testimony in particular that it had no knowledge that Tarolli disposed of any hazardous materials on the Woodbine property.  (Dkt. No. 163, Attach. 10, at ¶ 21 [Def. Tarolli's Rule 7.1 Statement]; Dkt. No. 180, at ¶ 21 [Woodbine Defs.' Rule 7.1 Resp.].)  For these reasons, this asserted fact is deemed admitted.

2.	The Complaint asserts causes of action against each defendant under CERCLA, as well as state law claims of breach of the duty to inform, negligent misrepresentation, interference with the use and enjoyment of land, and breach of contract.[12]

3.	The Complaint was amended for the first time on December 4, 2015, to add as defendants Harrison, Collingswood, Waite, Tarolli, and Lan-Co.[13]

4.	The Complaint was amended a second time on August 25, 2017, to add as defendants National Grid (US) Holdings, National Grid USA, and Niagara Mohawk Power Corp.

5.	Plaintiff's claims against Lan-Co and the National Grid Defendants were dismissed by the Court on February 12, 2018.

6.	Plaintiff obtained a default judgment against Waite on its claims.

7.	Plaintiff's surviving claims are against Collingswood, Harrison, Woodbine, Swanson, and Tarolli under CERCLA §§ 9607(a) and 9613(f)(1).

8.	Plaintiff has pending state law claims against Swanson and Woodbine for breach of contract.

---

[12]	Defendants deny this asserted fact for various reasons; however, each of these denials is insufficient because (a) even though Plaintiff did not specifically cite to the Complaint, it is clear that the Complaint is the source of this asserted fact, and (b) the Complaint supports Plaintiff's characterization of the claims asserted in this action.  (Dkt. No. 165, Attach. 3, at ¶ 2 [Pl.'s Rule 7.1 Statement]; Dkt. No. 174, at ¶ 2 [Def. Tarolli's Rule 7.1 Resp.]; Dkt. No. 178, Attach. 8, at ¶ 2 [Woodbine Defs.' Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

[13]	Defendants deny a portion of this asserted fact, namely the characterization of these defendants as potentially responsible parties ("PRPs"), which Tarolli asserts is a legal conclusion rather than a fact.  (Dkt. No. 174, at ¶ 3 [Def. Tarolli's Rule 7.1 Resp.]; Dkt. No. 178, Attach. 8, at ¶ 3 [Woodbine Defs.' Rule 7.1 Resp.].)  The Court agrees that whether Defendants are PRPs is a legal question, and therefore has altered Plaintiff's otherwise undisputed asserted fact to refer to them as "defendants" rather than "PRPs."

9.      Plaintiff also has pending state law claims against all remaining defendants for breach of the duty to inform, negligent misrepresentation, and interference with the use and enjoyment of land.

### Chronology of Ownership: The Woodbine Site

10.     Swanson is a real estate developer who buys land.[14]

11.     Swanson has decades of experience in real estate development dating from 1970.

12.     When Swanson acquires property, he establishes a corporate entity for the purpose of purchasing the property.

13.     Swanson was the sole owner of Collingswood.

14.     Swanson was also the sole owner of Harrison.

15.     In or about 1989 to 1990, Swanson negotiated the purchase of certain land situated in the Town of Dewitt from Waite.[15]

---

[14]     Defendant Tarolli denies this asserted fact to the extent that Plaintiff asserts that Swanson buys land specifically for investment purposes, arguing that the evidence cited by Plaintiff does not support that assertion.  (Dkt. No. 174, at ¶ 10 [Def. Tarolli's Rule 7.1 Resp.].)  In the cited deposition, Swanson testified that he was involved in "primarily buying and building real estate ventures," which included buying land and buildings that require renovation for the purpose of remodeling or building, which was accomplished through a series of companies.  (Dkt. No. 168, Attach. 1, at 14:5-17 [Swanson Dep.].)  Because it is unclear whether this activity constitutes "investment purposes" as asserted by Plaintiff (and because the purpose of Swanson's actions is not wholly relevant to the issues at hand) the Court has omitted Plaintiff's reference to such a purpose from this asserted fact.

[15]     Defendant Tarolli denies this asserted fact, arguing that the cited deposition testimony does not support that Swanson negotiated the purchase of the property or that the property was located in the Town of Dewitt.  (Dkt. No. 174, at ¶ 15 [Def. Tarolli's Rule 7.1 Resp.].)  While the specifically cited testimony does not contain this information, other parts of the record (including the same deposition) do, and Tarolli has provided no evidence to suggest that these facts are actually disputed.  This asserted fact is therefore deemed admitted.

16.     Swanson organized the purchase of land from Waite in two separate parcels to be acquired in the names of two distinct corporate entities.

17.     At his deposition, Swanson marked the general boundaries of these two separate parcels.

18.     The boundaries of the parcel to the south are indicated with red, solid lines ("Parcel 1").

19.     The boundaries of the parcel to the north are indicated with red, dashed lines ("Parcel 2").

20.     Before purchasing any land from Waite, Swanson hired the environmental consulting firm, Parratt Wolff, Inc., to perform soil boring tests on the land.

21.     The purpose of the soil boring tests performed by Parratt Wolff, Inc., was to determine soil compaction related to the suitability of the soil for construction of buildings on the property.

22.     Among other things, the soil boring tests performed by Parratt Wolff, Inc., indicated the presence of certain volatile petroleum hydrocarbons and solvents.

23.     Collingswood purchased Parcel 1 for $5,000.00.

24.     Collingswood did not hire an environmental consulting firm to perform a Phase I environmental investigation on Parcel 1 before purchasing the land.

25.     The land purchase agreement between Collingswood and Waite provided that Collingswood was responsible for any environmental cleanup of the property.

26.     The land purchase agreement between Collingswood and Waite acknowledged that Parcel 1 contained an underground storage tank for petroleum products.

27.     The tank was located underground somewhere near where Route 298 and Loucks Road are now situated.[16]

28.     Collingswood did not commission any environmental investigations of the property after removal of the underground tank.

29.     Harrison purchased Parcel 2 for a total purchase price of $326,125.00.[17]

30.     Harrison did not hire an environmental consulting firm to perform a Phase I environmental investigation on Parcel 2 before purchasing the land.

31.     Other entities of which Swanson was an officer and shareholder have performed Phase I environmental investigations before purchasing other parcels.

32.     Swanson purchased a nearby parcel of land, the boundaries of which are indicated on Deposition Exhibit 1A with blue squiggly lines, for $33,000.00 per acre.

33.     On December 2, 2002, Collingswood merged with Harrison.

34.     Before merging with Collingswood, Harrison did not perform an environmental investigation regarding any property Collingswood owned.

---

[16]     Defendants both deny that Defendant Swanson's testimony noted an exact location for the tank; however, they acknowledge that Defendant Swanson testified that the tank was somewhere within this vicinity.  (Dkt. No. 174, at ¶ 28 [Def. Tarolli's Rule 7.1 Resp.]; Dkt. No. 178, Attach. 8, at ¶ 28 [Woodbine Defs.' Rule 7.1 Resp.].)

[17]     The Woodbine Defendants deny this asserted fact, arguing that Harrison "purchased approximately 63.86 acres of the Waite Dairy Farm for a total of $632,025."  (Dkt. No. 178, Attach. 8, at ¶ 31 [Woodbine Defs.' Rule 7.1 Resp.].)  However, the Swanson affidavit relied on by the Woodbine Defendants indicates that this purchase price was based on the total acreage of 84.86 acres acquired by both Collingswood and Harrison, not the specific parcel acquired by Harrison only.  The purchase agreement cited by Plaintiff supports the asserted fact in terms of the total purchase price; however, none of the evidence cited by Plaintiff specifically supports the asserted price-per-acre.  This fact has therefore been deemed admitted as to the total purchase price, but not as to the price-per-acre.

35.     After Collingswood merged with Harrison, Harrison amended its certificate of

incorporation to change its name to Woodbine Business Park, Inc.

**Tarolli's Earthwork Construction Activities on the Woodbine Site**

36.     Woodbine contracted with Tarolli to perform certain construction work on the

Woodbine site.[18]

37.     Tarolli performed utility work on the site.

38.     Tarolli's work on site included such tasks as the installation of curbing, gutters,

asphalt, storm and sanitary sewers, Canada Drive, Loucks Road, and sidewalks.

39.     To perform its work, Tarolli brought certain earthmoving equipment on site, such

as bulldozers, rollers, excavators, and loaders.

40.     Tarolli performed earthwork at the site such as stripping the topsoil, cutting and

filling dirt, and sculpting the soil to the prescribed elevations.

41.     Stripping the topsoil meant using equipment to scrape the layer of topsoil from

the

clay beneath the topsoil.

42.     Tarolli stripped topsoil from areas of the Woodbine site and stockpiled the

stripped topsoil on site.

43.     Cutting and filling dirt meant excavating earthen materials from higher elevation

areas on the site and moving that earthen material to lower elevation areas on the site.

---

[18]     Defendant Tarolli denies a portion of Plaintiff's asserted fact, arguing that the work performed by Tarolli on the Woodbine site was the result of a contract effective May 13, 2008, while the work performed pursuant to a July 15, 2009, contract was on New York State's roadway and right-of-way (not the Woodbine property itself).  (Dkt. No. 174, at ¶ 42 [Def. Tarolli Rule 7.1 Resp.].)

44.     While cutting and filling dirt, Tarolli cut earthen material from where the current intersection of Loucks Road and Route 298 is situated.[19]

45.     After cutting and filling dirt, Tarolli used machinery to sculpt the soil to prescribed elevations.

46.     After stripping the topsoil and cutting and filling dirt, Tarolli used the excavator to dig trenches to install the storm and sanitary sewer lines alongside the distance of where Loucks Road and Canada Drive would be constructed.

47.     When installing pipes in the trenches, Tarolli used its loader to import aggregate material into the trench.

48.     Tarolli installed piping in the trench, with imported aggregate material below and above this piping.

49.     After installing the piping and importing the aggregate material, Tarolli used its loader to fill in the trenches with some of the soil excavated from the site.

50.     After filling in the utility trenches with the excavated soil, Tarolli graded the area above the trenches.

51.     After installing the storm and sanitary sewer lines, Tarolli constructed Loucks Road and Canada Drive.

---

[19]     Defendant Tarolli denies this asserted fact, arguing that the work on Route 298 and Loucks Road was performed pursuant to a separate contract from that governing the work on the Woodbine property, and that there is no evidence that any material cut during the performance of the Route 298/Loucks Road contract was placed into the relevant soil piles. (Dkt. No. 174, at ¶ 50 [Def. Tarolli's Rule 7.1 Resp.].)  However, Defendant Tarolli fails to cite any evidence supporting its denial, while the deposition testimony of Defendant Swanson cited by Plaintiff indicates that the soil in the stockpile could have come from either the installation of Loucks Road or the intersection between Loucks Road and Route 298. (Dkt. No. 168, Attach. 1, at 132-34 [Swanson Dep.].)  Because Defendant Tarolli has failed to cite to evidence supporting its denial, this fact is deemed admitted.

52.     Tarolli imported aggregate material to install the road base.

53.     While building the roads, Tarolli formed the gutters along the edges of the roads.

54.     Tarolli reused some of the previously excavated soil to bring the gutters to the proper grade for drainage.[20]

55.     To bring the site elevation to grade, Tarolli reused some of the previously excavated soil.[21]

56.     To bring the site elevation to fine grade, Tarolli reused some of the previously excavated soil.[22]

57.     After bringing the site to fine grade, Tarolli had surplus topsoil.

58.     Tarolli stockpiled the surplus topsoil on site near the corner of Canada Drive and Loucks Road.

59.     The surplus topsoil stockpiled on the Woodbine site near the corner of Canada Drive and Loucks Road was comprised in part of soils Tarolli excavated from other locations on

---

[20]     Defendant Tarolli purports to deny this asserted fact, but appears to essentially disagree with only Plaintiff's use of the word "stockpile"; it does not challenge the fact that it used topsoil stripped during its work to fill these gutters.  (Dkt. No. 174, at ¶ 61 [Def. Tarolli's Rule 7.1 Resp.].)  This fact is therefore deemed admitted, although the Court has clarified the description of the soil in a way that is consistent with the evidence.

[21]     *See, supra*, note 20 of this Decision and Order.  In addition, Defendant Tarolli appears to object to Plaintiff's assertion that it "spread [the soil] throughout the Site," noting that deposition testimony indicates that Defendant Tarolli tended to use soil excavated from nearby areas rather than moving soil from one area of the property to the other.  (Dkt. No. 174, at ¶ 62 [Def. Tarolli's Rule 7.1 Resp.].)  Therefore, the Court has omitted a portion of Plaintiff's asserted fact due to its being disputed.

[22]     *See, supra*, note 21 of this Decision and Order.

the site.[23]

## **The Sale of Topsoil from the Woodbine Site**

60.     Brian St. Laurent is employed by Swanson.[24]

61.     St. Laurent serves as Swanson's representative regarding Swanson's real estate.

62.     Richard H. Law is employed as president of Plaintiff.

63.     Law, on behalf of Plaintiff, negotiated with St. Laurent for the purchase of topsoil

staged at the Woodbine site.[25]

64.     In or about the summer of 2011, Law communicated with St. Laurent regarding

the purchase of topsoil staged on the Woodbine site near the corner of Canada Drive and Loucks

Road.

---

[23]     Defendant Tarolli denies this asserted fact, arguing that no one is certain precisely where the soils in the soil pile came from. (Dkt. No. 174, at ¶ 67 [Def. Tarolli's Rule 7.1 Resp.].) However, although the deposition evidence cited by both Plaintiff and Defendant Tarolli does not indicate undisputedly what location on the Woodbine property the soil came from, it does support that the soil came from somewhere on that property. This fact is therefore deemed admitted.

[24]     The Woodbine Defendants deny this asserted fact, arguing that Mr. St. Laurent "is the Vice President of Real Estate Development for Woodbine Business Park, Inc., and is not 'employed by Swanson.'" (Dkt. No. 178, Attach. 8, at ¶ 72 [Woodbine Defs.' Rule 7.1 Resp.].) However, the evidence cited by the Woodbine Defendants does not create a genuine dispute of material fact as to whether Mr. St. Laurent was hired by Swanson to work for one of Swanson's companies. This asserted fact is therefore deemed admitted.

[25]     The Woodbine Defendants deny the portion of this asserted fact stating that Mr. St. Laurent negotiated on behalf of Defendant Swanson specifically, and the evidence cited by both Plaintiff and the Woodbine Defendants support that argument. (Dkt. No. 178, Attach. 8, at ¶ 75 [Woodbine Defs.' Rule 7.1 Resp.]; *see also* Dkt. No. 168, Attach. 15, at 68:2-12 [Pl.'s Dep., answering that his "client" was "Woodbine Business Park, Inc., and Norman Swanson," and that he negotiated with Mr. St. Laurent].) Because there is no cited evidence actually supporting Plaintiff's assertion that Mr. St. Laurent was negotiating on behalf of Defendant Swanson in particular (as opposed to DefendantWoodbine) this portion of the asserted fact has been omitted as disputed.

65.     The soil was excess topsoil resulting from Tarolli's construction activities under contract with Woodbine.

66.     Before purchasing the soil, Law personally visited the Woodbine site to visually inspect the soil.

67.     Law's visual inspection of the soil did not reveal that the soil had any discoloration or unusual odors.

68.     Law's visual inspection of the soil appeared to indicate that it was ordinary topsoil.

69.     Law had the soil tested for its pH levels and organics, and then agreed to purchase the soil.

70.     On July 21, 2011, Law and Swanson executed a contract pursuant to which Plaintiff would purchase 2,400 cubic yards of the soil for $12,000.[26]

71.     Law signed the contract in his capacity as president of Plaintiff.

72.     Plaintiff was required to pay Swanson before taking the soil.

73.     Plaintiff issued a check payable to Woodbine for the soil.[27]

---

[26]     The Woodbine Defendants deny this asserted fact to the extent it suggests that Defendant Swanson executed the contract in his personal capacity. (Dkt. No. 178, Attach. 8, at ¶ 82 [Woodbine Defs.' Rule 7.1 Resp.].) The Court is mindful of the Woodbine Defendant's objection, but finds no such implication in this asserted fact; therefore, this asserted fact is deemed admitted. *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts).

[27]     Defendant Tarolli denies this asserted fact and argues that Mr. Law testified that the made the check payable to "Woodbine Associates" rather than Woodbine Business Park. (Dkt. No. 174, at ¶ 86 [Def. Tarolli's Rule 7.1 Resp.].) However, in the cited deposition testimony, Mr. Law testified that "I sent a check to Woodbine Associates or whatever it was called," which indicates that Mr. Law did not necessarily recall the specific name of the company to which he issued the check. (Dkt. No. 168, Attach. 15, at 89:18-20 [Pl.'s Dep.].) This fact is therefore deemed admitted.

74.     St. Laurent rejected the check Plaintiff issued to Woodbine and required that Plaintiff issue the check to "Norman E. Swanson."

75.     In consideration for the soil, Plaintiff issued a check directly to Swanson in the amount of $12,000.

76.     The soil that Plaintiff purchased was staged onsite near the intersection of Canada Drive and Loucks Road.

77.     The soil Plaintiff purchased was comprised in part of the surplus topsoil resulting from Tarolli's construction activities on the Woodbine site.

78.     Pursuant to the contract, Plaintiff was responsible for hauling the soil off the Woodbine site.

79.     Using daily log sheets, time sheets, and milage sheets, Plaintiff documented where it hauled the soil after taking it from the Woodbine site.

80.     On August 26 and 27, 2011, Plaintiff hauled some of the soil from the Woodbine site directly to Plaintiff's yard.

81.     On August 29 and 30, 2011, Plaintiff hauled some of the soil from the Woodbine site directly to a project site at LeMoyne College Coyne Science Center.

82.     All of the soil hauled from the Woodbine site to Plaintiff's yard was stored in one stockpile at the western edge of Plaintiff's yard.

83.     Plaintiff was not aware of any PCB contamination in the soil before it purchased the soil.[28]

---

[28]     Both Defendant Tarolli and the Woodbine Defendants deny this asserted fact, arguing that Plaintiff has not proven that the soil from the Woodbine site was in fact contaminated.  (Dkt. No. 174, at ¶ 100 [Def. Tarolli's Rule 7.1 Resp.]; Dkt. No. 178, Attach. 8,

84. Plaintiff was not aware of any PCB contamination in the soil before it stockpiled the soil at its yard.[29]

85. Before learning of any PCB contamination, Plaintiff hauled some of the soil from its yard directly to five different construction project sites.

86. Plaintiff's expert, Dale Vollmer of Plumley Engineering, concluded that it was his understanding that the PCB-contaminated topsoil brought to the five sites originated from the same pile of topsoil staged at Plaintiff's yard.[30]

87. Plaintiff hauled some of the soil from its yard directly to construction projects at LeMoyne, St. Joseph's Hospital Health Center, Syracuse Institute of Technology, HW Smith School, and Ultra Dairy Fly Road.

---

at ¶ 100 [Woodbine Defs.' Rule 7.1 Resp.].)  Although there may be a question of fact remaining as to whether the Woodbine soil was the source of the contamination of Plaintiff's property and the third-party properties, the evidence cited supports that Plaintiff was unaware of any possible contamination at the time it purchased the soil.  This asserted fact is therefore deemed admitted.

[29] *See, supra*, note 28, of this Decision and Order.

[30] Both Defendant Tarolli and the Woodbine Defendants deny this asserted fact; however, the Court finds those denials to be ineffective for three reasons.  (Dkt. No. 174, at ¶ 104 [Def. Tarolli's Rule 7.1 Resp.]; Dkt. No. 178, Attach. 8, at ¶ 104 [Woodbine Defs.' Rule 7.1 Resp.].)  First, the Woodbine Defendants' argument that Mr. Vollmer's opinion cannot be considered as part of the record is contradicted by their own assertion that depositions are considered part of the record; the opinion relied on was relayed as a part of Mr. Vollmer's deposition testimony in this case.  (Dkt. No. 168, Attach. 25, at 104-05 [Vollmer Dep.].)  Second, Defendants' argument that Mr. Vollmer's testimony is inappropriate because he lacked personal knowledge is not sufficient to discredit the evidentiary value of Mr. Vollmer's testimony.  Third, although Defendants object to Mr. Vollmer's testimony, they have not otherwise denied that the soil taken to the third-party sites was from Plaintiff's yard; they in fact argue this very point in emphasizing repeatedly that Plaintiff stockpiled the soil at its own yard and commingled the soil from the Woodbine site with other soil.  This asserted fact is therefore deemed admitted.

88.     In the fall of 2012, Plaintiff became aware that there were PCBs in the soil.

89.     Plaintiff notified the owners of each site to which it had hauled the soil.

90.     Plaintiff also notified the New York State Department of Environmental Conservation ("NYSDEC").

91.     Plaintiff hired environmental consulting firm Certified Environmental Services ("CES") to determine the source of the PCB contamination.

92.     CES examined the sites from which Plaintiff acquired the soils in the pile on Plaintiff's yard.[31]

93.     CES' results indicate that PCBs, specifically Arochlor 1248, were found at the

---

[31]     The Woodbine Defendants argue that the report from CES cannot be considered to be part of the record because it is "an unverified report," and N.D.N.Y. L.R. 7.1(a)(3) indicates that "the record for the purposes of the statement of material facts . . . includes only pleadings, depositions, answers to interrogatories, admissions, and affidavits."  (Dkt. No. 178, Attach. 8, at ¶ 114 [Woodbine Defs.' Rule 7.1 Resp.].)  Local Rule 7.1(a)(3) states that "[t]he record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits," noting specifically that "[i]t does not, however, include attorney's affidavits."  N.D.N.Y. L.R. 7.1(a)(3).  The Woodbine Defendants' attempt to turn the list in this local rule into an exhaustive list is contrary to standard interpretation principles.  *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (noting that "the term 'including' is not one of all-embracing definition, but connotates simply an illustrative application of the general principle"); *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979) (noting that a list beginning with the word 'includes' "is not exhaustive but merely illustrative").  This non-exclusive interpretation is supported by Fed. R. Civ. P. 56(c)(A), which more broadly indicates that the record on a motion for summary judgment includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, and other materials."  Fed. R. Civ. P. 56(c)(A); *see also* Fed. R. Civ. P. 83(a)(1) ("A local rule must be consistent with–but not duplicate–federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075.").  Because the Woodbine Defendants' interpretation must therefore be rejected and it has not otherwise provided a factual or legal reason to support its denial, this fact is deemed admitted.   The Court would add only that Plaintiff's counsel has sworn that the report is a true and accurate copy of an exhibit marked for identification during a deposition that occurred over the course of this action.  (Dkt. No. 165, Attach. 2, at ¶ 12.)

Woodbine site.[32]

94.     CES' results indicated that only the Woodbine site contained PCBs with Arochlor

1248.[33]

95.     Woodbine hired environmental consulting firm Asbestos and Environmental

Consulting Corp. ("AECC"), to test the Woodbine site.

96.     AECC determined that the Woodbine site was contaminated with PCBs.[34]

97.     AECC's soil tests found the presence of Arochlor 1248.[35]

---

[32]     *See, supra,* note 31 of this Decision and Order.

[33]     *Id.*

[34]     The Woodbine Defendants deny this asserted fact for three reasons: (1) there is no Exhibit QQ in the record, (2) Plaintiff's counsel did not reference Exhibit JJ in his declaration, nor was that exhibit the subject of deposition testimony, and (3) the cited documents are hearsay. (Dkt. No. 178, Attach. 8, at ¶ 118 [Woodbine Defs.' Rule 7.1 Resp.].)  The Woodbine Defendants are correct that the declaration of Plaintiff's counsel indicates that the report from AECC is annexed as Exhibit QQ and that there is no exhibit following with that label.  (Dkt. No. 165, Attach. 2, at ¶ 14 [Bailey Decl.].)  However, the exhibit marked Exhibit JJ (which Plaintiff's counsel does not reference in his declaration) appears to contain both letters from AECC containing soil sampling plans for the Woodbine property and a draft report showing the results of that soil testing.  (Dkt. No. 168, Attach. 34 [AECC Receipts].)  Consequently, the Court finds that Exhibits QQ and JJ are in fact the same exhibit, and therefore Plaintiff's counsel has appropriately (albeit in a mistaken way) referred to this report in his declaration and declared that Exhibit JJ is a true and accurate copy of the AECC's report, and therefore the Woodbine Defendants' objection does not support its denial.  As to the Woodbine Defendants' objection that this evidence is hearsay, the Court is not convinced that, if found to contain hearsay, Plaintiff would be unable to present this evidence in a form that is indeed admissible at trial, such as testimony from the persons who conducted that testing.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  Accordingly, this asserted fact is deemed admitted.

[35]     *See, supra,* note 34 of this Decision and Order.

98.     AECC's soil tests indicated that the PCB concentrations were as high as 4,404 parts per million.[36]

99.     Soil tests indicated that the area of the Woodbine site near the intersection of Canada Drive and Loucks Road was contaminated with PCBs.[37]

100.    Soil tests indicated that the remaining soil piles on the Woodbine site are contaminated with PCBs.[38]

101.    Plaintiff has completed remediation of its yard, LeMoyne, St. Joseph's Hospital, Syracuse Institute of Technology, HW Smith School, and Ultra Dairy.

102.    Plaintiff completed its remediation of all of these sites in accordance with work plans approved by the NYSDEC and the United States Environmental Protection Agency ("EPA").

103.     The NYSDEC issued letters to Plaintiff declaring that remediation of the LeMoyne, St. Joseph's Hospital, Ultra Dairy, and HW Smith School were completed; Law further testified that the remediation of Plaintiff's yard was completed and that he received "a letter that the sites were closed from the New York State DEC."

104.    Mr. Vollmer determined that the response costs incurred by Plaintiff to remediate each of the five sites and its own yard were necessary costs of response.[39]

---

[36]     *See, supra,* note 31 of this Decision and Order.

[37]     *Id.*

[38]     *Id.*

[39]     The Woodbine Defendants object to this asserted fact for two reasons: (1) expert opinions are not part of the record under N.D.N.Y. L.R. 7.1(a)(3); and (2) Mr. Vollmer's report cannot be authenticated and is therefore unsworn hearsay.  (Dkt. No. 178, Attach. 8, at ¶ 127 [Woodbine Defs.' Rule 7.1 Resp.].)  The Woodbine Defendants' first argument is unpersuasive

105.    Mr. Vollmer determined that Plaintiff and its consultants complied with the regulatory requirements of the NYSDEC and EPA.[40]

106.    Plaintiff's insurance carrier covered $1,439,619.49 of the response costs for the third-party properties.

107.    Mr. Vollmer determined that Plaintiff's necessary costs of response to remediate each of the five third-party sites and its yard were consistent with the NCP.[41]

108.    To date, the Woodbine site remains contaminated with PCBs.[42]

109.    To date, Woodbine has not begun to remediate the Woodbine site.[43]

---

for the same reasons stated in note 31 of this Decision and Order.  As to the Woodbine Defendants' second argument that Mr. Vollmer's report cannot be authenticated, the Woodbine Defendants ignore that fact that (a) Plaintiff's counsel swore in his declaration that this was a true and accurate copy of Mr. Vollmer's report, (b) the report includes Mr. Vollmer's stamp as a licensed professional engineer in the State of New York, and (c) at his deposition, Mr. Vollmer identified the report and testified that he had prepared it.  (Dkt. No. 165, Attach. 2, at ¶ 13 [Bailey Decl.]; Dkt. No. 168, Attach. 30, at 2 [Vollmer Expert Report]; Dkt. No. 168, Attach. 25, at 29 [Vollmer Dep.].)  Additionally, the Woodbine Defendants have failed to offer any reason for doubting the authenticity of this report.  Lastly, to the extent Mr. Vollmer's report contains any hearsay statements, the Court is again not convinced that Plaintiff would be unable to offer this evidence in an admissible form, as discussed above in note 34 of this Decision and Order.  This fact is therefore deemed admitted.

[40]    *See, supra,* note 39 of this Decision and Order.

[41]    *Id.*

[42]    Defendants deny this asserted fact, arguing that Plaintiff has not established PCB contamination at the Woodbine property.  (Dkt. No. 174, at ¶ 132 [Def. Tarolli's Rule 7.1 Resp.]; Dkt. No. 178, Attach. 8, at ¶ 132 [Woodbine Defs.' Rule 7.1 Resp.].)  However, in the portion of the deposition of Defendant Swanson cited by Plaintiff, Defendant Swanson stated that his property has not yet been cleaned up as part of the Brownfield Cleanup Program.  (Dkt. No. 168, Attach. 2, at 77-78 [Swanson Dep.].)  This fact is therefore deemed admitted.

[43]    *Id.*

### 3. Undisputed Material Facts on the Woodbine Defendants' Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by the Woodbine Defendants in their Statement of Material Facts., and expressly admitted by Plaintiff and/or Defendant Tarolli in their responses thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 166, Attach. 26 [Woodbine Defs.' Rule 7.1 Statement] *with* Dkt. No. 177, Attach. 3 [Pl.'s Rule 7.1 Resp.] *and* Dkt. No. 175 [Def. Tarolli's Rule 7.1 Resp.].)

1.     Plaintiff's original Complaint was filed on November 8, 2013, and subsequently amended twice (for the first time on December 4, 2015, and for the second time on August 25, 2017).

2.     On September 5, 2017, the Woodbine Defendants filed an Answer to the Second Amended Complaint and to the counterclaims by, and cross-claims against, the co-Defendants.

3.     On March 16, 1990, Harrison entered into an agreement with Waite Dairy to purchase approximately 63.86 acres of land that are currently part of the Woodbine Business Park.

4.     On March 19, 1990, Harrison entered into a non-compete agreement with members of the Waite family as part of the above-referenced land purchase agreement.

5.     On March 16, 1990, Collingswood entered into an agreement with Waite Dairy to purchased approximately 21.4 acres of land that are currently part of the Woodbine Business Park.

6.     Before closing on the respective properties discussed above, Harrison and Collingswood conducted numerous inquiries into the prior historical uses and potential

contamination of those properties, including (a) walking the properties, (b) conducting interviews of the owners of the properties, (c) conducting interviews with neighboring landowners, and (d) holding an "open house" with citizens in the community to learn as much as possible about the properties as they could.[44]

7.      The investigation conducted before the property purchases did not identify any recognized environmental conditions and neither Harrison nor Collingswood knew or had reason to know that the property could be contaminated with PCBs at the time they purchased the properties.[45]

8.      On or about October 18, 2002, Collingswood merged with Harrison; the surviving corporation name was 224 Harrison Corporation.

9.      In 2008, Woodbine entered into a contract with Tarolli to install and perform other site development work at the Woodbine Business Park.[46]

---

[44]      Plaintiff denies this asserted fact; however, it cites no evidence that would support its denial, particularly as Defendant Swanson's deposition establishes that the enumerated activities were conducted.  (*Compare* Dkt. No. 166, Attach. 26, at ¶ 6 [Woodbine Defs.' Rule 7.1 Statement] *with* Dkt. No. 177, Attach. 3, at ¶ 6 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.

[45]      Plaintiff denies this asserted fact, arguing that the Woodbine Defendants failed to conduct Phase I testing and that soil boring testing indicated the presence of certain petroleum hydrocarbons and solvents on the Collingswood-purchased property.  (Dkt. No. 177, Attach. 3, at ¶ 7 [Pl.'s Rule 7.1 Resp.].)  However, given that the relevant contamination in this case is PCBs (rather than petroleum hydrocarbons and solvents), and because Plaintiff does not appear to dispute that there was no evidence of PCBs on the Woodbine site at the time Harrison and Collingswood purchased the property, the Court has deemed this asserted fact to be admitted with minor modifications and clarifications to account for the parties' understanding of the undisputed facts.

[46]      Plaintiff denies this asserted fact,; however, the evidence it cites does not support its denial.  (Dkt. No. 177, Attach. 3, at ¶ 9 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.

10.      The site work conducted at the Woodbine property resulted in the creation of several soil piles on the Woodbine property.

11.      In 2009, Woodbine was considering selling portions of the Woodbine site and had Phase I Environmental Site Assessments performed for the site; these assessments did not identify any "recognized environmental conditions."

12.      Plaintiff is a construction company that owns and operates an office and yard located at 6863 Schulyer Road in East Syracuse, Onondaga County, New York.

13.      Plaintiff purchases and uses various soils as part of its normal business, including topsoil for use in construction projects.

14.      On June 24, 2011, Plaintiff entered into a contract with the Pike Company to provide services in connection with the Bristol-Myers-Squibb Transformation project ("BMS project").

15.      Pursuant to the terms of the contract for the BMS project, Plaintiff was to work with other subcontractors in cutting and capping existing utilities to certain buildings scheduled for demolition, relocating certain utilities, and grading the site to project elevations after the buildings were demolished; this work required Plaintiff to import approximately 5,000 cubic yards of topsoil.[47]

16.      The BMS contract required that any dirt, soil, and/or fill be sampled pursuant to NYSDEC's DER-10 Protocol, which, among other things, requires sampling for PCBs.[48]

---

[47]      Plaintiff denies this asserted fact but fails to cite any evidence.  (Dkt. No. 177, Attach. 3, at ¶ 15 [Pl.'s Rule 7.1 Resp.].)  This fact is therefore deemed admitted.

[48]      *See, supra*, not 47 of this Decision and Order.

17.     In the summer of 2011, St. Laurent and Robert H. Law discussed Plaintiff's desire to purchase one of the Woodbine soil piles for use in a construction project.[49]

18.     On or about July 15, 2011, Law personally visited the Woodbine site to evaluate two different soil piles to determine which one was suitable for his needs and which one he would purchase from Woodbine.[50]

19.     Law used a machine to dig into the pile and "turned it over a few times" to visually look at the soil; based on that evaluation, Law determined that the first pile was not suitable for his use.[51]

20.     On that same day, Law inspected the second soil pile, which ended up being the soil pile that Law purchased from Woodbine.

21.     Law again used the same machine to dig into the soil pile, visually inspected the pile, and sampled the pile for pH and organic content.

22.     Plaintiff performed no other analytical testing on the soil pile.[52]

23.     Plaintiff observed no visual or olfactory indications of contamination in the soil pile.

24.     The pH and organic content test results were deemed acceptable by Law.

25.     Based on his inspection of the soil pile, Law determined that it was suitable for his use.

---

[49]     Plaintiff denies this asserted fact; however, the evidence cited does not support its denial.  (Dkt. No. 177, Attach. 3, at ¶ 17 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

[50]     *See, supra*, note 46 of this Decision and Order.

[51]     *Id.*

[52]     *Id.*

26.     Law then contacted St. Laurent and agreed that he would purchase the soil pile.

27.     Law personally handled the contract negotiations directly with St. Laurent.[53]

28.     St. Laurent informed Law that the soil pile was left over from development work on the property.

29.     Law's understanding was that the soil pile was left over from development work on the property.

30.     No one else at Plaintiff business had any conversations with St. Laurent regarding the soil pile.

31.     Law did not have any communications with Swanson before entering into the contract to purchase the soil pile.

32.     Law and Plaintiff did not have any prior business dealings with Swanson or any of the other Woodbine Defendants before entering into the contract.

33.     On July 21, 2011, a contract was executed whereby Woodbine agreed to sell the soil pile to Plaintiff, and Plaintiff agreed to pay $12,000 for the 2,400 cubic yards of topsoil.[54]

34.     Plaintiff acquired the soil pile for future use in construction projects; at least some of the soil was used in the BMS project, which required that all dirt, soil, and fill be sampled for PCBs, among other contaminants.[55]

---

[53]     *Id.*

[54]     *Id.*

[55]     *Id.*

35.     By September 2, 2011, Plaintiff had transported the entire soil pile purchased from Woodbine to Plaintiff's yard.[56]

36.     Approximately 13 loads of the soil pile were transported by Plaintiff from the Woodbine property directly to a construction project at LeMoyne College.

37.     The soil pile that Plaintiff transported to its yard was screened through Plaintiff's equipment, commingled with soils acquired from at least five other locations that had not been sampled, and stockpiled for use in construction projects, including the BMS project.[57]

38.     Plaintiff transported soils from the commingled soil pile to five construction job sites, including LeMoyne College, Ultra Dairy, St. Joseph's Hospital, Syracuse Institute of Technology, and HW Smith School.

39.     On or about October 2012, Plaintiff had environmental consultant CES sample the approximately 4,000 cubic yard commingled soil pile at Plaintiff's yard pursuant to the BMS contract requirements; that sampling revealed that the commingled stockpile contained PCBs.[58]

40.     Plaintiff then had CES sample at the five locations where it had transported soils from the commingled soil pile; that sampling revealed that the soils at those sites were contaminated with PCBs.[59]

---

[56]     *Id.*

[57]     *Id.*

[58]     *Id.*

[59]     *Id.*

41.     On March 13, 2014, the EPA issued a Notice of Determination to Plaintiff.  In this Notice of Determination, the EPA found that (a) Plaintiff deposited soil contaminated with PCBs in six different locations during site preparation projects, (b) Plaintiff disclosed that it had begun PCB remediation work on two of the locations without receiving prior approval from the EPA, and (c) Plaintiff "committed eight violations of Section 6(e) of TSCA, 15 U.S.C. 2605(e), and the regulations relating to [PCBs] codified at 40 C.F.R. Part 761."[60]

42.     Plaintiff did not engage in any remediation or removal activity at the Woodbine site and did not incur any response costs for remediation or removal activity related to any release at the Woodbine property.[61]

###  C.     Parties' Briefing on the Parties' Motions

####         1.     Defendant Tarolli's Motion for Summary Judgment

#####               a.     Defendant Tarolli's Memorandum of Law

Generally, in its memorandum of law, Defendant Tarolli asserts six arguments.  (Dkt. No. 163, Attach. 9, at 14-31 [Def. Tarolli's Mem. of Law].)  First, Defendant Tarolli argues that Plaintiff's CERCLA claim against it must fail because it is not a PRP under CERCLA.  (*Id.* at 14-23.)  More specifically, Defendant Tarolli argues that Plaintiff has not produced evidence establishing that it qualifies as a PRP as an operator, arranger, or transporter.  (*Id.*)  Defendant Tarolli argues that it is not an operator because (a) it was merely contracted to perform site work at the Woodbine site under the supervision and control of the Woodbine Defendants, (b) it did not conduct any operations specifically related to pollution or having to do with leakage or

---

[60]     *Id.*

[61]     *Id.*

disposal of hazardous wastes, (c) Woodbine dictated the ultimate location of the soil pile, and (d) it had finished its work and obligations long before the purchase and transportation of the allegedly contaminated soil by Plaintiff. (*Id.* at 14-17.) Defendant Tarolli argues that it is not an arranger because it had no knowledge of any hazardous substance on the Woodbine property and it did not participate in the sale or delivery of the soil to Plaintiff's property. (*Id.* at 18-19.) Defendant Tarolli argues that it is not a transporter because (a) it never accepted any hazardous materials for transport, (b) it had no active involvement in the hazardous materials coming to the Woodbine site or Plaintiff's yard, and (c) it was not involved in the choice of site for the transport of any hazardous materials. (*Id.* at 19-23.)

Second, Defendant Tarolli argues that Plaintiff's CERCLA claims against it must fail because (a) Plaintiff did not incur any response costs related to Tarolli's actions on the Woodbine site, and (b) Plaintiff is not seeking any costs related to any clean-up of the Woodbine site itself. (*Id.* at 23-27.) More specifically, Defendant Tarolli argues that the CERCLA facility at issue should not include the Woodbine site and therefore the analysis must be whether Defendant Tarolli is a PRP as to Plaintiff's yard and the third-party properties; Defendant Tarolli argues in this respect that it was not involved in removing the soil to Plaintiff's yard or the third-party properties and that it was Plaintiff's own actions that resulted in the clean-up costs on the other properties. (*Id.*)

Third, Defendant Tarolli argues that the Woodbine Defendants' cross-claims for indemnification should be dismissed based on the fact that Defendant Tarolli is not a PRP. (*Id.* at 28-29.)

Fourth, Defendant Tarolli argues that Plaintiff's negligence claim should be dismissed because Defendant Tarolli did not owe a special duty to Plaintiff in that it did not have a contract, relationship, or position of trust with Plaintiff and it was not aware that the soil was contaminated. (*Id.* at 29-30.)

Fifth, Defendant Tarolli argues that Plaintiff's negligent misrepresentation claim should also be dismissed based on the absence of any special duty or relationship between Defendant Tarolli and Plaintiff.

Sixth, Defendant Tarolli argues that Plaintiff's private nuisance claim should be dismissed because Plaintiff purchased the soil more than three years after Defendant Tarolli was involved and Defendant Tarolli did not have responsibility for or control of the soil pile that was eventually purchased by Plaintiff.

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Tarolli's motion, Plaintiff asserts four arguments. (Dkt. No. 176, Attach. 2, at 11-27 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that the Woodbine site, Plaintiff's yard, and the third-party properties all constitute one CERCLA facility because (a) it alleged as much in its Second Amended Complaint, (b) given the common source of contamination on all the sites, this treatment would best advance the goals of CERCLA, (c) Defendant Tarolli's actions on the Woodbine property were the common source of the contamination, and (d) the soil from the Woodbine property was the common source of the contamination. (*Id.* at 11-15.)

Second, Plaintiff argues that Defendant Tarolli qualifies as a PRP under CERCLA as an operator, arranger, and transporter. (*Id.* at 18-24.) More specifically, Plaintiff argues that

Defendant Tarolli is an operator because, based on Plaintiff's own experience with site work contracting, Defendant Tarolli would have had the authority to control the source of the contamination and the disposal of the contaminated soil, including being able to choose where to place the excess soil on the Woodbine property.  (*Id.* at 19-21.)  Plaintiff argues that Defendant Tarolli is an arranger because it arranged to dispose of the contaminated soil on the Woodbine property.  (*Id.* at 21-23.)  Plaintiff argues that Defendant Tarolli is a transporter because it moved contaminated soil to other parts of the Woodbine property, thus spreading the contamination.  (*Id.* at 23-24.)

Third, Plaintiff argues that, even if the all the relevant sites are not considered to be one facility, Defendant Tarolli is still a PRP because there is a causal connection between the release at the Woodbine site (as the result of Defendant Tarolli's excavation work) and the incurrence of response costs at the other sites.  (*Id.* at 24-27.)  Plaintiff argues that it was foreseeable that someone would purchase the stockpiled soil and therefore the causal nexus is not broken by the fact that Plaintiff itself was the one who transported the soil to the other sites.  (*Id.* at 26-27.)  Plaintiff additionally argues that the fact that Plaintiff transported the soil off the Woodbine site does not absolve Defendant Tarolli of liability because Defendant Tarolli had a contract with the Woodbine Defendants and therefore cannot benefit from any available defense to liability.  (*Id.* at 25-26.)

Fourth, Plaintiff argues that issues of fact preclude granting summary judgment on Plaintiff's state law causes of action, including whether a special duty was owed by Defendant Tarolli to Plaintiff or whether Defendant Tarolli acted intentionally or negligently in interfering with Plaintiff's use and enjoyment of its land.  (*Id.* at 27.)

###### c.    The Woodbine Defendants' Opposition Memorandum of Law

Generally, in opposition to Defendant Tarolli's motion, the Woodbine Defendants argue only that Defendant Tarolli is not entitled to dismissal of the cross-claims against it if its summary judgment motion is denied.  (Dkt. No.180, Attach. 1, at 3 [Woodbine Defs.' Opp'n Mem. of Law].)

###### d.    Defendant Tarolli's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant Tarolli asserts four arguments.  (Dkt. No. 188, Attach. 1, at 6-14 [Def. Tarolli's Reply Mem. of Law].) First, Defendant Tarolli argues that the Woodbine property must be treated as a separate facility from the other properties because, pursuant to the relevant analysis, not only must there be a common source of contamination, but also a determination that the common contamination resulted from a singular operation while the sites were under common ownership; Defendant Tarolli argues that such is not the case here.  (*Id.* at 6-8.)

Second, Defendant Tarolli argues that it is not a PRP.  (*Id.* at 8-12.)  More specifically, Defendant Tarolli argues that Plaintiff has not shown that Defendant Tarolli had the authority to control operations at the Woodbine site because (a) Plaintiff admitted in its own motion that the Woodbine Defendants had exclusive authority to control operations and contamination on the Woodbine property, (b) Plaintiff's assertion is based wholly on Plaintiff's own personal industry knowledge, which is not sufficient to counter evidence of how the parties actually behaved in this instance, and (c) Plaintiff has not offered any evidence to support its assertion that materials imported to the Woodbine property by Defendant Tarolli could have been the source of the contamination.  (*Id.* at 9-10.)  Defendant Tarolli argues that, as to arranger liability, there is no

evidence that it had knowledge of hazardous substances or an intent to arrange for the disposal of such substances. (*Id.* at 10.) Defendant Tarolli argues that, as to transporter liability, Plaintiff has not shown that Defendant Tarolli chose where to dispose of the soil or otherwise exacerbated Plaintiff's clean-up costs through its actions. (*Id.* at 11-12.)

Third, Defendant Tarolli argues that Plaintiff's "two-site" theory does not apply because Plaintiff cannot show that Defendant Tarolli's actions caused the contamination on Plaintiff's yard. (*Id.* at 12-13.)

Fourth, Defendant Tarolli argues that Plaintiff's state law claims must also be dismissed because there is no evidence to support the existence of a duty or negligence. (*Id.* at 14.)

### 2. Plaintiff's Motion for Summary Judgment

### a. Plaintiff's Memorandum of Law

Generally, in its memorandum of law, Plaintiff asserts four arguments. (Dkt. No. 165, Attach. 4, at 11-30 [Pl.'s Mem. of Law].) First, Plaintiff argues that it is not in dispute that there was a release of PCBs at the Woodbine property that caused Plaintiff to incur response costs. (*Id.* at 11-13.)

Second, Plaintiff argues that all Defendants are PRPs under CERCLA, arguing specifically that (a) Collingswood is a prior owner and operator who had the authority to control the Woodbine site at the time an underground fuel tank was removed in 1990 and therefore it had control over the release or threatened release of hazardous materials, (b) Harrison merged with Collingswood and therefore is subject to successor liability given that the PCBs were present at the time Harrison owned the property, (c) Woodbine is successor to Harrison and an owner and operator in that it controls day-to-day operations on its property and had authority over Defendant

35

Tarolli as to where the soil could be placed on the Woodbine property, (d) Defendant Tarolli is an operator and transporter based on its excavation of the soil at the Woodbine property and its role in transporting the soil between different parts of the Woodbine property, and (e) Swanson is an owner and operator by virtue of having sold the soil to Plaintiff. (*Id.* at 13-19, 23-28.) Plaintiff also argues that the Woodbine Defendants are not entitled to an innocent landowner defense because they cannot maintain that they (a) acquired the property after the disposal or placement of the hazardous substance, (b) had no reason to know of the presence of PCBs, and (c) made appropriate inquiries as to the previous ownership and use of the property. (*Id.* at 19-23.) Plaintiff argues that soil tests showed the presence of petrochemicals, that Collingswood purchased the property with an agreement that they were responsible for any environmental clean-up related to the underground fuel tank present on the property, that Harrison did not conduct any environmental testing prior to purchasing land or merging with Collingswood, and that Woodbine did not conduct any environmental investigations. (*Id.* at 21-22.) Plaintiff additionally argues that factors indicating that the Woodbine Defendants were or should have been aware of contamination include (a) the fact that there were experienced commercial real estate developers, (b) the prices for the properties were lower than nearby properties, (c) the soil test results, (d) knowledge of the presence of the fuel tank, and (e) the fact that each had the ability to perform environmental testing but did not do so. (*Id.* at 22-23.)

Third, Plaintiff argues that summary judgment is proper on Plaintiff's claim for breach of contract because Plaintiff performed under the contract, while Defendants Woodbine and Swanson failed to provide the bargained-for topsoil (as opposed to the contaminated topsoil that was received). (*Id.* at 29.)

Fourth, Plaintiff argues that summary judgment is proper on Plaintiff's claim for interference with the use and enjoyment of its property because the sale of the topsoil resulted in the contamination of Plaintiff's yard. (*Id.* at 29-30.)

###### b. Defendant Tarolli's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's memorandum of law, Defendant Tarolli asserts three arguments. (Dkt. No. 174, Attach. 1, at 6-14 [Def. Tarolli's Opp'n Mem. of Law].) First, Defendant Tarolli argues that Plaintiff cannot impose liability on it for any release at the Woodbine property because Plaintiff is a private party and has no right to enforce the CERCLA statute against another entity (other than in the context of contribution), noting also that Plaintiff has incurred no response costs relative to the Woodbine property. (*Id.* at 6-8.)

Second, Defendant Tarolli argues that it is not an operator or a transporter under CERCLA. (*Id.* at 8-13.) More specifically, Defendant Tarolli argues that it is not an operator because it does not meet the definition of that term and Plaintiff has conceded that Defendant Woodbine was the entity that had the authority to control the source of the contamination and the area where Defendant Tarolli could stockpile the soil. (*Id.* at 9-10.) Defendant Tarolli argues that it is not a transporter because, given that no one knows for sure what caused the PCB contamination, it is impossible to determine which parts of the Woodbine property were uncontaminated before Defendant Tarolli moved the soil; additionally, it is undisputed that Defendant Tarolli was not involved in moving the soil to Plaintiff's yard or the third-party properties where Plaintiff actually incurred clean-up costs. (*Id.* at 11-13.)

Fourth, Defendant Tarolli argues that Plaintiff is not entitled to summary judgment on its state law claims because it has not presented evidence or arguments supporting these claims against Defendant Tarolli. (*Id.* at 13-14.)

###### c. The Woodbine Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's memorandum of law, the Woodbine Defendants assert seven arguments. (Dkt. No. 178, Attach. 9, at 6-27 [Woodbine Defs.' Opp'n Mem. of Law].) First, the Woodbine Defendants argue that the relevant facility in this litigation is Plaintiff's yard and the third-party properties (and not the Woodbine property) because those sites are where Plaintiff incurred its clean-up costs. (*Id.* at 6-7.) The Woodbine Defendants argue that Plaintiff did not engage in any remediation at the Woodbine property, and therefore Plaintiff must show that the Woodbine Defendants were PRPs specifically as to the other properties, something that it cannot do. (*Id.*)

Second, the Woodbine Defendants argue that Plaintiff cannot seek contribution under CERCLA 113(f) because it has not been sued under CERCLA 106 or 107(a), and therefore, any such claim should be dismissed. (*Id.* at 7-8.)

Third, the Woodbine Defendants argue that, even if the Woodbine property is a facility under CERCLA, they are not PRPs. (*Id.* at 8-19.) More specifically, the Woodbine Defendants argue that Plaintiff cannot prove that the Woodbine soil was the source of the contamination (as opposed to other soils present on Plaintiff's yard that were commingled with the Woodbine site soil). (*Id.* at 8-11.) As to Defendant Collingswood, the Woodbine Defendants argue that there is no evidence of disposal of hazardous substances when Defendant Collingswood owned the property because there is no evidence that the underground fuel tank on that property was the source of PCBs and no testing to support that any PCB contamination existed at that time. (*Id.* at 11-15.) As to Defendant Harrison, the Woodbine Defendants argue that there is no evidence of PCB contamination at the time the property was purchased, and no basis for imposing successor

liability after the merger with Defendant Collingswood. (*Id.*) As to Defendant Woodbine, the Woodbine Defendants argue that Plaintiff has not offered any proof that Defendant Woodbine directed operations specifically related to pollution on the site, and that there is a genuine issue of material fact as to whether the Woodbine Defendants could assert an innocent landowner defense because (a) Phase I testing was not required in 1990 when the properties were purchased, (b) they otherwise made appropriate inquiries into the previous ownership of the properties, (c) there was no evidence that the contamination was introduced after they purchased the properties, (d) they paid above fair market value for the properties, (e) Phase I testing performed in 2009 showed no recognized environmental conditions, and (f) they were found to be not liable for discharge of petroleum on the Woodbine property. (*Id.* at 15-19.)

Fourth, the Woodbine Defendants argue that Defendant Swanson cannot be found liable in his personal capacity under CERCLA because he signed the soil purchase contract as the president of Defendant Woodbine, not in his individual capacity. (*Id.* at 20-22.) More specifically, the Woodbine Defendants argue that Defendant Woodbine owns the property and the soil (not Defendant Swanson), and that Defendant Swanson did not intend to be personally bound by signing the contract (although they acknowledge that the check for the purchase of the soil was written to Defendant Swanson because Defendant Woodbine did not have its own separate checking account.) (*Id.*)

Fifth, the Woodbine Defendants argue that Plaintiff has failed to comply with the national contingency plan related to remediation and that such failure means Plaintiff has not met its burden of establishing a prima facie case required for CERCLA contribution. (*Id.* at 22-24.)

Sixth, the Woodbine Defendants argue that the Court should deny summary judgment on Plaintiff's claim for breach of contract because (a) they did not breach the clear terms of the contract (i.e., they provided topsoil as required), and (b) Plaintiff cannot prove that the soil it purchased from them was contaminated, much less that it was subject to any warranty. (*Id.* at 24-25.)

Seventh, the Woodbine Defendants argue that the Court should deny summary judgment on Plaintiff's claim for private nuisance because Plaintiff has not shown intentional conduct by either Defendant Woodbine or Defendant Swanson. (*Id.* at 26-27.)

### d.    Plaintiff's Reply Memoranda of Law

### i.    Reply to Defendant Tarolli

Generally, in reply to Defendant Tarolli's opposition, Plaintiff asserts three arguments. (Dkt. No. 185, Attach. 1, at 7-20 [Pl.'s Reply Mem. of Law].) First, Plaintiff argues that, contrary to Defendant Tarolli's argument, it is not seeking to hold Defendant Tarolli directly responsible under CERCLA, but rather seeking contribution for clean-up of the relevant facility as allowed under CERCLA. (*Id.* at 7.)

Second, Plaintiff argues that all of the sites involved in this action should be considered one facility and that Defendant Tarolli is a PRP under CERCLA for the reasons outlined in its memorandum of law. (*Id.* at 7-12.) In addition, Plaintiff argues that the term "operator" turns on whether there was a disposal of hazardous waste, and that such disposal occurred through Defendant Tarolli's excavation and stockpiling of the soil. (*Id.* at 14-16.) Plaintiff also argues that Defendant Tarolli's activities make it more likely than not that Defendant Tarolli spread contaminated soil to uncontaminated portions of the Woodbine property. (*Id.*)

Third, Plaintiff argues that, even if the sites are treated as separate CERCLA facilities, Defendant Tarolli's activities are a causal link to the contamination of the other sites that would render it liable, and there is no applicable defense to that liability. (*Id.* at 18-20.)

## ii.    Reply to the Woodbine Defendants

Generally, in reply to the Woodbine Defendants' opposition, Plaintiff asserts four arguments. (Dkt. No. 185, Attach. 2, at 10-22 [Pl.'s Reply Mem. of Law].) First, Plaintiff argues that all of the relevant sites are one facility for the purposes of CERCLA, and that, although there is no need to prove with certainty on this motion whether the Woodbine property was the source of the contamination, the evidence nonetheless shows that the contamination resulted from the Woodbine soil pile. (*Id.*)

Second, Plaintiff argues that the Woodbine Defendants are PRPs and do not qualify for an innocent landowner defense. (*Id.* at 13-18.) More specifically, Plaintiff argues that circumstantial evidence allows an inference that removal of the underground fuel tank resulted in the release of a hazardous substance while Defendant Collingswood was the owner of the property, and thus the other Woodbine Defendants are successors. (*Id.* at 14-15.) Plaintiff argues that Defendants Woodbine and Swanson are owners and operators because they controlled the disposal of the soil pile during the sale to Plaintiff, and that the check could not have been written to Defendant Swanson if Defendant Swanson did not have the ability to sell the soil in his individual capacity. (*Id.* at 15-17.) Plaintiff also argues that the Woodbine Defendants do not qualify for an innocent landowner defense because Phase I testing was required as part of due diligence (even if it was not required by law at the time of the purchase of the land) based on the indications of possible contamination, and because the Woodbine Defendants' other actions in investigating possible contamination were not sufficient. (*Id.* at 17-18.)

Third, Plaintiff argues that, even if the sites are treated as separate facilities, the Woodbine Defendants' activities at the Woodbine property causally link them to the other sites that were later contaminated. (*Id.* at 19-21.)

Fourth, Plaintiff argues that it is entitled to summary judgment on its state law claims for the same reasons as outlined in its memorandum of law. (*Id.* at 21-22.)

### 3. The Woodbine Defendants' Motion for Summary Judgment

### a. The Woodbine Defendants' Memorandum of Law

Generally, in their memorandum of law, the Woodbine Defendants assert eight arguments. (Dkt. No. 166, Attach. 27, at 7-27 [Woodbine Defs.' Mem. of Law].) First, the Woodbine Defendants argue that the relevant facility is Plaintiff's yard and the third-party properties because it is undisputed that Plaintiff has not engaged in any remediation activities on the Woodbine property. (*Id.* at 8-9.) Additionally, the Woodbine Defendants argue that Plaintiff has not shown a physical or operational connection between the sites or a means of natural migration of the contamination, and has not shown that the release of PCBs on Plaintiff's yard and the third-party properties was due to the direct actions of the Woodbine Defendants or natural spreading; rather, the evidence shows that Plaintiff personally spread the contaminated soil. (*Id.* at 9-11.) The Woodbine Defendants argue that Plaintiff is unable to show that the Woodbine Defendants were actually involved in the release at the sites Plaintiff was required to remediate or that the Woodbine Defendants are owners/operators, arrangers, or transporters in relation to those sites. (*Id.* at 9-15.) Specifically, the Woodbine Defendants argue that there is no evidence that they are owners or operators of any of those sites, that they are not arrangers because their obligation to exercise control over the soil ended when Plaintiff purchased it, and that they are not transporters because they did not transport the soil to any of the remediated sites. (*Id.* at 12-15.)

Second, the Woodbine Defendants argue that Plaintiff cannot seek contribution under CERCLA 113(f) because it has not been sued under CERCLA 106 or 107(a). (*Id.* at 15.)

Third, the Woodbine Defendants argue that Plaintiff's negligence claim must be dismissed because the Woodbine Defendants did not owe any legal duty to Plaintiff independent of the purchase contract, making this claim duplicative of Plaintiff's contract claim. (*Id.* at 16-18.) The Woodbine Defendants also argue that, nonetheless, they had no reason to know that the soil was contaminated. (*Id.*)

Fourth, the Woodbine Defendants argue that Plaintiff's claim for negligent misrepresentation should be dismissed because Plaintiff has not shown that there is a special relationship of confidence or trust between the parties, particularly because Plaintiff has admitted that the relationship was a one-time transaction. (*Id.* at 18-21.) The Woodbine Defendants additionally argue that the negligence and negligent misrepresentation claims against Defendant Swanson personally should be dismissed because he never engaged in any direct communications with Plaintiff leading up to the execution of the contract. (*Id.* at 21.)

Fifth, the Woodbine Defendants argue that Plaintiff's claim for private nuisance should be dismissed because there is no evidence that the Woodbine Defendants engaged in intentional conduct to interfere with Plaintiff's use and enjoyment of its property. (*Id.* at 21-23.)

Sixth, the Woodbine Defendants argue that Plaintiff's claim for breach of contract must be dismissed because there was no breach of contract: the Woodbine Defendants provided the bargained-for soil, the contract did not contain any representations or warranties as to the quality of the soil, and there is no implied warranty of merchantability because neither Plaintiff nor the Woodbine Defendants are a "merchant of soil" as defined by the Uniform Commercial Code. (*Id.* at 23-25.)

Seventh, the Woodbine Defendants argue that Plaintiff is liable for the costs of remediation because it is the owner of one of the contaminated sites, and transported soil to the contaminated sites.  (*Id.* at 25-27.)

Eighth, the Woodbine Defendants argue that Defendant Tarolli's cross-claims should be dismissed because the Woodbine Defendants are not PRPs under CERCLA.  (*Id.* at 27.)

### b.   Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the Woodbine Defendant's memorandum of law, Plaintiff asserts four arguments.  (Dkt No. 177, Attach. 2, at 11-30 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that all the sites should be considered to be a single facility for the reasons already outlined in its other motion papers.  (*Id.* at 11-17.)  Plaintiff additionally argues that the purchase contract between Plaintiff and Defendants Woodbine and Swanson resulted in a common source of contamination, and that is was foreseeable that the soil would be spread to other locations. (*Id.*)

Second, Plaintiff argues that the Woodbine Defendants are PRPs for many of the same reasons already outlined in its other motion papers, including that Defendant Swanson is a PRP in his individual capacity because he signed the purchase contract and owned the Woodbine property (and thus the soil).  (*Id.* at 26-28.)

Third, Plaintiff argues that, in the alternative, each Woodbine Defendant is a liable PRP for the purposes of contribution under CERCLA 9613(f)(1), and that such a claim should be permitted to continue because Plaintiff did not abandon his CERCLA 9607(a) claim, and because permitting the claim to continue would be in the interests of judicial economy.  (*Id.* at 28-29.)

44

Fourth, Plaintiff argues that issues of fact preclude a grant of summary judgment as to Plaintiff's state law claims, particularly as to whether the representation that the soil sold was "topsoil" constitutes a state law cause of action. (*Id.* at 29-30.)

### c. Defendant Tarolli's Opposition Memorandum of Law

Generally, in opposition to the Woodbine Defendants' memorandum of law, Defendant Tarolli argues that, if Defendant Tarolli's motion for summary judgment is not granted, the Woodbine Defendants would not be entitled to dismissal of Defendant Tarolli's cross-claims because those claims are preempted by CERCLA. (Dkt. No. 175, Attach. 1, at 5-7 [Def. Tarolli's Opp'n Mem. of Law].)

### d. The Woodbine Defendants' Reply Memorandum of Law

Generally, in reply to Defendant Tarolli's and Plaintiff's oppositions, the Woodbine Defendants assert five arguments. (Dkt. No. 187, Attach. 1, at 3-12 [Woodbine Defs.' Reply Mem. of Law].) First, the Woodbine Defendants argue that the various sites cannot be considered to be a single facility, and that the cases cited by Plaintiff are distinguishable because (a) Plaintiff's own actions caused the contamination of the sites, (b) the sites in this instance are all separately owned and operated, and (c) the contamination was not due to natural spreading or migration of hazardous material. (*Id.* at 3-6.)

Second, the Woodbine Defendants argue that they are not PRPs, noting that Plaintiff's argument as to arranger liability is inconsistent in that he argues that the Woodbine Defendants sold it the soil as an arrangement for disposal while also arguing that the Woodbine Defendants knew the soil was to be used in construction projects. (*Id.* at 7-8.) The Woodbine Defendants also argue that Plaintiff contradictorily argues that both Defendant Woodbine and Defendant

Swanson (in his individual capacity) owned and sold the soil, despite the fact that only one could be the actual owner. (*Id.*) The Woodbine Defendants also argue that there has been no argument that the Woodbine Defendants actually transported the soil. (*Id.*)

Third, the Woodbine Defendants argue that Plaintiff cannot seek contribution under CERCLA 113(f) because the Supreme Court has clearly stated that "[a] private party who has not been sued under CERCLA 106 or 107(a) may not obtain contribution under 113(f)(1) from other liable parties," and Plaintiff's counter-claim is asserted under CERLCA 113(f), not CERLCA 107(a). (*Id.* at 9.)

Fourth, the Woodbine Defendants argue that Plaintiff is liable for contribution to the Woodbine Defendants for the costs of the remediation of its own yard and the third-party sites. (*Id.*)

Fifth, the Woodbine Defendants argue that summary judgment should be granted as to all of Plaintiff's state law claims because Plaintiff has failed to show a legal duty for its negligence claim, a special relationship for its negligent representation claim, intentional interference, or a breach of contract. (*Id.* at 10-12.)

## II.      GOVERNING LEGAL STANDARDS

### A.      Governing Legal Standards Related to a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[62]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[63]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[64]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there

---

[62]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[63]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[64]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[65]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[66] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See*

---

[65]     *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases); N.D.N.Y. L. R. 7.1(a)(3).

[66]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.  Governing Legal Standards for Liability Under CERCLA

Section 9607(a) of Title 42 of the United States Code states that certain persons shall be held liable for "any necessary costs of response" that are consistent with the national contingency plan incurred by a person other than the United States Government, a State, or an Indian tribe, and that these persons are enumerated as "(1) [any person who is] the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal and treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs[.]"  42 U.S.C. § 9607(a).

Additionally, "[a]ny person may seek contribution from any other person who is liable or potentially liable under [42 U.S.C. § 9607(a)], during or following any civil action under [42 U.S.C. § 9606] or under [42 U.S.C. § 9607(a)].  42 U.S.C. § 9613(f)(1).  The Supreme Court has

also recognized a separate and distinct remedy for cost recovery in 42 U.S.C. § 9607(a) by a private party who has incurred clean-up costs; notably, under 42 U.S.C. § 9607(a), the party seeking cost recovery is entitled to recover only the costs it has actually incurred in cleaning up a site. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138-39 (2007).

However, liability will not be imposed on any potentially responsible party who meets one or more of the above criteria if it "can establish by a preponderance of the evidence that the release or threat of a hazardous substance and the damages resulting therefrom were caused solely by–(1) an act of God; (2) an act of war; (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relations, existing directly or indirectly, with the defendant . . . if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or (4) any combination of the foregoing paragraphs." 42 U.S.C. § 9607(b).

Additionally, 42 U.S.C. § 9601(35)(A)-(B) defines the term "contractual relationship" in 42 U.S.C. § 9607(b)(3) as including contracts involving a land purchase, unless (1) the real property was acquired after the disposal or placement of the hazardous substance on or at the facility, (2) it can be shown by a preponderance of the evidence that, at the time the defendant acquired the facility, the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the

facility, (3) defendant has satisfied the requirements of 42 U.S.C. § 9607(b)(3)(a) and (b), and (4)

defendant cooperates with the response action at the facility, is in compliance with land use

restrictions in connection with the response action at the facility, and does not impede the

effectiveness or integrity of any institutional control employed at the facility in connection with

the response action.  42 U.S.C. § 9601(35)(A).  In order for a defendant to establish that it did not

have reason to know of the hazardous substance, it must demonstrate that, "on or before the date

on which the defendant acquired the facility, the defendant carried out all appropriate inquiries, as

provided in clauses (ii) and (iv), into the previous ownership and uses of the facility in accordance

with generally accepted good commercial and customary standards and practices," and that the

defendant took reasonable steps to (a) stop any continuing release, (b) prevent any threatened

future release, and (c) prevent or limit any human, environmental, or natural resource exposure to

any previously released hazardous substance.  42 U.S.C. § 9601(35)(B)(i).

## III.   ANALYSIS

### A.   Whether Plaintiff Has Properly Asserted a Claim for Contribution Under 42 U.S.C. 9613(f).

After careful consideration, the Court answers this question in the negative for the reasons

stated in the Woodbine Defendants' memoranda of law.  (Dkt. No. 166, Attach. 27, at 15

[Woodbine Defs.' Mem. of Law]; Dkt. No. 187, Attach. 1, at 9 [Woodbine Defs.' Reply Mem. of

Law].)  To those reasons, the Court adds the following analysis.

Section 9613(f) of Title 42 of the United States Code "authorizes one PRP to sue another

for contribution in certain circumstances."  *Atlantic Research Corp.*, 551 U.S. at 132.  More

specifically, the Supreme Court has recognized that contribution can be sought under 42 U.S.C. §

9613(f) either (1) during or following any civil action under 42 U.S.C. § 9606 or 42 U.S.C. §

9607(a), or (2) after an administrative or judicially approved settlement that resolves liability to the United States or a State. *Cooper Industries, Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004). Under 42 U.S.C. § 9613(f), "a private party [can] seek contribution from other liable parties only after having been sued under [42 U.S.C. § 9606 or 42 U.S.C. § 9607(a)]." *Atlantic Research Corp.*, 551 U.S. at 133 (citing *Cooper Industries, Inc.*, 543 U.S. at 161).

Private parties also have the ability to sue for cost recovery under 42 U.S.C. § 9607(a). The Supreme Court has recently determined that persons liable as PRPs are entitled to sue for cost recovery under 42 U.S.C. § 9607(a). *Atlantic Research Corp.*, 551 U.S. at 135-36. The Supreme Court has differentiated contribution under 42 U.S.C. § 9613(f) and cost recovery under 42 U.S.C. § 9607(a):

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.' . . . Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue a § 113(f) contribution. By reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

*Atlantic Research Corp.*, 551 U.S. at 139.

In sum, the fundamental difference between a cause of action for contribution and one for cost recovery is whether the party suing (a) is subject to a civil action or administrative or judicially approved settlement related to liability for CERCLA violations (42 U.S.C. § 9613[f]), or (b) personally incurred cleanup costs as the result of voluntarily cleaning up a contaminated site (42 U.S.C. § 9607[a]).

Plaintiff argues that it has properly asserted a claim for contribution under 42 U.S.C. § 9613(f)(1) because it has brought a claim against Defendants under 42 U.S.C. § 9607(a) to determine whether they are PRPs. (Dkt. No. 177, Attach. 2, at 28-29 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff misunderstands the requirements of 42 U.S.C. § 9613(f)(1). The threshold question is not whether Plaintiff is suing other parties under 42 U.S.C. § 9607(a), but rather whether Plaintiff (as the party seeking contribution) has been sued under 42 U.S.C. § 9607(a) (or 42 U.S.C. § 9606). *See Atlantic Research Corp.*, 551 U.S. at 139 ("[A] private party [can] seek contribution from other liable parties only after having been sued under [42 U.S.C. § 9606 or 42 U.S.C. § 9607(a)]."); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 121 (2d Cir. 2010) ("Section 113(f)(1) provides PRPs who have been sued under § 107 a right of contribution from other PRPs, including the plaintiff."). Making the point even clearer, in *Niagara Mohawk Power Corp.*, the Second Circuit noted that the plaintiff "correctly conceded that it could not proceed with a contribution claim under § 113(f)(1)–it had not been sued under § 106 or § 107(a)." *Niagara Mohawk Power Corp.*, 596 F.3d at 122.

Plaintiff has not offered any evidence or even allegation that it has been sued under 42 U.S.C. § 9607(a) or 42 U.S.C. § 9606 regarding the cleanup of Plaintiff's yard and the third-party properties; nor has it shown that the cleanup was subject to an administrative or judicially approved settlement. Rather, it is undisputed that Plaintiff voluntarily cleaned up those sites and now is seeking to recover the expenses it incurred as a result of that cleanup. *See, supra*, Part I.B.2., at ¶¶ 90-91, 101-03 of this Decision and Order (establishing as undisputed that Plaintiff itself notified NYSDEC of the contamination, hired an environmental firm to assess the contamination, and remediated the properties according to NYSDEC work plans). Consequently, as with the plaintiff in *Niagara Mohawk Power Corp.*, Plaintiff has not established that it is entitled to seek contribution under 42 U.S.C. § 9613(f)(1).

Plaintiff has also argued that, because the Woodbine Defendants have asserted a counterclaim against under 42 U.S.C. § 9607(a), it should be permitted to seek contribution from the Woodbine Defendants under 42 U.S.C. § 9613(f)(1). However, the Woodbine Defendants' Answer to the Second Amended Complaint asserts only two counterclaims against Plaintiff: (1) a counterclaim for contribution under 42 U.S.C. § 9613(f), and (2) a counterclaim for common law indemnification and contribution. (Dkt. No. 97, at 14-18 [Woodbine Defs.' Answer].) The fact that the Woodbine Defendants cite 42 U.S.C. § 9607(a) as a means of asserting that Plaintiff meets the definition of a PRP does not suggest that the Woodbine Defendants have asserted a counterclaim under 42 U.S.C. § 9607(a); rather, the definition of a PRP contained in 42 U.S.C. § 9607(a) applies to both cost recovery and contribution actions. Additionally, the fact that Plaintiff might be found to be a PRP does not automatically entitle it to pursue a 42 U.S.C. § 9613(f)(1) contribution claim, given that, as discussed above, the Supreme Court has explicitly recognized that persons deemed to be PRPs can sue for cost recovery under 42 U.S.C. § 9607(a). *Atlantic Research Corp.*, 551 U.S. at 135-36. Plaintiff therefore cannot use the Woodbine Defendants' counterclaims as a means for justifying its improper claim for contribution under 42 U.S.C. § 9613(f)(1).

For all of the above reasons, Plaintiff's Second Claim must be dismissed.

### B. Whether the Woodbine Site Is Part of the Same CERCLA Facility as Plaintiff's Yard and the Third-Party Properties

After careful consideration, the Court answers this question in the negative for the reasons stated in the memoranda of law of the Woodbine Defendants and Defendant Tarolli. (Dkt. No. 163, Attach. 9, at 23-27 [Def. Tarolli's Mem. of Law]; Dkt. No. 188, Attach. 1, at 6-8 [Def. Tarolli's Reply Mem. of Law]; Dkt. No. 178, Attach. 9, at 6-7 [Woodbine Defs.' Opp'n Mem. of

Law]; Dkt. No. 166, Attach. 27, at 8-11 [Woodbine Defs.' Mem. of Law]; Dkt. No. 187, Attach. 1, at 3-6 [Woodbine Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

CERCLA broadly defines a facility as "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise came to be located." 42 U.S.C. § 9601(9).

However, in a case such as this where the plaintiff seeks contribution and cost-recovery from other PRPs for costs expended related to the clean up of a contaminated site, whether a certain property is contaminated (and thus a facility under CERCLA) is not the end of the inquiry. Rather, the Court must examine whether the multiple contaminated properties should constitute a single facility, or whether they should be treated as separate facilities.  As discussed above, Plaintiff essentially argues that the Woodbine property facility should be considered to be part of the same CERCLA facility as Plaintiff's yard and the contaminated third-party sites due to the common source of contamination (i.e., the soil from the Woodbine property), while Defendants essentially argue that the Woodbine property should be considered a separate facility because (a) Plaintiff did not incur any response costs in relation to any clean-up of the Woodbine property, (b) the Woodbine property does not have a common owner with either Plaintiff's yard or any of the third-party sites, and (c) the contamination of Plaintiff's yard and the third-party properties was not the result of Defendants' direct actions or natural migration of a hazardous substance. *See, supra,* Part I.C. of this Decision and Order.

This Court recently decided a similar case, in which the Court was called upon to determine whether two parcels of land sharing a common source of contamination but owned by different entities should be considered a single CERCLA facility. *New York v. Gen. Elec. Co.*, 14-CV-0747, 2017 WL 1239638, at *20-21 (N.D.N.Y. Mar. 31, 2017) (Hummel, M.J.). The Court concluded that these parcels were separate CERCLA facilities despite the common source of contamination because (a) the contamination of 51 Luzerne Road was the result of waste being excavated from 53 Luzerne Road (the alleged source of the contamination) and placed at 51 Luzerne Road by the State, and therefore the common source was neither due to the direct actions of the defendant nor a natural progression or migration of the contamination, and (b) the two parcels did not share a common owner at the time of contamination. *See New York v. Gen. Elec. Co.*, 2017 WL 1239638, at *20-21 (finding in particular that, "[a]bsent the State's action in moving the PCB-contaminated waste from 53 Luzerne into the containment cell at 51 Luzerne, the State has not demonstrated that the PCB waste at 53 Luzerne would have contaminated 51 Luzerne"); *see also Alprof Realty LLC v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 09-CV-5190, 2012 WL 4049800, at *5-11 (E.D.N.Y. Sept. 13, 2012) (rejecting the argument that the Church property and the Alprof property constituted a single CERCLA facility because, although it was undisputed that contamination had spread from the Church property to the Alprof property, the two properties had never been owned and operated together as a single waste disposal facility) (citing *Niagara Mohawk Power Corp. v. Consolidated Rail Corp.*, 291 F. Supp. 2d 105 [N.D.N.Y. 2003], *rev'd on other grounds Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 [2d Cir. 2010]).

Similarly, in this case, there has been no evidence presented that establishes or even suggests that the Woodbine property, Plaintiff's yard, or any of the third-party properties were under common ownership at any time, much less at the time of contamination.  Additionally, there is no evidence that, absent Plaintiff's transportation of the soil from the Woodbine property to its own yard and the third-party properties, any of these properties would have been contaminated by PCBs from the Woodbine property; in particular, it is undisputed that Plaintiff itself transported the soil from the Woodbine property to those other properties, that neither Defendant Tarolli nor the Woodbine Defendants were involved in such transportation of the soil, and that it was Plaintiff's transportation rather than any natural migration that resulted in the PCB-contaminated soil being present at each of those sites.  The Court is persuaded that, just as in *New York v. Gen. Elec. Co.*, these factors direct that the Woodbine property should be treated as a separate CERCLA facility from the other contaminated properties.[67]

Plaintiff attempts to distinguish *New York v. Gen. Elec. Co.*, but its efforts are unpersuasive.  Specifically, Plaintiff's argument that it was Defendant Tarolli's excavation and moving of the soil on the Woodbine property and/or the Woodbine Defendants' decision to sell the soil to Plaintiff (depending on which parties' motion Plaintiff is responding to) that caused the common source of contamination inexplicably ignores the basic and undisputed fact that no soil from the Woodbine property would have been placed at Plaintiff's yard or the third-party properties without Plaintiff's own actions, which is precisely the situation presented in *New York*

---

[67]    The Court notes that many of the cases that Plaintiff cited in support of its argument that all the sites should be treated as a single CERCLA facility have been discussed in detail and distinguished in either *New York v. Gen. Elec. Co.* or *Alprof Realty LLC.  New York v. Gen. Elec. Co.*, 2017 WL 1239638, at *20-21; *Alprof Realty LLC*, 2012 WL 4049800, at *5-11. The Court finds those discussions to be applicable to this case.

*v. Gen. Elec. Co.* (Dkt. No. 176, Attach. 2, at 14-15 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 177, Attach. 2, at 14-15 [Pl.'s Opp'n Mem. of Law].) Even if Defendant Tarolli's actions caused the spread of PCBs to other portions of the Woodbine property (a fact not clearly established in the current record), that fact would make no difference to an analysis of whether the Woodbine property is part of a single CERCLA facility in the face of evidence regarding Plaintiff's own actions and the lack of common ownership between the Woodbine property and the other contaminated properties. Plaintiff's attempts to shift the focus away from its own actions in transporting the soil are therefore simply not persuasive.

Plaintiff also argues that "[t]he primary source for determining the number of relevant facilities is the plaintiff's complaint," and therefore, because the Second Amended Complaint conceptualizes the sites as a single CERCLA facility based on the common source of contamination, the sites should be treated as a single facility. (Dkt. No. 176, Attach. 2, at 12-14 [Pl.'s Opp'n Mem. of Law].) Apart from the fact that Plaintiff's argument is contrary to the case law cited above that indicates the need to consider other relevant factors, it is simply untenable to assert that the Court must simply accept whatever Plaintiff defines the facility to be given that it is the Court's role on summary judgment to determine whether Plaintiff's claims are sufficiently legally and/or factually supported. The Court is simply not convinced by Plaintiff's citation to out-of-circuit authority in light of the other evidence that supports the existence of multiple CERCLA facilities.[68]

---

[68] Additionally, as the Woodbine Defendants argue, Plaintiff's Second Amended Complaint does not even clearly allege a single CERCLA facility; rather, Plaintiff alleges that "[t]he Woodbine Site and each of the Satellite Sites are 'facilities' within the meaning of Section 101(9) of CERCLA." (Dkt. No. 91, at ¶ 28 [Pl.'s Second Am. Compl.].)

In sum, the Court finds that the Woodbine property should be treated as a separate CERCLA facility from Plaintiff's yard and the third-party properties.

### C.    Whether Defendant Tarolli Is a PRP Pursuant to CERCLA

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant Tarolli's memoranda of law.  (Dkt. No. 163, Attach. 9, at 14-23 [Def. Tarolli's Mem. of Law]; Dkt. No. 188, Attach. 1, at 8-12 [Def. Tarolli's Reply Mem. of Law]; Dkt. No. 174, Attach. 1, at 8-13 [Def. Tarolli's Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

As discussed above in Part I.C. of this Decision and Order, Plaintiff argues primarily that Defendant Tarolli is a PRP as either a transporter or operator under CERCLA.[69]  (Dkt. No. 165, Attach. 4, at 23-26 [Pl.'s Mem. of Law].)   Neither of these arguments is persuasive.

---

[69]    Although it is not clear Plaintiff asserted such a basis in its Second Amended Complaint, Plaintiff additionally argues in its memorandum of law in opposition to Defendant Tarolli's motion for summary judgment that Defendant Tarolli is an arranger because it "generated the piles of Soil and arranged to dispose them at the Woodbine Site by stockpiling the Soil," and the subsequent sale of that soil pile to Plaintiff means that Defendant Tarolli was an arranger as to both the Woodbine property and the relevant facility comprised of Plaintiff's yard and the third-party properties.  (Dkt. No. 176, Attach. 2, at 22 [Pl.'s Opp'n Mem. of Law].) Plaintiff's argument must fail because the causal connection it attempts to establish is far too tenuous to merit the imposition of arranger liability on Defendant Tarolli.  The mere fact that the Woodbine Defendants sold the soil pile to Plaintiff years after Defendant Tarolli completed its work on the Woodbine property does not establish that Defendant Tarolli arranged to dispose contaminated soil on the relevant facility.  Plaintiff has not produced any evidence to show that Defendant Tarolli placed the soil piles on the Woodbine property with any understanding or expectation that such soil piles would be disposed of on Plaintiff's yard or the third-party sites. *See Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009) (concluding that, "under the plain language of the statute, an entity may qualify as an arranger under § 9607[a][3] when it takes *intentional* steps to dispose of a hazardous substance") (emphasis added). Because there is no evidence that Defendant Tarolli intended the soil it excavated to be disposed of, much less on any place other than the Woodbine property, Plaintiff cannot show that Defendant Tarolli is subject to liability as to the relevant facility as an arranger.

A transporter is defined in 42 U.S.C. § 9607(a)(4) as "any person who accepts or accepted any hazardous substances for transport to . . . sites selected by such person, from which there was a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(4). In support of its argument that Defendant Tarolli qualifies as a transporter, Plaintiff cites *Kaiser Aluminum & Chemical Corp. v. Catellus Devel. Corp.*, 976 F.2d 1338 (9th Cir. 1992), in which the Ninth Circuit concluded that transportation of contaminated material to an uncontaminated portion of the same parcel of land is spread of contamination that would merit the imposition of liability as transporter. (Dkt. No. 165, Attach. 4, at 26 [Pl.'s Mem. of Law].) Even assuming that Defendant Tarolli had the discretion to choose where the soil pile was ultimately placed on the Woodbine property (a fact that the parties dispute), Plaintiff's reliance on *Kaiser Aluminum* is unpersuasive in light of the Court's finding that the Woodbine property is not part of the same CERCLA facility as Plaintiff's yard and the third-party properties. Because the Woodbine property is a separate facility, Plaintiff may not rely on any actions related to the Woodbine property to establish Defendant Tarolli's liability, but rather must show that Defendant Tarolli engaged in conduct that would make him a PRP as to Plaintiff's yard and the third-party sites specifically. *See Gen. Elec. Co.*, 2017 WL 1239638, at *21 ("[T]o determine whether GE can be held liable as an 'arranger,' the Court must assess whether GE 'arranged' for hazardous waste at the two separate facilities."). It is undisputed that Plaintiff, and Plaintiff alone, transported the soil from the Woodbine property to its own yard and the third-party properties. Because Plaintiff therefore cannot show that Defendant Tarolli accepted a hazardous substance for transport to the relevant facility where Plaintiff incurred response costs, it cannot show that Defendant Tarolli acted as a transporter under CERCLA for the purposes of this litigation.

Plaintiff's argument that Defendant Tarolli is liable as an operator is also unpersuasive in light of the Court's finding that there are multiple facilities. To qualify as an operator, the person must "manage, direct, or conduct operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *United States v. Bestfoods*, 524 U.S. 51, 66 (1998). Specifically, Plaintiff has not adduced any evidence from which a reasonable fact finder could conclude that Defendant Tarolli was an operator as to the facility comprised of Plaintiff's yard and the third-party properties. To the contrary, it is undisputed that Defendant Tarolli has never been to Plaintiff's yard or been involved in the transportation of soil to any of those sites. *See, supra,* Part I.B.1 at ¶¶ 17-18 of this Decision and Order. Nor is there any evidence that Defendant Tarolli had control over the placement of soils on Plaintiff's yard or the third-party properties, or otherwise managed or directed operations at those sites related to hazardous wastes. Also of note, Plaintiff does not make any arguments specifically related to why it believes that Defendant Tarolli was an operator as to Plaintiff's yard and the third-party properties; rather, its entire argument relates to Defendant Tarolli's actions on the Woodbine property, which the Court has determined is a separate facility. Plaintiff simply cannot establish that Defendant Tarolli was an operator of the relevant facility.

Plaintiff lastly argues that, despite the fact that Defendant Tarolli is not a PRP under any of the categories enumerated in 42 U.S.C. § 9607(a) as to the relevant facility, it should still be held liable because there is a causal link between Defendant Tarolli's activities on the Woodbine property facility and the contamination on the relevant facility comprised of Plaintiff's yard and the third-party properties. (Dkt. No. 185, Attach. 1, at 18-20 [Pl.'s Reply Mem. of Law].) However, Plaintiff's reliance on this "two-site" theory is inappropriate here for two reasons.

First, the cases cited by Plaintiff in support of its argument do not clearly indicate that the two sites were considered by the reviewing courts to be separate CERCLA facilities (as opposed to simply different sites). Applying the "two-site" theory to two separate CERCLA facilities would in essence negate Plaintiff's need to establish that Defendant Tarolli is a PRP under 42 U.S.C. § 9607(a) by substituting the analysis of whether there was a sufficient causal connection; such an approach would certainly not be consistent with Congress' express enactment of CERCLA, which carefully defines the circumstances in which parties may be held liable as PRPs. *See Asarco LLC v. Cemex, Inc.*, 21 F. Supp. 3d 784, 804 (W.D. Tex. 2014) (finding that, even in a two-site case, "Section 107[a] always requires a plaintiff to prove, in its prima facie case, that a release from a facility *for which defendant is a responsible person* caused the incurrence of response costs") (emphasis added).

Second, the cases relied on by Plaintiff involve contamination of a second site by natural migration, whereas, in this case, it is undisputed that Plaintiff's own actions were the sole cause of the introduction of contaminates from the Woodbine site facility to Plaintiff's yard and the third-party properties. Given these facts and the Court's determination that the Woodbine property is a separate CERCLA facility from the facility comprised of Plaintiff's yard and the third-party properties, a two-site theory does not apply to this case.

Because the evidence establishes that Plaintiff cannot show that Defendant Tarolli acted as an operator, arranger, or transporter related to the relevant facility comprised of Plaintiff's yard and the third-party properties, Plaintiff's remaining CERCLA claim against Defendant Tarolli must be dismissed.

D.      **Whether the Woodbine Defendants Are PRPs Pursuant to CERLCA**

After careful consideration, the Court answers the above question in the negative for the reasons stated in the Woodbine Defendant's memoranda of law. (Dkt. No. 178, Attach. 9, at 6-22 [Woodbine Defs.' Opp'n Mem. of Law]; Dkt. No. 166, Attach. 27, at 7-15 [Woodbine Defs.' Mem. of Law]; Dkt. No. 187, Attach. 1, at 7-8 [Woodbine Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

1.      **Defendant Collingswood**

Plaintiff argues that Defendant Collingswood is liable as a prior owner or operator of a portion of the Woodbine property. (Dkt. No. 165, Attach. 4, at 13-16 [Pl.'s Mem. of Law].) Section 9607(a)(2) of Title 42 of the United States Code imposes liability as a prior owner and operator on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). Plaintiff's argument is problematic for two reasons.

First, as discussed above, the Woodbine property is a separate CERCLA facility from the CERCLA facility comprised of Plaintiff's yard and the third-party properties; yet Plaintiff has not made any arguments or provided any evidence that Defendant Collingswood ever owned or operated any portion of the facility relevant to Plaintiff's claim for cost recovery, much less at the time that the PCBs were disposed of at that facility. Notably, Defendant Collingswood had merged with Defendant Harrison, thus forming Defendant Woodbine, well before the release of PCBs at Plaintiff's yard and the third-party sites.

Second, even if the Court were to consider all of the sites to be one CERCLA facility, Plaintiff has not adduced any evidence from which a reasonable fact finder could determine that

the PCBs were disposed of on the Woodbine property at the time Defendant Collingswood owned and operated that property.  Plaintiff's argument on this issue is essentially that, because an underground fuel tank was removed from the Woodbine property at Defendant Collingswood's direction, it is plausible that the PCB contamination occurred as a result of that removal of the fuel tank.  (Dkt. No. 165, Attach. 4, at 14-15 [Pl.'s Mem. of Law]; Dkt. No. 185, Attach. 2, at 14-15 [Pl.'s Reply Mem. of Law].)  However, Plaintiff cites no evidence, direct or circumstantial, to show that this is the case.  While evidence shows that there was a presence of volatile petroleum hydrocarbons in the soil of the Woodbine property, the testing of the soil does not indicate that the presence of PCBs resulted from the underground fuel tank.  (Dkt. No. 185, Attach. 6, at 12.)  Of note, it is undisputed that the tank was used to store only petroleum products.  The fact that the underground fuel tank may have contaminated the soil of the Woodbine property with petroleum hydrocarbons does not raise a reasonable inference that the tank also contaminated the soil with PCBs (which are distinct from petroleum hydrocarbons); PCBs are the only hazardous substance relevant to Plaintiff's claim.  Although Plaintiff is correct that circumstantial evidence may suffice in CERCLA cases, Plaintiff has not presented even circumstantial evidence to support its assertion that Defendant Collingswood's handling of the underground fuel tank resulted in a release of *PCBs* at the Woodbine property.  *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 131 (2d Cir. 2010).

For all of the above reasons, Plaintiff's CERCLA claim against Defendant Collingswood must be dismissed.

### 2. Defendant Harrison

Plaintiff argues that Defendant Harrison is also liable as a prior owner and operator by virtue of being the successor of Defendant Collingswood, with which Defendant Harrison merged. (Dkt. No. 165, Attach. 4, at 16-18 [Pl.'s Mem. of Law].) However, because the Court has already determined that Plaintiff has not raised a genuine dispute of material fact as to Defendant Collingswood's liability, there is also no genuine dispute of material fact as to whether Defendant Harrison can be held liable as a successor of Defendant Collingswood; without initial liability, there can be no basis for the imposition of successor liability. *See Payamps v. M&M Convenience Deli & Grocery Corp.*, 16-CV-4895, 2018 WL 3742696, at *10 (E.D.N.Y. May 18, 2018) ("Successor liability cannot attach if there is no primary liability."); *City of Syracuse v. Loomis Armored U.S., LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) (D'Agostino, J.) ("[S]uccessor liability is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct."). Beyond asserting successor liability, Plaintiff has not asserted any arguments or provided evidence that Defendant Harrison itself owned or operated any of the relevant properties at the time of the release of PCBs. Therefore, Plaintiff's CERCLA claim against Defendant Harrison must also be dismissed.

### 3. Defendant Woodbine

Plaintiff argues that Defendant Woodbine is liable as an owner and operator. (Dkt. No. 165, Attach. 4, at 18-19 [Pl.'s Mem. of Law].) Plaintiff also appears to allege in its Second Amended Complaint that Defendant Woodbine is an arranger by virtue of selling the soil pile from the Woodbine property to Plaintiff.[70] (Dkt. No. 91, at ¶ 31 [Pl.'s Second Am. Compl.].)

---

[70] Plaintiff also makes a half-hearted attempt to argue that Defendant Woodbine is a transporter in its opposition memorandum of law to the Woodbine Defendants' motion for summary judgment, arguing that "[t]he mode by which [Defendant Woodbine] transported the

Plaintiff's arguments that Defendant Woodbine is an owner and operator are unpersuasive for the same reasons discussed above in relation to Defendants Collingswood and Harrison: Plaintiff has offered no evidence to establish the Defendant Woodbine ever owned or directed and/or managed any operations on either Plaintiff's yard or the third-party properties. Because those properties constitute the CERCLA facility relevant to Plaintiff's claim, this failure of proof is fatal to Plaintiff's argument.

As to arranger liability, Section 9607(a)(3) of Tile 42 of the United States Code imposes liability as an arranger on "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3). The Supreme Court has clarified that an arranger must also have intended to dispose of the hazardous substance; accidental or unintended disposal is not sufficient. *See Burlington N. and Santa Fe Ry. Co.*, 556 U.S. at 611 (concluding that "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes *intentional* steps to dispose of a hazardous substance") (emphasis added). It is undisputed that Defendant Woodbine was party to a contract with Plaintiff by which it was agreed that Plaintiff would transport soil from the Woodbine property. However, what is not so clear is whether, in executing that contract, Defendant Woodbine was specifically arranging for the disposal of a hazardous substance. The Woodbine Defendants argue first and foremost that there

---

soil to the Woodbine Satellite Sites was to require RH Law to remove the Soil from the Woodbine Site." (Dkt. No. 177, Attach. 2, at 23 [Pl.'s Opp'n Mem. of Law].) However, this argument is essentially alleging arranger liability and is therefore merely duplicative of Plaintiff's argument pertaining to arranger liability.

is no proof that the PCBs at issue came from the Woodbine property, but that, even if they did, the Woodbine Defendants did not know and did not have any reason to know that the soil it sold Plaintiff contained PCBs, and therefore they could not have arranged for the disposal of a hazardous substance. Plaintiff argues essentially that the Woodbine Defendants failed to conduct a due diligence examination as to whether the Woodbine property was contaminated.

The clear wording of the statute indicates that an individual may be classified as an arranger only if it has arranged for the disposal of a hazardous substance; therefore, it is necessary to determine as an initial matter whether the soil from the Woodbine property was actually contaminated with the PCBs found on at Plaintiff's yard and the third-party properties and thus a hazardous substance. As noted above in Part I.B.2. of this Decision and Order, it is undisputed that testing by CES and AECC performed in 2013 showed the presences of PCBs on the Woodbine property, including in the area near Canada Drive and Loucks Road and in the remaining soil piles; additionally, the testing found the specific PCB arochlor marker that was found at Plaintiff's yard and the third-party properties on the Woodbine property. (Dkt. No. 185, Attach. 38.) While this is not direct proof that the soil pile itself was contaminated before Plaintiff removed it from the Woodbine property, it is circumstantial evidence from which a reasonable fact finder could determine that the soil pile was contaminated with PCBs at the time Plaintiff purchased it, even though Phase I testing of the Woodbine property in 2009 did not reveal any significant concerns for environmental contamination specifically related to PCBs. (Dkt. No. 166, Attachs. 11-13.) The Court finds that, based on the evidence in the record, there is at least a genuine dispute of material fact as to whether the soil pile sold to Plaintiff contained PCBs that could have contaminated Plaintiff's yard and the third-party properties.

However, a determination that the soil pile from the Woodbine property was contaminated with PCBs would not end the analysis as to whether Defendant Woodbine would be liable as an arranger. Although the point of law is not conclusively settled, at least one other court in this Circuit has determined that part of the intent requirement recognized in *Burlington N. and Santa Fe Ry. Co.* is the requirement that the party who is alleged to have arranged for disposal must have known that the substance in question was a hazardous substance. *See Town of Islip v. Datre*, 245 F. Supp. 3d 397, 422-24 (E.D.N.Y. 2017) (finding that this interpretation of CERCLA is consistent with CERCLA's purpose of deterring parties from attempting to "contract away" responsibility) (citing *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 08-CV-0016, 2012 WL 2704920 [E.D. Wis. July 3, 2012], *aff'd sub nom. NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682 [7th Cir. 2014]). The Court finds this reasoning persuasive because undesirable conduct necessarily cannot be deterred where the party engaging in such conduct does so unknowingly. Plaintiff has not cited to any evidence even suggesting that Defendant Woodbine was aware or suspected that its soil was contaminated with PCBs or any other hazardous substance; rather, it is undisputed that the Woodbine Defendants conducted inquiries about the prior uses of the land before the various parcels comprising the Woodbine property were purchased, and that Phase I testing of the Woodbine property in 2009 did not reveal any suspected environmental concerns. Consequently, there is no evidence from which a reasonable fact finder could determine that Defendant Woodbine knew or had reason to know that the soil it sold to Plaintiff was contaminated with a hazardous substance.

Additionally, the Second Circuit has stated that, "'[i]f a party merely sells a product, without additional evidence that the transaction includes an 'arrangement' for the ultimate disposal of a hazardous substance, CERCLA liability [will] not be imposed.'" *Freeman v. Glaxo*

*Wellcome, Inc.*, 189 F.3d 160, 164 (2d Cir. 1999) (quoting *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 [11th Cir. 1990]).   In terms of determining whether a transaction is a sale or an arrangement for disposal, courts have variously considered factors such as (1) the party's knowledge and control over the disposal, (2) ownership of the hazardous substance at the time of disposal, (3) intent of the party, (4) the purpose and inevitable consequences of the transaction and whether the product has market value, (5) whether the substance has a productive use or is waste, (6) whether the substance was manufactured as a principal business product or a by-product, (7) whether the seller disposed of the substance as waste before or after the relevant transaction, and (8) whether an already used product that still has use is being sold for the same use for which it was manufactured.  *New York v. Solvent Chemical Co.*, 225 F. Supp. 2d 270, 280-81 (W.D.N.Y. 2002) (citing cases).

Here, there is no evidence that Defendant Woodbine knew the soil was contaminated and therefore it cannot be said that it intended the sale to be a disposal of a hazardous substance. Plaintiff owned the soil at the time of disposal on its own yard and at the third-party properties and there is no evidence showing that the Woodbine Defendants continued to exercise any control over the soil between the time Plaintiff hauled it off the Woodbine property and when it was disposed on Plaintiff's yard and the third-party properties.  Additionally, the record supports that the soil had market value given that it is undisputed that Plaintiff paid $12,000 to purchase it, it is undisputed that the soil was purchased to be re-used by Plaintiff in construction projects, and there is no evidence that Defendant Woodbine ever disposed of other soils as waste.  All of these factors indicate that the purchase of the soil was in fact a sale rather than an arrangement for disposal of a hazardous substance.

Additionally, there is no evidence that Defendant Woodbine had any obligation to exercise control over the manner in which the soil was disposed after Plaintiff purchased it and transported it away from the Woodbine property. *See Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286-87 (2d Cir. 1992) (finding that an oil company that had no obligation to exercise control over the manner in which car dealers disposed of waste motor oil could thus not be found to be an arranger as to the disposal of that waste motor oil). This fact also weighs in favor of the Court's finding that Defendant Woodbine is not an arranger under CERCLA.

For all of the above reasons, the Court finds that a reasonable fact finder would not be able to conclude that Defendant Woodbine was liable as a PRP under CERCLA as an owner/operator, transporter, or arranger. Therefore, Plaintiff's CERCLA claim against Defendant Woodbine must also be dismissed.

### 4.     Defendant Swanson

Plaintiff argues that Defendant Swanson is also liable as an owner and operator in his personal capacity. (Dkt. No. 165, Attach. 4, at 26-29 [Pl.'s Mem. of Law].) Plaintiff also appears to allege in its Second Amended Complaint that Defendant Swanson is an arranger by virtue of selling the soil pile from the Woodbine property to Plaintiff. (Dkt. No. 91, at ¶ 31 [Pl.'s Second Am. Compl].) However, because the alleged actions of Defendant Swanson are necessarily identical to those committed by Defendant Woodbine, the CERCLA claim against Defendant Swanson must be dismissed for the same reasons discussed above as to Defendant Woodbine. *See Solvent Chemical Co.*, 225 F. Supp. 2d at 291 ("Because the court finds that there was no arrangement for disposal [by Bay State], Solvent's claim that Benjamin Sack is liable individually also fails.").

### E. Whether the Court Should Exercise Jurisdiction over Plaintiff's Remaining State Law Claims

After careful consideration, the Court answers this question in the negative for the following reasons.

Where (as here) a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims."); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Hurley v. Cty. of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005); *accord, Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar. 10, 2009) (Suddaby, J., adopting Report-Recommendation by Homer, J.). The decision is a discretionary one, and its justification "lies in considerations of judicial economy, convenience and fairness to litigants[.]." *United Mine Workers of Am.*, 383 U.S. at 726; *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367[c][3], it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 [1988]); *Jones v. Ford Motor Credit Co*., 358 F.3d 205, 214 (2d Cir. 2004) ("[W]here at least one of the subsection 1367[c] factors is applicable, a district court should not

decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] economy, convenience, fairness, and comity.").

Here, after carefully considering the relevant factors (i.e., economy, convenience, fairness and comity), the Court finds that they weigh decidedly in favor of declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim. The Court notes that it may *sua sponte* render this determination. *See Rothenberg v. Daus*, 08-CV-0567, 2015 WL 1408655, at *11, n.12 (S.D.N.Y. March 27, 2015) ("[P]laintiffs' contention that the court may not decline to exercise supplemental jurisdiction *sua sponte* contravenes black letter law."); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 293 (E.D.N.Y. 2014) ("[T]he Court *sua sponte* declines to exercise supplemental jurisdiction over the remaining [state law] claims against [defendants]."). As a result, Plaintiff's remaining state law claims are dismissed without prejudice to refiling in New York State Court within thirty (30) days of this Decision and Order, pursuant to 28 U.S.C. § 1367(d).

      **ACCORDINGLY**, it is

      **ORDERED** that Defendant Tarolli's motion for summary judgment (Dkt. No. 163) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that the Woodbine Defendants' motion for summary judgment (Dkt. No. 166) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 165) is **<u>DENIED</u>**; and it is further

      **ORDERED** that the following claims are **<u>DISMISSED</u> with prejudice**:

(1) Plaintiff's First Claim under 42 U.S.C. § 9607(a) against Defendant Tarolli;

(2) Plaintiff's First Claim under 42 U.S.C. § 9607(a) against Defendant Collingswood;

(3) Plaintiff's First Claim under 42 U.S.C. § 9607(a) against Defendant Harrison;

(4) Plaintiff's First Claim under 42 U.S.C. § 9607(a) against Defendant Woodbine;

(5) Plaintiff's First Claim under 42 U.S.C. § 9607(a) against Defendant Swanson;

(6) Plaintiff's Second Claim for contribution under 42 U.S.C. § 9613(f); and it is further

**ORDERED** that the following claims are **<u>DISMISSED</u>** **without prejudice** to refiling in New York State Court within **THIRTY (30) DAYS** of this Decision and Order pursuant to 28 U.S.C.§ 1367(d):

(1) Plaintiff's Third Claim for state law breach of duty;

(2) Plaintiff's Fourth Claim for state law negligent representation;

(3) Plaintiff's Fifth Claim for state law interference with use and enjoyment of property;

(4) Plaintiff's Sixth Claim for state law breach of contract; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 91) is **<u>DISMISSED</u>**.

Dated: March 12, 2019
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge